UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
MARY JANE GLOWCZENSKI AND JEAN GRIFFIN,

Plaintiffs,

-against-

TASER INTERNATIONAL,

Defendant.
---------------------------------------------------X

**CV 04-4052 (SJF)(WDW)**

**ECF Case**

**RULE 26 INITIAL DISCLOSURE OF DEFENDANT**

Defendants **TASER INTERNATIONAL INC. s/h/a TASER INTERNATIONAL** ("TASER") [1], submits its initial disclosure statement in accordance with the Federal Rules of Civil Procedure Rule 26(a)(1).

This disclosure is based upon the information which is known to Defendants to date and/or was attainable by reasonable inquiry and investigation, without the benefit of discovery. At such time as discovery reveals the existence of additional witnesses, evidence, or facts, this statement will be amended accordingly.

Defendants prepared this statement for the sole purpose of complying in good faith with the requirements of Rule 26. Accordingly, nothing herein is intended or should be construed as an admission of any type by Defendants or any of their agents, or as a waiver of applicable work product or attorney/client privileges, all such rights and privileges being specifically reserved.

For the purpose of TASER'S disclosure statements, the following

[1] TASER® and ADVANCED TASER® are registered trademarks of TASER International, Inc. AIR TASER, M26 and X26 are trademarks of TASER International, Inc.

definitions apply (these definitions are intended to be read very broadly and are subject to additional supplementation and inclusions):

**Definitions**

1. **"Electrical injuries"** means and includes, but is not limited to, any indirect or direct effects and/or injuries from various types, forms, and power levels of electricity or electrical current from any source. These injuries may include, but are not limited to: burns, friction abrasions, electroporation, contractions, fractures and mummifying.

2. **"Electrical principles"** means and includes, but is not limited to, general and specific principles of electricity, electrical transmissions, and effects of electricity, including, but not limited to: electrons, volts, amperes, joules, ohms, resistance, coulombs, watts, power, magnitude, current density, charge density, flow of electricity and electrons, waveforms, types of electricity, and differences and contrasts between alternating current, direct current, pulse direct current, TASER device electricity principles, relationships and comparisons between types, power and effects of electricity and electrical sources and devices.

3. **"Electronic control devices" or "ECDs"** means and includes, but is not limited to, any device or weapon primarily designed to interfere with the signals from a subject's central nervous system to the subject's peripheral nervous system by means of deploying electrical energy sufficient to cause involuntary muscle contractions and override an individual's voluntary motor responses. ECD's may include any comparisons to various types of electrical devices.

4. **"In-custody deaths"** means and includes, but is not limited to, any death that occurs while a person is interacting with law enforcement, security, mental health workers, emergency medical care providers, medical care providers and other governmental actors.

5. **"Scientific methodologies"** means and includes, but is not limited to, use of scientific methodologies, statistical methodologies and analysis, temporal, contributory and causal relationships.

6. **"Subject"** means the person allegedly injured by the TASER device in the incident that gave rise to this litigation.

7. **"Testimony"** means testimony based upon a witness's knowledge, skill, experience, training, and/or education, and includes testimony as a fact witness, a lay expert witness (Ariz.R.Evd. 701) and/or as an expert witness (Ariz.R.Evd.

702) on topics and areas as listed. Opinion testimony may also include inferences.

8. **"TASER device"** means and includes, but is not limited to, any TASER International, Inc. device, part, or product designed, developed, produced, manufactured, utilized, incorporated, marketed, distributed, sold, or placed into commerce, including, but not limited to: the AIR TASER 34000, the TASER M26 or ADVANCED TASER and the TASER X26.

9. **"TASER device forensic analysis"** means and includes, but is not limited to, the forensic analysis of TASER devices which may include downloading and analyzing data from a TASER device.

10. **"TASER documentation"** means and includes, but is not limited to, TASER product manuals, training materials, videos, reference materials, warnings, other manuals, instructions, specification sheets and data, use data and reports, general research, product research, product warnings, TASER specific training and TASER patents and trademark certifications.

11. **"TASER effects"** means and includes, but is not limited to, any effect, response, or injury, caused, indirectly or directly, by a TASER device or resulting from a TASER device display, use, or deployment; including, but not limited to: stress, panic, discomfort, pain, nerve stimulation and resulting muscle contractions and related effects.

12. **"TASER electrical principles"** means and includes, but is not limited to, general and specific TASER device electrical engineering research, principles, specifications, designs, waveforms, frequencies, pulses, energy flows, and outputs; the development, design, analysis, use, effects, safety, and warnings of TASER devices; comparisons of TASER devices and other law enforcement or electronic weapons and devices (including, but not limited to: stun guns, stun shields, 7 watt TASER, 7 watt TASERTRON, 11 watt TASER, 11 watt TASERTRON); and TASER device effects on the human body and animals.

13. **"TASER history"** means and includes, but is not limited to, the history of TASER, stun guns, hand-held stun guns (*e.g.* Nova and Ultron), electronic restraint, electronic shields, electronic control devices, and other similar devices and technologies; and the history, analysis, and applications of electronic device standards.

14. **"TASER processes"** means and includes, but is not limited to, the history, research, development, purpose, design, production, manufacture, quality control testing, production, manufacturing, quality control, marketing, distribution, and sales of TASER devices; as well as, TASER specific procedures, techniques,

statistics, methods, training, products, and warnings.

15. **"TASER research"** means and includes, but is not limited to, TASER device and related analyses, comparisons, risk utility analyses, studies and research, as well as, TASER device safety, use and deployment, findings, statistics, and reports.

16. **"TASER risk utility"** means and includes, but is not limited to, investigation, research, analyses, studies, reports, and conclusions that relate to risk and benefit analyses of TASER device use(s) and application(s) and the statistical results of TASER deployment in various law enforcement agencies in injury reductions, liability claims and lives saved. TASER risk utility also includes comparison analyses to other use of force options and other electrical devices or applications.

17. **"TASER studies"** means and includes, but is not limited to, all medical studies, TASER device use studies, safety studies, and research involving and evaluating, or related to, TASER devices and other related fields of study, and demonstrations; all human and animal TASER device related or comparison research, testing, analysis and studies; comparisons between TASER device studies and testing and other medical and/or electrical device testing and studies; TASER device human volunteer data and field use data; comparisons between TASER devices and other law enforcement and civilian use of force techniques, tools, and device studies, research, and reports; medical, training, and other protocols for testing; and TASER device exposures.

18. **"TASER training"** means and includes, but is not limited to, TASER device and related information, command demonstrations, product manuals, effects, safety, lesson plans, PowerPoint presentations, videos, reference materials, studies, research, warnings, medical information, in-custody death information, and other training information and/or documentation created, utilized, or known to TASER for any TASER device training programs; history, purpose, procedures and issues relating to various levels of TASER device instructors, including, but not limited to: Chief Instructor, Training Board, Senior Master Instructors, Master Instructors, Advanced Instructors, and Instructors, including their training programs. Training also includes sophisticated user and learned intermediaries. Training also includes force comparisons and techniques and device analyses.

19. **"TASER communications"** means and includes, but is not limited to, communication between TASER and governmental, quasi-governmental, or law enforcement agencies, entities, persons, and others regarding TASER devices and their use(s) of TASER devices.

20. **"TASER sales and service"** means and includes, but is not limited to, marketing, distribution, and sales of and services for TASER devices; distribution of TASER devices and products; warnings; training materials; and sales and distribution agreements and contracts with the TASER distributors and others.

21. **"Use of force"** means and includes, but is not limited to, all aspects of force: force options, techniques, tools, and equipment (specifically including, but not limited to: batons, specialty weapons and techniques, chemical irritants, pepper spray (oleoresin capsicum), physical controls and restraint, defensive tactics, physical responses and interventions, firearms, and others); training procedures, force tactics, policies, documentation, and incident analyses. "Use of force" also includes law enforcement procedures, techniques, policies, supervision, oversight, legal and other standards, statistics, methods, training, products, risk utility analyses or other use of force matters.

22. **"Warnings"** means and includes, but is not limited to any and all notification provided by TASER in the TASER documentation, TASER communications, or TASER training as to the cautions or risks associated with the use of TASER devices. Warnings also include comparisons with other force tools and techniques warnings, as well as, sophisticated users and learned intermediaries.

**A. The name, and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information.**

1. Patrick ("Rick") W. Smith, Chief Executive Officer, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Smith is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER device forensic analysis; TASER documentation; TASER effects; TASER electrical principles; electrical injuries; electrical principles; ECDs; TASER history; TASER processes; TASER research; TASER studies; scientific methodologies; TASER risk utility; TASER training; TASER communication; TASER sales and services; in-custody deaths; use of force; warnings; history of the company; and stock sales and distributions

by the company.

2. Mark Johnson, Director of Technical Services, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Johnson is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER device forensic analysis; TASER effects; TASER research; TASER studies; and scientific methodologies.

3. Andrew Hinz, Law Enforcement Technical Coordinator, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Hinz is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER device forensic analysis.

4. Steve Tuttle, Vice President of Communications, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Tuttle is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER processes; TASER communication; TASER risk utility; TASER training; TASER sales and services; and warnings.

5. Stacie Sundberg, Vice President of Global Sales Operations, TASER International, Inc., c/o Joseph A. Maria, P.C.

Ms. Sundberg is expected to provide testimony regarding the knowledge and information she possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER communication; and TASER sales and services.

6. Hans Marrero, Chief Instructor, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Marrero is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER documentation; TASER effects; ECDs; TASER history; TASER training; TASER communication; in-custody deaths; use of force; and warnings.

7. Rick Guilbault, Director of Training, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Guilbault is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER documentation; TASER effects; ECDs; TASER history; TASER training; TASER communication; in-custody deaths; use of force; and warnings.

8. Jami LaChapelle, Training Coordinator, TASER International, Inc., c/o Joseph A. Maria, P.C.

Ms. LaChapelle is expected to provide testimony regarding the knowledge and information she possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER training; and TASER communication.

9. Dr. Robert Stratbucker, MD, PhD, Medical Director, TASER International, Inc., c/o Joseph A. Maria, P.C.

Dr. Stratbucker is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER device forensic analysis; TASER documentation; TASER effects; TASER electrical principles; electrical injuries; electrical principles; ECDs; TASER history; TASER processes; TASER research; TASER studies; scientific methodologies; and TASER risk utility.

10. Max Nerheim, Vice President of Research & Development, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Nerheim is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER device forensic analysis; TASER documentation; TASER effects; TASER electrical principles; electrical injuries; electrical principles; ECDs; TASER research; TASER studies; scientific methodologies; and TASER risk utility.

11. Milan Cerovic, Mechanical Engineer Manager, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Cerovic is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER device forensic analysis; TASER documentation; TASER effects; TASER electrical principles; electrical injuries; electrical principles; mechanical principles and engineering; ECDs; TASER research; TASER studies; scientific methodologies; and TASER risk utility.

12. Nache Shekarri, Electrical Engineer, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Shekarri is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation including, but not limited to: TASER devices; TASER device forensic analysis; TASER documentation; TASER effects; TASER electrical principles; electrical injuries; electrical principles; ECDs; TASER research; TASER studies; scientific methodologies; and TASER risk utility.

13. Steve Brundula, Electrical Engineer, TASER International, Inc., c/o Joseph A. Maria, P.C.

Mr. Brundula is expected to provide testimony regarding the knowledge and information he possesses as to the facts and issues relevant to this litigation

including, but not limited to: TASER devices; TASER device forensic analysis; TASER documentation; TASER effects; TASER electrical principles; electrical injuries; electrical principles; ECDs; TASER research; TASER studies; scientific methodologies; and TASER risk utility.

14. Any and all police officers and personnel, to be identified, who may have been involved with the incident alleged in the Complaint.

These person are expected to testify regarding the incident alleged in the Complaint and their involvement in that incident; their use of TASER devices; their use of TASER device(s) upon David Glowczenski; any training received on TASER devices; use of force tools and training; and policies and procedures of their respective law enforcement agencies.

15. Any and all Southampton Village Police Department police officers and personnel, to be identified, who may have investigated the incident alleged in the Complaint. These individuals are expected to testify regarding the events of incident alleged in the Complaint involving David Glowczenski and any conclusions or opinions reached by the Southampton Village Police Department.

16. Any and all Village of Southampton police officers and personnel, to be identified, who may have investigated the incident alleged in the Complaint. These individuals are expected to testify regarding the events of incident alleged in the Complaint involving David Glowczenski and any conclusions or opinions reached by the Village of Southampton.

17. Any and all Suffolk County Police Department police officers and personnel, to be identified, who may have investigated the incident alleged in the Complaint. These individuals are expected to testify regarding the events of incident alleged in the Complaint involving David Glowczenski and any conclusions or opinions reached by the Suffolk County Police Department.

18. David Glowczenski's treating medical professionals, to be identified.

These individuals are expected to testify regarding David Glowzenski's medical, physical and psychological conditions.

19. One or more individuals, to be identified, who have witnessed and/or have been subjected to the discharge of a TASER device. These individuals are expected to testify regarding their knowledge of the effects of the TASER device.

20. One or more law enforcement officers, to be identified, who have used the TASER device(s). These individuals are expected to testify regarding their knowledge of the effects of the TASER device. These individuals may offer expert testimony to the extent they offer opinion testimony on: law enforcement procedures, techniques, statistics, methods, training, products, and use of force matters; and TASER specific procedures, techniques, statistics, methods, training, products, use of force risk utility, TASER device risk utility, and use of force matters, including technical opinions on the design and functionality of the TASER device(s).

21. One or more law enforcement executives, to be identified, who have witnessed, experienced, deployed and/or used TASER device(s). These individuals are expected to testify regarding their knowledge of the effects of the TASER device. These individuals may offer expert testimony to the extent they offer opinion testimony on: law enforcement procedures, techniques, statistics, methods, training, products and use of force matters; and TASER specific procedures, techniques, statistics, methods, training, products, risk utility, and use of force matters, including TASER specific procedures, techniques, statistics, methods, training, products, and use of force matters, including technical opinions on the design and functionality of the TASER device(s).

22. Plaintiff Mary Jane Glowczenski.

Ms. Glowczenski is expected to testify about her relationship with David Glowczenski; David Glowczenski's medical condition(s) both prior to,

including and subsequent to the alleged incident; and her claimed damages from the alleged incident.

23. Plaintiff Jean Griffin.

Ms. Griffin is expected to testify about her relationship with David Glowczenski; David Glowczenski's medical condition(s) both prior to, including and subsequent to the alleged incident; and her claimed damages from the alleged incident.

24. James C. Wilson, MD, Suffolk County Deputy Medical Examiner, 725 Veteran's Memorial Highway, Hauppauge, NY 11788.

Dr. Wilson is expected to testify about his medical examination of David Glowczenski; and his findings in the autopsy report, in particular tha the cause of death for David Glowczenski was acute exhaustive mania due to schizophrenia.

25. Gerard A. Catanese, MD, Suffolk County Medical examiner's Office, 725 Veteran's Memorial Highway, Hauppauge, New York 11788.

Dr. Catanese is expected to testify about his medical examination of David Glowczenski; and his findings in the autopsy report.

26. Dr. Deborah C. Mash, Department of Neurology and Molecular and Cellular Pharmacology, University of Miami School of Medicine, P.O. Box 016960, Miami, FL 33101, (305) 243-6732.

Dr. Mash is expected to testify about her medical examination of neuropathological specimens taken from David Glowczenski; and her findings.

27. Without waiving any objection thereto, any witness or knowledgeable person identified by any other party. TASER does not, however, waive objections to any witnesses listed by the other parties to this litigation solely by reason of their inclusion by reference in this list.

28. Any necessary foundational or authentication witness.

29. Any necessary rebuttal witness.

Because this case is in its preliminary stages and discovery and investigation are ongoing, TASER reserves the right to modify, amend, or supplement this list.

**B. A copy of, or a description by category and location of, all documents, data compilations and tangible things in the possession, custody or control of the party that are relevant to disputed facts alleged with particularity in the pleadings.**

Those items not readily available in public forums or on TASER'S website, www.TASER.com, are available for review in the TASER reading room at TASER International, Inc. at the corporate headquarters in Scottsdale, Arizona. Parties may choose to review the items on site or copy the items at the party's expense. Some items are available on discs (CDs or DVDs). Such discs contain multiple megabytes of information and tens of thousands of pages each including for example documents, videos, photos, policies, reference materials, studies, research, explanatory materials, letters, and PowerPoint presentations. Charges for disc duplication are estimated at $25/CD and $55/DVD depending on the content of the discs. Defendants will make discs available for inspection and duplication upon reasonable request at TASER's reading room.

1. All medical records of David Glowczenski. (not yet in the possession of TASER).

2. TASER device(s) at issue (and those of same make/model).

3. TASER's Website – www.taser.com.

4. TASER's Research Compendium (including all documents referenced), the Index is attached.

5. TASER's Product Manuals, specifically including the TASER M26

and X26 Product Manuals, available for inspection at TASER's office.

6. TASER's Training Bulletins, availabl on TASER's website (www.taser.com) and for inspection at TASER's office.

7. TASER's Products Specification Sheets located on www.TASER.com.

8. TASER's Training Videos and Information Disks Versions 1-13, available for inspection at TASER's office.

9. TASER Field Use reports, available for inspection at TASER's office and upon execution of a protective order.

10. TASER Voluntary Exposure Reports, available for inspection at TASER's office and upon execution of a protective order.

11. Index of Electrical Injury Articles (including all documents referenced), the Index is available for inspection at TASER's office.

12. Index of Cause of Death Medical Information (including all documents referenced), the Index is available for inspection at TASER's office.

13. 1996 report prepared by Robert Stratbucker, M.D. re 1996 swine studies, available for inspection at TASER's office.

14. 1998 Pre-Launch M26 Quantitative Analysis (compare Underwriters Laboratory and International Electrotechnical Commission standards) available for inspection at TASER's office.

15. 1999 Pre-Launch In-Depth Stafety study, available for inspection at TASER's office.

16. 1999 Canine M26 paper – McDaniel, Wayne and Stratbucker, Robert "Testing the Cardiac Rhythm Safety of the Thoracic Application of TASERS", available for inspection at TASER's office.

17. April 10, 2001 correspondence to Rick Smith from Wayne McDaniel re: dual M26, available for inspection at TASER's office.

18. Abstract for the paper titled "Testing the Cardiac Rhythm Safety of the Thoracic Application of TASERS", available for inspection at TASER's office.

19. January 6, 2000 correspondence to Rick Smith from Wayne McDaniel and Robert Stratbucker re: medical studies, available for inspection at TASER's office.

20. American Academy of Forensic Sciences *AAFS) Annual Meeting, Seattle, Washington, February 23, 2006 AAFS Annual Meeting information, available for inspection at TASER's office.

21. Privilege Log of research & Development documents.

22. 2002 – 2003 PACE study.

23. February 3, 2006 correspondence from Garry Yamaguchi of Exponent, Inc. to Doug Klint re Preliminary Testing Results on TASER M18, available for inspection at TASER's office.

24. February 3, 2006 correspondence from Gary Yamaguchi of Exponent, Inc. to Doug Klint re Prelimnary Testing Results on TASER X26, available for inspection at TASER's office.

25. Probe location and disbursement from 2004 Field Use Reports, available for inspection at TASER's office and upon execution of a protective order.

26. Memorandum of Law prepared by TASER International, Inc. located on www.TASER.com.

27. Chart of State of Statutes located on www.TASER.com.

28. Summary of State Statutes located on www.TASER.com.

29. Sun, H., Wu, J.Y., Abdallah, R. & Webster, J.G., November 2005, "Electromuscular Incapacitating Device Safety." 3rd European :Medical & Biological Engineering Conference, Prague, Czech Republic.

30. "There Are No Failure Mechanisms That Can Significantly Increase

the Output Energy of the TASER M26 or the X26 Weapons." Written by Max Nerhein, available for inspection at TASER's office.

31. Autopsy records of David Glowczenski.

32. All pleadings filed in this matter.

33. All answers to interrogatories, requests for production of documents, and requests for admissions in this matter including all amendments and/or supplements thereto, and including any and all documents attached thereto.

34. All transcripts of depositions and any documents marked as an exhibit to a deposition.

35. Reports of all parties' experts and all supporting documentation, data, video presentations, learned treatises, publications, studies, etc.

36. Enlargements of graphs, photographs or other exhibits.

37. All exhibits identified through future discovery.

38. Documents and materials identified in the Rule 26 disclosure statements of the other parties in this case.

Defendant does not waive objections to any exhibits listed by other parties to this litigation by reason of their inclusion by reference in this list.

Because this case is in its preliminary stages and discovery and investigation are ongoing, Defendant reserves the right to modify, amend, or supplement its initial description of documents that it may use to support its claims or defenses.

**C. A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Defendant is not claiming any damages.

**D. For inspection and copying as under Rule 34, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Illinois Union Insurance Company insured TASER International, Inc. under a General Liability Policy (#XSL-G18382362). The self-insured retention was $100,000 and the policy limit was $2,000,000. The effective dates of this policy were December 1, 2003 to December 1, 2004. TASER also had an excess insurance policy with James River Insurance Corporation, (#00002110-0). This policy has the same effective dates and coverage limit of $3,000,000.

DATED: White Plains, New York
February 20, 2007

JOSEPH A. MARIA, P.C.

By:________S/.____________________
Joseph A. Maria, Esq. (JM0209)
Attorneys for Defendant
**TASER INTERNATIONAL, INC.**
**s/h/a TASER INTERNATIONAL**
301 Old Tarrytown Road
White Plains, New York 10603
(914) 684-0333
File #: 25-0001

TO: FREDERICK K. BREWINGTON, ESQ.
LAW OFFICES OF FREDERICK K. BREWINGTON
Attorneys for Plaintiff
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959

CHRISTINE MALAFI, ESQ.
Suffolk County Attorney
By: RICHARD T. DUNNE, ESQ., ASSISTANT COUNTY ATTORNEY
Attorney for Defendants, COUNTY OF SUFFOLK,
SUFFOLK COUNTY POLICE DEPARTMENT,
DETECTIVE LT. JACK FITZPATRICK
OFFICE OF THE SUFFOLK COUNTY MEDICAL EXAMINER
and DEPUTY MEDICAL EXAMINER JAMES C. WILSON
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788
(631) 853-5674

JELTJE DeJONG, ESQ.
DEVITT, SPELLMAN BARRETT, LLP
Attorneys for Defendants VILLAGE OF
SOUTHAMPTON, SOUTHAMPTON VILLAGE POLICE DEPARTMENT,
POLICE OFFICER, Brian Platt, in his individual and
official capacity. POLICE OFFICER, Marla Donovan, in
her individual and official capacity, POLICE OFFICER,
Chris Wetter, in his individual and official capacity,
POLICE OFFICER, Arthur Schucht, in his individual
and official capacity, and LIEUTENANT, Howard
Lewis, in his individual and official capacity
50 Route 111
Smithtown, New York 11787
(631) 724-8833

MARCY D. SHEINWOLD, ESQ.
LEWIS JOHN AVALLONE AVILES & KAUFMAN, LLP
Attorneys for Defendants SOUTHAMPTON VILLAGE
VOLUNTEER AMBULANCE (a.k.a SOUTHAMPTON E.M.T. UNIT),
MELISSA CROKE, EMT, in her individual and official
Capacity, KEITH PHILLIPS, EMT, in his individual
and official capacity, TIM CAMPBELL, EMT, in his
individual and official capacity, and JAMES MOORE,
Ambulance Driver, in his individual and
official capacities.
425 Broad Hollow Road – Suite 400
Melville, New York 11747
(631) 755-0101