**COUNTY OF SUFFOLK**



**DIVISION OF MEDICAL - LEGAL INVESTIGATIONS**

**& FORENSIC SCIENCES**

**CRIME LABORATORY**

Sheet Number _____ 4 of 4 _____

Laboratory Number _____ 04-1018 _____

C.C. Number _____ 04-65,136 _____

Command _____

People vs. _____

Date Submitted _____

Submitted By _____

## WORKSHEET

period of approximately thirtynine (39) seconds.

- The Devices internal clock was found to have been running at an incorrect time.

- The Device's Energy output was found to be consistant with factory specifications.

GK

5/16/05

20-0190, 9/97dg

GK 1 of 82
5/16/2005

04- 65,136        GK 1/27/2005

LIMS # 04-1018   David Guberzensel
              ME # 2004-0487

The following case was in the possession of F.S.I. Roy Sineo prior to this date. The initial incident took place on Feb. 4th, 2004. 25 initial examination is documented as taking place on Feb. 10th, 2004.

. His examination centered around using the weapon as a Taser firing a cartridge for operability. His reported reflected the identification of the weapon and a operability firing of a single air taser cartridge. It did not reflect any additional firing of taser cartridges or quantity of any spare firings during the testing period.

A latter request was made to test device as a Stun gun. 25 second examination is documented as taking place on Dec. 3rd, 2004.

. His second examination centered ~~about~~ around using the weapon as a Stun gun. His report reflected the operability testing of the device as a Taser and a Stun gun. Neither the report nor the notes reflect the quantity ~~of~~ or of additional spare firings.

COUNTY OF SUFFOLK

DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

& FORENSIC SCIENCES

CRIME LABORATORY

| | |
|---|---|
| Sheet Number | 1 of 1 |
| Laboratory Number | 04-1018 |
| C.C. Number | 04-65136 |
| Command | 3310 |
| People vs. | |
| Date Submitted | 2/5/04 |
| Submitted by | Det. Albergo #783 |

## MATERIAL SUBMITTED

Item #1.1 -      a nylon carry bag
Item #1.2 -      a Taser device
Item #1.2.01 -   a Taser cartridge
Item #1.3 -      a Taser cartridge
Item #1.4 -      a Taser cartridge
Item #1.5 -      a peppermace canister

## RESULTS

Item #1.1 -      The item is a black, nylon carry bag.

Item #1.2 -      The device is a Taser brand electronic Taser device model M26, serial number P3-015300.
                 Using one (1) Taser cartridge submitted from Item #1.2.01; the device was tested and found to be
                 operative.

Item #1.2.01 -   The item is a Taser brand Taser cartridge, serial number T03-021475 and is the proper size and type for
                 use with Item #1.2.

Item #1.3 -      The item is a Taser brand Taser cartridge, serial number T03-021619 and is the proper size and type for
                 use with Item #1.2.

Item #1.4 -      The item is a Taser brand Taser cartridge, serial number T03-021605 and is the proper size and type for
                 use with Item #1.2.

Item #1.5 -      The item is an Armor Holdings Company, Defense Technology Federal Laboratories brand 5.5%
                 peppermace, peppermace canister, model MK-6, Lot #PMS056.

False statements made herein are punishable as a
Class 'A' misdemeanor pursuant to Section 210.45 of
the Penal Law, State of New York.

I have performed the above indicated analysis(es)
and reach the conclusion set forth, and hereby
certify that the within is a true and correct original
or copy of the laboratory report in this case.

Roy Sineo
Analyst

Date     2/11/04

mm

CL210 (2/97)

COUNTY OF SUFFOLK

DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

& FORENSIC SCIENCES

CRIME LABORATORY

Sheet Number _____ 1 of 2 _____

Laboratory Number _____ 04- 1018 _____

C.C. Number _____ 04- 65136 _____

Command _____ 3310 _____

People vs. _____

Date Submitted _____ 2/5/04 _____

Submitted By ____ Det. Albergo # 783 _____

## WORKSHEET

### Material Submitted

Item #1.1    a Nylon Carry bag

Item #1.2    a Taser device

Item #1.2.01 a Taser Cartridge

Item #1.3    a Taser Cartridge

Item #1.4    a Taser Cartridge

Item #1.5    a Peppermace Canister

### Result

Item #1.1    The item is a black, Nylon Carry bag.

Item #1.2    The device is a Taser brand electronic Taser device Model: M26 serial number: P3-015300. Using one (1) Taser Cartridge submitted from item# 1.2.01; the device was tested and found to be operative.

Item #1.2.01 The item is a Taser brand Taser Cartridge serial number: T03-021475 and is the proper size and type for use with item #1.2.

20-0190. 2/97cq

COUNTY OF SU. OLK

Sheet Number _____ _2g2_____

Laboratory Number ___ 04-1818 ___

C.C. Number ___ 04-65136 ___

Command ___ 3310 ___

People vs. _____

Date Submitted ___ 2/5/04 ___

Submitted By ___ Det. Albuge # 783 ___

DIVISION OF MEDICAL - LEGAL INVESTIGATIONS

& FORENSIC SCIENCES

CRIME LABORATORY

## WORKSHEET

Item #13    The item is a Taser brand Taser Cartridge serial number: T03-021619 and is the proper size and type for use with item #12.

Item #14    The item is a Taser brand Taser Cartridge serial number: T03-021605 and is the proper size and type for use with item #12.

Item #15    The item is an Armor Holdings Company, Defense Technology Federal Laboratories brand 5.5% peppermace, ~~pepper~~ Peppermace Canister model: MK-6 Lt # PMS056.

Reg Simo 2/10/04

2/10/07

pg 2

RS                                                                    2/10/04

L# 04-10.8

.# 04-65136


Item #1
1.  S C Box /  PD + TDA markings , evidence Tape  Contains:  ( box checked at lab) ①

    S P B /  PD markings, evidence tape , staples   Contains:


Item #1.1   a  Nylon  carry bag
            black , Zipper , belt clip
            4 Compartments w/ zipper


Item #1.2   a  Taser device                    make: Taser      #  Manual Safety-
            Laser  Sight                        mod: M26            functional as
            (located in Item #1.1)             s/n: P3-015300      designed


Item #1.2.01   a Taser Cartridge
               # T03-021475 .   located on end of Item # 1.2 .    Taser brand
               proper size-type for use w/ Item #1.2


Item #1.3   a Taser Cartridge   - Taser brand
            # T03-021819
            (located in Item #1.1)
            proper size-type for use w/ Item #1.2

25                                                      2/1/04

? # 04-1018

# 04-65136

Item #1.4     a Taser Cartridge     - Taser brand

TO3-021605

located in item #1.1

proper size + type for use with item #1.2

SPB/ PO markings, evidence Tape, staples     Container

Item #1.5     a peppermace Canister                    Black, plastic

5.5% peppermace                                        belt clip

Lot # PMS056

Armour holdings Company brand

Defense Technology  Federal Laboratories brand

Model: MK-6



POLICE DEPARTMENT COUNTY OF SUFFOLK

# EVIDENCE ANALYSIS REQUEST

PDCS 3220-9c

COMPLETE FORM AND SUBMIT WITH ITEMS OF MATERIAL FORWARD FOR
EXAMINATION TO THE CRIME LAB OR IDENTIFICATION SECTION

| DATE OF REPORT | CENTRAL COMPLAINT NUMBER |
|---|---|
| 1-1-04 | CL-65138 |

INVESTIGATING OFFICER/AGENCY/COMMAND/TEAM NUMBER
Albergo, Pasquale #783/3310

OUTSIDE AGENCY CASE NO

HAZARDOUS MATERIALS (please check)
SHARP OBJECTS ☐   BIOHAZARD ☐
CHEMICAL HAZARD ☐

CRIME(S) MATTER UNDER INVESTIGATION (list all)
Death Investigation

PLACE OF OCCURENCE
160 N. Main St., Southampton

NAME & ADDRESS OF COMPLAINANT/OWNER/VICTIM
David Glowczenski

NAME OF DECEASED OR INJURED (include Race & Sex)

**OFFICE USE ONLY** Do not write in this area

LAB NO. 04-1018   SSE NCISL

Suffolk County Police
04-65138

Suffolk County Crime

ASSIGNED TO:

EVIDENCE LOG PG. NO.

| DATE OF ARREST | ARRESTING OFFICER | SHIELD | COMMAND |
|---|---|---|---|

NAME AND ADDRESSES OF DEFENDANTS/SUSPECTS INCLUDE D.O.B./I.B.NO.   *   Provide race & sex in connection with hair, blood or other biological submissions

## EVIDENCE

| ITEM # | DESCRIPTION | WHERE & UNDER WHAT CIRCUMSTANCES ITEM RECOVERED |
|---|---|---|
| 1 | Black nylon bag containing one Taser Model M26 and two attachments | Items 1 and two were recovered on 2-4-04 at 160 N. Main St. Southampton by Lt. Howard Lewis and turned over to the undersigned officer. |
| 2 | One canister of pepermace Lot PM3056 5.5%, MK-6 | |
| | | (1) used for test purpose : retained at lab (2) |

PROVIDE BRIEF DESCRIPTION OF CASE AND EXAMINATIONS REQUESTED   *

Item #1 to be tested for operability and malfuctions

Item #2 to be tested for malfunctions and operability and weight and content

| NAME OF LAB TECHNICIAN OR I.D. OFFICER ASSIGNED (if this is a follow-up) | SEND WRITTEN RESULTS TO: Det. Pasquale Albergo #783 |
|---|---|
| NAME OF OFFICER RECOVERING MATERIAL, etc.   RANK/SHIELD/COMMAND Det. Pasquale Albergo # 83/3310 | SIGNATURE OF OFFICER RECOVERING MATERIAL P. Albergo Det 783/3310 |

* Additional space provided on the back of form

53-513., 5/93

COUNTY OF SUFFOLK

| | |
|---|---|
| Sheet Number | 1 of |
| Laboratory Number | 04-1018 |
| C.C. Number | 04-65136 |
| Command | 3310 |
| People vs. | |
| Date Submitted | 2/5/04 |
| Submitted by | Det. Albergo #783 |

DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

& FORENSIC SCIENCES

CRIME LABORATORY

## SUPPLEMENTAL REPORT

### MATERIAL SUBMITTED

Item #1.2 -    a taser device (previously submitted)

### RESULTS

Item #1.2 -    Further examination of the submitted device revealed it to be functional as both an electronic taser device and an electronic stun gun.

False statements made herein are punishable as a Class 'A' misdemeanor pursuant to Section 210.45 of the Penal Law, State of New York.

I have performed the above indicated analysis (es) and reached the conclusion set forth, and hereby certify that the within is a true and correct original or copy of the laboratory report in this case.

_____
Roy Sineo
Analyst

Date    12/7/04

Vm

## COUNTY OF SUFFOLK

DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

& FORENSIC SCIENCES

CRIME LABORATORY

Sheet Number _____ 1 of 1 _____

Laboratory Number _____ 04-1018 _____

C.C. Number _____ 04-65136 _____

Command _____ 3310 _____

People vs. _____

Date Submitted _____ 2/5/04 _____

Submitted By _____ Det Albano #783 _____

### WORKSHEET

Supplemental Report

Material Submitted

Item # 1.2    a taser device ( previously submitted )

Results

Item # 1.2    Further examination of the submitted device
revealed it to be functional as both an
electronic taser device, and an electronic
Stun gun.

12/7/04

Roy Sinc.  12/3/04

RS                                                        12/3/04

L # 04.1018

C # 04.65156


SP3 / RS markings, Contained A label (lab), Contains:

        ≠ Item was Requested back to lab for further examination by RS

Item #1,2 ... a Taser device (previously Submitted)
                s/n: 73.015300
                mdl: M26


examination: when taser Cartridge is removed, the device functions
                as an "electronic stun gun".


The device is the (2) typical of the rechargette variety.

# Suffolk County Crime Laboratory

Office of the Medical Ex.
P.O. Box 6100, Hauppauge, NY  11788-0099





# FAX

| | |
|---|---|
| Date: | 2/14/05 |
| Number of pages including cover sheet: | ② |

| To: | | From: | Roy Siver |
|---|---|---|---|
| | ADA Trish Bacia | | Suffolk County Crime Laboratory |
| | | | Firearms |
| Phone: | | Phone: | (631) 853-5585 |
| Fax phone: | 2. 2786 | Fax phone: | (631) 853-5739 |

**REMARKS:**  ☐ Urgent   ☑ For your review   ☐ Reply ASAP   ☐ Please comment

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH THE TRANSMISSION IS ADDRESSED.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THIS OFFICE IMMEDIATELY BY CALLING (631) 853-5585.

C-Lab 1 015 (07/04)

# Suffolk County Crime Laboratory

Office of the Medical Examiner
P.O. Box 6100, Hauppauge, NY 11788-0099

  

# FAX

| | |
|---|---|
| Date: | 12/7/04 |
| Number of pages including cover sheet: | 2 |

| To: | ADA Trish Brisco |
|---|---|
| Phone: | |
| Fax phone: | 2-2786 |

| From: | Roy Silver |
|---|---|
| | Suffolk County Crime Laboratory |
| | Firearm Unit |
| Phone: | (631) 853-5585 |
| Fax phone: | (631) 853-5739 |

REMARKS: ☐ Urgent  ☒ For your review  ☐ Reply ASAP  ☐ Please comment

Trish -

I Re-examined the taser device & this is the Report

Any questions call me   853-5578

Roy

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH THE TRANSMISSION IS ADDRESSED.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THIS OFFICE IMMEDIATELY BY CALLING (631) 853-5585.

04- 65, 136                    GK 1/27/05

LIMS # 04-1018  CONT.

A LATER REQUEST WAS MADE
TO RECOVERY THE DEVICE USAGE
RECORD FROM THE DEVICE. THE
NECESSARY PROPRIETARY SOFTWARE
WAS OBTAINED FROM TASER INTERNATIONAL
BY THE DISTRICT ATTORNEYS OFFICE. THE
LABORATORY RECEIVED THE SOFTWARE
AND PROPRIETARY HARDWARE CONNECTORS
TO PERFORM THE REQUESTED ANALYSIS.

ON JANUARY 27TH, 2005 R.S. AIDED
BY F.S. III CHARLES SACCENO, WITH
F.S. III G. KRIVOSTA IN ATTENDANCE,
ATTEMPTED TO DOWNLOAD THE USAGE MEMORY
FILE FROM THE DEVICE

• THE MEMORY RECORD BEGINS
  WITH LINE 001 ON 4/21/03
  AND DOCUMENTS NORMAL USAGE
  THROUGH LINE 147 ON 1/23/04
  LINE 148 THROUGH LINE 169
  DOCUMENTED (22) ADDITIONAL
  USAGES, BUT THE RECORDED
  INFORMATION FOR DATE, DAY OF
  WEEK, AND TIME OF USAGE
  WERE CORRUPTED. THESE (22)
  UNACCOUNTED FOR DISCHARGES
  OF DEVICE WOULD NOW INCLUDE
  ANY PRE-INCIDENT, INCIDENT,
  AND POST-INCIDENT/LAB TESTING
  USAGES.

O4- 65, 136
LIMS # 04-1018  cont.

GK 1/27/05

Conferences + Conferences By phone
were made Between GK, Robert
Genna (Chief of Lab), John Collins
(DA office Homicide Bureau Chief,
+ Joe Duracell an Employee
of Taser Intc.

*  Taser Intc requested that
we send Device to them
as they felt lost data was
most probably recoverable
( Note: they had been sent
Download by E-mail)

•  D.A. office requested that
Laboratory make an attempt
to recover information on
its own (as Taser was a
Co-Defendant in Civil case).

GK Took over case during
morning of Jan. 27, 2005.
— Copies of All RS reports,
Notes , + the original ②
Downloads by RS + CS are
added to this note package —

GK Took possession of Container #A
and its Contents at this time

04-65, 136                          GK 1/21/05

Lims # 04-1018   Cont. # A

A property Bureau Cardboard Label
Storage Box ( 04002759 )

With a Previous Heat Sealed +
Compartmentized Laboratory PB/
(R5 markings)

Nylon case, two Air Taser cartridges,
and an OC Spray canister
All still sealed in compartments

Removed from it's compartment
was the following:

Item # 01.02    A Taser
Wrapper Tagged with
laboratory Bar code
sticker and R5
2/10/2004
markings

Marul Taser Intl
Model M26 - 06/02
S/N P3-015300

On 1/28/2005 two additional
Tasers were obtained by GK from
the F.A. Training Unit for use as
laboratory references (S/N P3-047034 + P3-048000).

04- 65, 136                    GK 1/27/2005

LIMS# 04-1018 cont.

GK Examinations:

It appeared that the question
task might still be documenting
its usage just placing the
information in the wrong columns.

Between Jan 31, 2005 and
Feb. 14, 2005 (9) new
downloads were performed
by GK (software was loaded
onto a F.A. Unit Computer).
(Data received as a DAT. file
was converted to a Word file
for ease of printing data)

Notes were added to each of
these reports to document
what testing took place prior
to download

As conclusions were reached
these were added onto
printout.

Prior conclusions were added
to next report

All (9) downloads have been
added to the note package

04-65, 136

CK 1/27/2005

LIMS # 04-1018 cont.

In Feb. 14TH, 2005 the last of the testing needed to sort out the memory file was accomplished.

A meeting was called with John Collins of the Homicide Bureau of the DA office + the C.O. + Team members from the SCPD Homicide Squad.

Note Package "Post-Testing 07" and a calender was distributed and discussed. The following preliminary conclusions was revealed

- The units storage of usage data most probably corrupted between Line 147 and 148

- By Line 149 the units clock is running but placing stored data in the wrong file position/column

※ - Unit Discharged (4) and possible a (5TH) time at incident
Lines 149-152 Document usage on Wed, Feb. ? , 2004 @ 13:35 - 13:36 GMT

My conclusions for # Date + Sec are inconclusive at this time

04-65, 136                                    GK 1/27/2005

LIMS # 04-1018   Cont.

- Line 153 - 157   Documents
  (5) usages on a Monday,
  in Feb. _?_ , 2004 within a
  3-4 minute period.
  Only possible date has unit
  in MNVT of Crime Lab

- R5 must had Take possession
  of Evidence And Began his
  Examinations prior to Taking
  possession on LIMS.

- Line 158 - 162   Documents
  (5) usages on a Tuesday
  in Feb3 _?_ , 2004 within a
  57 minute period. LIMS
  Documents unit in R5 possession
  on Tues , 2/10/2004 from 0845
  - 0957 hour.

- Line 163 - 169   Documents
  (7) usages on a Friday in
  Dec. _?_ , 2004 within a
  5 minute period. LIMS Documents
  unit in R5 possession on
  Friday , 12/3/2004 from 0910
  - 1000 hour.

- Devices Clock GK Although
  Running is not set for
  proper Time. It has Drifted
  from usense GMT Time
  Setting

04- 65, 136

LIMS # 09-1013 cont.

GK 5/14/...
GK 1/27/2005

- During the original download of data by RS + CS the Devices Clock was inadvertently reset by CS

Concesses of meeting was to now request Tasca Intc to interpret stored usage records in question Line 148 through 169 to concure my findings. At the same time unit would be tested for output.

Pages from M.E. file which includes, report, sketches, P.D. Death report, + Supplemental reports were added to note package

04- 65, 136

LIMS # 04-1018

GK 5/4/2005

On this day the following individuals were present for the re-examination of the question Taser by representatives of Taser Int'l.

MARK Johnson
matt carver
John B. Collins
James C. Wilson
Patricia Brosco
Kerriann Kelly
John Twiname D/Sgt
Jack Fitzpatrick D/Lt.

*[signatures]*

Examinations were performed by Mark Johnson, Director of Technical Programs of Taser Int'l and Matt Carver, Technical Liason - Research + Development

First examination was centered around interpreting usage memory files - Line 147 through into my testing was examined. Using additional proprietary software the raw data stored was shifted and shift date/time data was generated. See attached printout placed in notes.

04- 65, 136                    GK 5/4/2005

Lims # 04-1018   Taser Int'l Cont

The question Taser was then Tested For Energy output

Proprietary software + Hardware Connected Taser to a Tracing Oscilascope.

Wave form and pulse Rate were Determined. These were Compared Against 60 Ohm Test Equipment memory File, A Taser Brought by Taser Int'l Analyst, and a Laboratory supplied Reference Taser, S/N P3-048880

The wave Form and pulse Rate of All Three Tasers, was Consistent with Factory Specification

Note:
John Cole
Allowed himself
To be
"Drive Stunned"
During
Testing

Pulse Rates under Battery power was much Lower As All Battery packs were near Dead.

③ CD's + ③ Diskettes were placed in Notes.
Copies of All Files present on These were burned to a single CD for FBI

# EXHIBIT NOT INCLUDED
## TRANSCRIPT OF TESTIMONY IS IN POSSESSION OF ALL PARTIES' COUNSELS

# EXHIBIT V

# EXHIBIT 

① ADM 12/2/88
 DISCH 1/13/89

|  | DATE | INIT |
|---|---|---|
| QUAN ANAL | 3/89 | SG |
| INDEX | 3/6/89 | SK |
| QUAL ANAL | 3/89 | SG |

② Adm. 12/24/89
Disch. 1/5/90

|  | DATE | INIT |
|---|---|---|
| QUAN ANAL | 3/90 | EP |
| INDEX | | |
| QUAN ANAL | 3/90 | EP |

③ 6/21/90
7/19/90

|  | DATE | INIT |
|---|---|---|
| QUAN ANAL | 10/90 | EP |
| INDEX | | |
| QUAL ANAL | 10/90 | EP |

④ ADM - 1/31/91
DISCH - 2/14/91

|  | DATE | INIT |
|---|---|---|
| QUAN ANAL | 9/91 | EP |
| INDEX | | |
| QUAL ANAL | 9/91 | EP |

RELEASE/TERMINATION SUMMARY                    GLOWCZENSKI, David


"C" NUMBER 128282              FACILITY NAME KPPC

ADMISSION DATE 12/2/88              WARD/UNIT 223-Islip/East End

EVENT DATE 1/13/89                    EVENT Discharge


## ADMISSION DATA

20 year old white, single male admitted on 12/2/88 on DCS status.  Pa-
tient was referred by Mobile Screening Team.  Patient was handcuffed,
refused to give any information, urinated in his pants in the screen-
ing room.  Patient was reported to be fasting for about 1 week and
felt that he is Jesus Christ, was not going out felt that food was be-
ing poisoned by people.

## DIAGNOSTIC IMPRESSION UPON ADMISSION

<u>AXIS I</u>
292.11      Psychoactive Substance-Induced organic mental
            disorders - delusional disorder

309.40      Adjustment Disorder - with mixed disturbance of
            emotions and conduct

<u>AXIS II</u>
V71.09      No diagnosis or condition on AXIS I or AXIS II

<u>AXIS III</u>
None

<u>AXIS IV</u>
4

<u>AXIS V</u>
5

## DISCHARGE DATA

Patient was discharged on 1/13/89 to reside at 70 Laytou Ave, S.
Hampton, NY 11968 and will attend the Peconic Center for aftercare.

## FINAL PRIMARY AND SECONDARY DIAGNOSES

<u>AXIS I</u>
298.80      Psychotic Disorders - NEC - brief reactive psychosis

<u>AXIS II</u>


GLOWCZENSKI, David              Page 1                    128282

King Park Psychiatric Center

## PSYCHO-SOCIAL ASSESSMENT

PATIENT: GLOWCZENSKI, DAVID

ADMISSION DATE: 12/2/88

DATE OF BIRTH : 4/19/68

DATE: 12/9/88

C#  12838

SS#: Unknown

PRIVILEGED AND CONFIDENTIAL
USED ONLY IN THE BEST
INTEREST OF THE PATIENT

Informant ( Name, Address, Relationship, Impression) Description of Patient, Religio-Ethnic Cultural Backgound, Presenting Problem, Previous Psychiatric Hospitalizations, Developmental History, Family History, Education, Employment, Marital, Military, Legal, Financial, Medical, Drug/Alcohol History and Current Living Situation.

INFORMANT: Patient, patient's mother, patient's brother. Patient remains delusional and his reliability is questionable. Patient was very defensive, and suspicious during interview often stating that any personal information was "none of your business".

IDENTIFYING DATA: Patient is a 20 year old single white unemployed male.

PRESENTING PROBLEM: Patient was brought to K. P. P. C. by ambulance, from home upon referral of mobile crisis unit.

According to patient's mother and brother, patient had been fasting for two weeks (not 2 days as stated in Admission Note). He states that he believes his is Jesus Christ and that people are poisoning his food. He reports that he believes he is being controlled by others and says he saw Jesus Christ last Easter.

BACKGROUND: According to patient and his mother, he has been living with his mother and brother (not with friend as stated in Admission Note in South Hampton. For the past 6 moths patient has been unemployed. (He was a house painter). He states that he hated his job and wanted to take time to get his GED. Patient's mother reports that in April patient attended a Rock concert when he had taken psychedelic mushrooms. When he returned home he became a vegetarian, stopped working and became preoccupied with Jesus Christ. Shortly after this he broke up with his girl friend.

Patient's mother reports that prior to the above mentioned incident patient worked full time, was a foreman at his job and had his own apartment.

Patient is the second youngest child in a family of 5. He has 2 brothers and 2 sisters, Patient's parents are both living and are divorced.

Patient had one previous psychiatric hospitalization at Sagamore for evaluation because he refused to go to school.

DRUG ABUSE: Patient denies alcohol abuse and would not give any information concerning his drug history other than to state that he has not

33/4

13

Kings Park Psychiatric Center

PSYCHO-SOCIAL ASSESSMENT

used drugs for one year.  Mother and brother state he used psychedelic mushrooms in April of 1988.

FINANCES:  Patient has been supported by family.

PRIVILEGED AND CONFIDENTIAL
TO BE USED ONLY IN THE BEST
INTEREST OF THE PATIENT

IMPRESSIONS, STRENGTHS, LIABILITIES, RECOMMENDATIONS:

STRENGTHS:  Patient is young, verbal, ambulatory and in good physical health.  This is his first serious breakdown.  Good past work history Patient can return to live with family when stable and has support from same.

LIABILITIES:  Patient entertains paranoid delusion with impaired insight and judgement.  His social functioning has deteriorated in past 6 months.  Patient does not acknowledge the danger of fasting.  He has no income.  Patient refuses medication.

RECOMMENDATION:  Patient should remain hospitalized until stabilized. He should be encouraged to take meds and given supportive therapy to help him accept and understand his illness.  Patient should be referred o Access for drug counseling.  Patient will need SSI and is interested in obtaining a GED.

After care should include on going psychotherapy and drug counseling.  Family should be included in discharge planning and may need some support services.

M. Nudleman
P. S. W. I

# EXHIBIT X

Case 2:04-cv-04052-SJL Document 118-3 Filed 11/30/09 Page 30 of 164 PageID #: 1793

OCT 31 1989

For Professional Purposes Only

SAGAMORE CHILDREN'S CENTER

PSYCHIATRIC EVALUATION

Suffolk County Social Services

Re: GLOWCZENSKI, David
Hosp. No. 2410

June 4, 1980

163.13

Hearings and Appeals
RECEIVED
JAN 19 1990
65 Fulton Avenue
Hempstead N.Y. 11550

David, a 12 year old boy, was referred for psychiatric evaluation because he has not been going to school and also has difficulties at home during which time he has violent outbursts and he apparently imitates his father who also has violent outbursts when he is under the influence of alcohol. Apparently, a PINS petition has been filed because of the parents' inability to send him home and they have recommended that he be evaluated at this outpatient clinic.

Background history indicates that David was born on 4/19/68. Apparently, pregnancy and birth was normal. He weighed 8 lbs. 12 oz. and according to his mother his infancy and early childhood was normal and non problematic. At the age of 18 months, he had to be hospitalized for three days for herniorrhaphy and according to his mother he was quite upset about the separation and reacted adversely after his return from the hospital for several days. There were no physical problems except that he has sinusitis and sinus headaches quite frequently and also when he was in third grade, he had a broken arm and prior to that he fell from his bicycle and was unconscious for a few minutes and was in the hospital overnight. However, without any sequelae. Family history indicates that the father is an alcoholic. He basically has a pathological intoxication in the sense he cannot hold too much liquor and so he drinks on weekends and gets sick by it. Somehow he feels that he is not an alcoholic and does not seek any help. According to Mrs. Glowczenski, because of Mr. Glowczenski's alcoholic problem and violent outbursts, there have been marital problems and she is on the verge of getting a separation. Family history also indicates that his maternal grandmother had a nervous breakdown probably post-operative psychosis because it happened after hysterectomy.

Mrs. Glowczenski, who was seen prior to seeing David, reiterated the above and she stated that particularly she is concerned about his not going to school which started since he was in 4th grade and has steadily increased until this year and so they put him in a private school and in spite of that, there was no benefit and the private school asked them that David be removed from the school and sent to public school. Since he was put in the public school in March, he has not attended a single day and refuses to go to school. Because of the above, there has been a PINS petition filed and placement in the foster home is being considered. Mrs. Glowczenski states that David, at the present time, either stays at home and watches T.V. or goes with her when she works in the neighboring mansions as a housecleaner. She states that David has been taken to psychologists on two occasions but without any good results and psychologists have been frustrated because of this uncooperative behavior. Mrs. Glowczenski also is concerned about David's explosive behavior which is patterned like his father's behavior and states that David gets easily frustrated, wants his own way and says "he is trying to correct me, tells me what to do" and apparently if she doesn't listen then he has a temper tantrum where he throws things around or kicks the walls, etc. Apparently, she corrects him by ignoring him and if that does not work, spanking him on his bottom or sometimes physically restraining him by sitting on him. She states if foster home is recommended after this evaluation and if it benefits David, she would readily send him or she's prepared for any other treatment plan including inpatient hospitalization if recommended.

EXHIBIT NO. 24 Page 1 of 3 pages
154

Re: David Glowczenski                    CONFIDENTIAL AND PRIVILEGED
Psychiatric Evaluation                   For Professional Purposes Only
Page Two cont'd

    David was not to be seen when the undersigned went to bring him to the
interviewing room. He had taken off from the waiting room and the mother had
to go to the car to bring him back. He came to the clinic again very re-
luctantly and he was led into the interviewing room by the undersigned during
which time he walked to the room in a nonchalant fashion. He sat in the
assigned chair, slouching on the chair and without even looking at the under-
signed. He was not hyperactive neither did he exhibit any bizarre behavior
however, his attitude was of non compliance, negativistic and inappropriate.
He was not spontaneous in his verbalizations and neither did he answer the
questions though it was quite evident that he understood every question that
was asked of him but apparently decided not to talk. Finally, when he was
informed that he would not be allowed to go home until he starts talking,
he started verbalizing in monosyllables. David is a nice looking, attractive
boy, well-groomed, appropriately dress, however, had his sneakers on with
untied laces. He did not indicate to have any psychotic symptomatology in
spite of his non verbal behavior. When asked whether he was a happy or a sad
boy he refused to answer. When asked as to what he would like to do when he
grows up, he refused to answer and when asked for the three wishes, he said he
did not know and finally, when asked as to whom he would take with him if he was
marooned on an island, he stated that he would take his dog. At that time, he
started talking about his pets and he stated that he had two dogs, three cats and
one hamster. However, when further going to his problems, he clammed up and
decided not to talk. He stated that he does not know as to why he does not want to
go to school and he stated that he does not know whether he needs help or not. When
asked as to what he would do if there was a fire in a movie house while he was
watching a movie, he said he would run out and when asked as to what he would do
if he found a letter with the address and stamp on it by the roadside, he said he
would mail it. His sensorium was clear, school and general knowledge appeared to
be adequate. He had no insight into his problem and judgment was questionable.

    This 12 year old boy who does not go to school also shows temper tantrums,
is provocative in his behavior, stubborn, and violates minor rules.

    Diagnosis:    313.81 Oppositional Disorder (DSM III  Axis I)

    Recommendation: Psychological evaluation, psychosocial history and individual
psychotherapy and family counseling, however, if this does not work, one should
consider either foster home care or inpatient hospitalization because of his
"school phobia."

Ronald V. Nazareth, M.D./lsl

# EXHIBIT Y

Entry/CC#: **SV-000471-94**    Date: **01/19/1994**    Time: **21:31**    Tour:    **0** Desk Officer:

Call Type..: **DISTURBANCE**                    Priority..:    How Received: **WALK-IN**

Caller.....: **GLOWCZENSKI, THEODORE**
Bus. Name..:
Address....: **70 LAYTON AVENUE**
City/St/Zip: **SOUTHAMPTON, NY 11968**                                Call Back #:

Location of Assignment: **70 LAYTON AVENUE, SOUTHAMPTON**
Cross Street.........:
Business Name........: **GLOWCZENSKI RESIDENCE**
Description..........: **POSSIBLE DOMESTIC**
Post:                    Officer Assigned:         -                        Unit:

Dispatched: **N** Call Taker:         Disp Date: **01/19/1994**   Disp Time:        Arv Time:
Disposition...:                                                      Comp Time:
Add'l Officers:        -    .   .   .   .   .   .   .   .   .   .  Disp to Comp: **00:00**
Add'l Units...:                                                 Rcv'd to Comp: **00:00**

Vehicle Plate Number:                    State:       Make:
Vin:                    Model:                    Color:            Year:

## ASSOCIATED NUMBERS

## PERSONS INVOLVED

Name.........: GLOWCZENSKI, THEODORE        DOB: 02/15/1928
Address......: 70 LAYTON AVENUE
City/State/Zip: SOUTHAMPTON, NY 11968
Phone Number..: (516)283-1487
Sex..........: M      Race: WHI
Person Type...: CALLER

Name.........: GLOWCZENSKI, DAVID        DOB: 04/19/1968
Address......: 70 LAYTON AVENUE
City/State/Zip: SOUTHAMPTON, NY 11968
Phone Number..: (516)283-1487
Sex..........: M      Race: WHI
Person Type...: SUSPECT

## NARRATIVE

COMPLAINANT STATES THAT HIS SON DAVID IS ACTING UP AND THROWING THINGS
ABOUT THE HOUSE AND BREAKING THINGS. #227/214 ASSND. FROF
227/300 ESCORTED SUBJECT TO STONY BROOK EMERGENCY . AUTH 214
FROF

Certified by _____        Dated: _____

Approved by _____        Dated: _____

```
Entry/CC#: SV-005323-94    Date: 06/30/1994    Time: 15:17    Tour:    O Desk Officer:
```

| Call Type..: **DISTURBANCE** | Priority..: | How Received: **TELEPHONE** |
|---|---|---|

```
Caller.....:,
Bus. Name..:
Address....:
City/St/Zip: ,                                          Call Back #:
```

```
Location of Assignment: 70 LAYTON AVENUE, SOUTHAMPTON
Cross Street.........:
Business Name........:
Description..........: FAMILY
Post: A3          Officer Assigned:    224 -WILSON                    Unit: 124
```

```
Dispatched: Y  Call Taker:          Disp Date: 06/30/1994   Disp Time: 15:17    Arv Time: 15:19
Disposition...:                                                        Comp Time: 15:34
Add'l Officers:                                                      Disp to Comp:  0:17
Add'l Units...:                                                      Rcv'd to Comp:  0:17
```

```
Vehicle Plate Number:                    State:      Make:
Vin:                      Model:                     Color:              Year:
```

ASSOCIATED NUMBERS

PERSONS INVOLVED

```
Name..........: GLOWCZENSKI, THEODORE    DOB: 02/15/1928
Address.......: 70 LAYTON AVENUE
City/State/Zip: SOUTHAMPTON, NY 11968
Phone Number..: (516)283-1487
Sex..........: M    Race: WHI
Person Type...: COMPLAINANT
```

```
Name..........: GLOWCZENSKI, DAVID       DOB: 04/19/1968
Address.......: 70 LAYTON AVENUE
City/State/Zip: SOUTHAMPTON, NY 11968
Phone Number..: (516)283-1487
Sex..........: M    Race: WHI
Person Type...: SUSPECT
```

NARRATIVE

CALLER STATES HIS SON IS MENTALLY ILL AND VIOLENT, AND WANTS HIM COMMITTED.

```
Certified by _____          Dated: _____

Approved by _____           Dated: _____
```

Entry/CC#: **SV-005332-94**    Date: **06/30/1994**    Time: **18:49**    Tour:    **0** Desk Officer:

Call Type..: **AIDED CASE - AMBULAN**    Priority..:    How Received: **TELEPHONE**

Caller.....: ,
Bus. Name..:
Address....:
City/St/Zip: ,                                                    Call Back #:

Location of Assignment: **70 LAYTON AVENUE, SOUTHAMPTON**
Cross Street.........:
Business Name........: **GLOWCZENSKI RESIDENCE**
Description..........: **MOBIL CRISIS TEAM BACKUP (SVVA DISPATCHED)**
Post:            Officer Assigned:        -                    Unit:

Dispatched: **N**  Call Taker:        Disp Date: **06/30/1994**  Disp Time:        Arv Time:
Disposition...:                                                        Comp Time:
Add'l Officers:                                                Disp to Comp: **00:00**
Add'l Units...:                                                Rcv'd to Comp: **00:00**

Vehicle Plate Number:            State:        Make:
Vin:            Model:            Color:            Year:

                          ASSOCIATED NUMBERS

                           PERSONS INVOLVED
Name..........: GLOWCZENSKI, DAVID        DOB: 04/19/1968
Address.......: 70 LAYTON AVENUE
City/State/Zip: SOUTHAMPTON, NY 11968
Phone Number..: (516)283-1487
Sex..........: M    Race: WHI

                            NARRATIVE
THE MOBIL CRISIS TEAM INITIALLY REQUESTED A POLICE BACKUP AT THE INCIDENT
LOCATION BECAUSE OF THE PSYCHIATRIC HISTORY ASSOCIATED WITH THE VICTIM.
THE AMBULANCE WAS SUBSEQUENTLY REQUESTED TO TRANSPORT DAVID GLOWCZENSKI TO
SOUTHAMPTON HOSPITAL BECAUSE OF HIS PHYSICAL AND MENTAL CONDITION AT THE
TIME.   (NOTE: THE VICTIM/PATIENT WAS ULTIMATELY TRANSPORTED TO KINGS PARK
BY THE SVPD BECAUSE PECONIC AMBULANCE WOULD NOT TRANSPORT A PATIENT DEEMED
VIOLENT.)


Certified by _____            Dated: _____

Approved by  _____            Dated: _____

Entry/CC#: **SV-005343-94**   Date: **06/30/1994**   Time: **23:25**   Tour:   **O** Desk Officer:

**C**a**ll** Type..: **SERVICE CALL**         Priority..:   How Received:   **TELEPHONE**

Caller.....:,
Bus. Name..:
Address...:
City/St/Zip: ,                                    Call Back #:

Location of Assignment: **240 MEETING HOUSE LANE, SOUTHAMPTON APT EMERGENCY**
Cross Street.........:
Business Name........: **SOUTHAMPTON HOSPITAL**
Description..........: **TRANSPORT TO KINGS PARK PSYCHIATRIC HOSPITAL**
Post: **A3**      Officer Assigned:        -                    Unit:

Dispatched: **N** Call Taker:        Disp Date: **06/30/1994**  Disp Time:          Arv Time:
Disposition...:                                           Comp Time:
Add'l Officers:                                  Disp to Comp: **00:00**
Add'l Units...:                                  Rcv'd to Comp: **00:00**

Vehicle Plate Number:            State:      Make:
Vin:                Model:            Color:            Year:

ASSOCIATED NUMBERS

PERSONS INVOLVED

Name.........: GLOWCZENSKI, DAVID       DOB: 04/19/1968
Address.......: 70 LAYTON AVENUE
City/State/Zip: SOUTHAMPTON, NY 11968
Phone Number..: (516)283-1487
Sex..........: M      Race: WHI
Person Type...: VICTIM

Certified by _____              Dated: _____

Approved by  _____              Dated: _____

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **I N C I D E N T** | Sat | Aug | 26 | 1995 | 23:30 | | | | | 15 Tm |

| 16 Incident Type | 17 Business Name | | 18 Weapon(s) |
|---|---|---|---|

| 19 Incident Address(Street No ,Street Name ,Bldg No ,Apt No ) | 20 City, State ,Zip □C □T □V) | 21 Location Code |
|---|---|---|
| 70 LAYTON AVENUE | SOUTHAMPTON | |

| 22 OFF. NO. | LAW | SECTION | SUB | CL | CAT | DEG | ATT | NAME OF OFFENSE | CTS | 23 No of Victims |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PL | 145.00 | 1 | | | | O | CRIMINAL MISCHIEF FOURTH DEGREE | 1 | 0 |
| 2 | PL | 240.26 | - | | | | O | HARASSMENT IN THE SECOND DEGREE | 1 | |
| 3 | | | | | | | O | | | 24 No of Suspects |

**ASSOCIATED PERSON**

| 25 Person Type CO=Complaint OT=Other PI=Person Interviewed PR=Person Reporting WI=Witness NI=Not Interviewed VI=Victim | | 26 Victim also complainant □Y □N |
|---|---|---|

| TYPE/NO | NAME(LAST,FIRST,MIDDLE,TITLE) | Date of Birth | STREET NO ,STREET NAME,BLDG,NO ,APT NO ,CITY ,STATE ,ZIP | Telephone No. |
|---|---|---|---|---|
| | GLOWCZENSKI , DAVID | 04/19/1968 | 70 LAYTON AVENUE SOUTHAMPTON, NY 11968 | BUS () |
| | | | | RES (516) 283-1487 |
| CO | GLOWCZENSKI , THEODORE | 02/15/1928 | 70 LAYTON AVENUE SOUTHAMPTON, NY 11968 | BUS () |
| | | | | RES (516) 283-1487 |
| | | | | BUS |
| | | | | RES |
| | | | | BUS |
| | | | | RES |

| 27 Date of Birth | 28 Age | 29 Sex □M □F □U | 30 Race □White □Indian □Black □Asian □Other □Unk. | 31 Ethnic □Hispanic □Unk. □Non-Hispanic | 32 Handicap □Yes □No | 33 Residence Status □Resident □Tourist □Commuter □Military | □Student □Other □Homeless □Unk/Not Indicated | 34 Emp Rel Foreign Nat. |
|---|---|---|---|---|---|---|---|---|

**SUBJECT/ARRESTED PERSON**

| 34 Type/No | 35 Name(Last,First,Middle) | 36 Alias/Nicknames Maiden Name(Last,First,Middle) | 37 Apparent Condition □Impaired Drugs □Mental Dis □Unk. □Impaired Alco □In/Fl □App. Norm. |
|---|---|---|---|

| 38 Address(Street No ,Street Name,Bldg ,No ,City ,State ,Zip) | 39 Phone Res: Bus: | 40 Social Security No. |
|---|---|---|

| 41 Date of Birth | 42 Age | 43 Sex □M □F □U | 44 Race □White □Indian □Black □Asian □Other □Unk. | 45 Ethnic □Hispanic □Unk. □Non-Hispanic | 46 Skin □Light □Medium □Dark □Unk | 47 Occupation |
|---|---|---|---|---|---|---|
| 48 Height | 49 Weight | 50 Hair | 51 Eyes | 52 Glasses □Yes □Contacts □No | 53 Build □Small □Medium □Large | 54 Employer/School | 55 Address |

| 56 Scars/Marks/Tattoos(Describe) | 57 Misc. |
|---|---|

**PROPERTY**

| 58. Victim or Suspect No. | Property Status | Property Type | Quantity Measure | Class or Drug Type | Model | Serial No. | Description | Value | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 1 |
| | | | | | | | | | 2 |
| | | | | | | | | | 3 |

**VEHICLE**

| 59 Vehicle Status | 60 License Plate No | Full □ Partial □ | 61 State | 62 Exp Yr | 63 Plate Type | 64 Year | |
|---|---|---|---|---|---|---|---|
| 65 Veh. Yr | 66 Make | | 67 Model | | 68 Style | 69 VIN | 4 |
| 70 Color(s) | 71 Towed By: To: | | | | | | 72 Vehicle Notes |

**NARRATIVE**

COMPLAINANT REPORTS THAT HIS SON, DAVID (4/19/68), HAS INGESTED ALCOHOL W/ HIS PSYCHIATRIC MEDICATIONS. THIS COMBINATION HAS RESULTED IN AN ADVERSE REACTION IN THE PATIENT. THE MOBILE CRISIS TEAM NOTIFIED AND RESPODNING TO I/L.

WHILE BEING INTERVIEWED BY THE MOBILE CRISIS TEAM NURSE, DAVID GLOWCZENSKI FLED INTO THE STREET. SUBJECT IS 508 - 200 LBS LSW/BLK SHORTS, BLK T-SHIRT AND BLK BELT - NO SHOES.

8/27/95 - Defendant apprehended in back yard of residence. Defendant transported to HQ for processing and held for AM arraignment before Local Criminal Court base on charge of Criminal Mischief 4th.

**ADMINISTRATION**

| 74 Inquiries (Check all that apply) □DMV □Warr/Warrant □Scofflaw □Crim History □Stolen Property □Other | 75. NYSPIN Message No. | 76. Complainant Signature THEODORE GLOWCZENSKI | **B** use cover sheet |
|---|---|---|---|
| 77. Reporting Officer Signature(Include Rank) | 78. ID No 211 SGT SMITH,NICHO | 79. Supervisor's Signature(include Rank) | 78. ID No | 84. 1 Page of 2 Pages |

| 81 Status □Open □Closed(if Closed, check box below) □Unfounded □Vict. Refused to Coop. □Arrest □Pros. Declined □Warrant Advised □CBI □Juv. - No Custody □Arrest-Juv. □Offender Dead. □Extrad. Declin □Unknown | 82. Status Date Sep 8 1995 | 83. Notified/TOT |
|---|---|---|

ADDITIONAL NARRATIVE

# SOUTHAMPTON VILLAGE POLICE DEPARTMENT
## CRIME REPORT

| Case Number | | Page 2 |
|---|---|---|
| 95-00487 | | |

### POLICE OFFICER/s

| Officer's Name (Last, first, m.i.) | Badge No. | Police Department | Designated Princip |
|---|---|---|---|
| SGT SMITH,NICHOLAS | 211 | PATROL | |
| PO SCHUCHT,ARTHUR | 219 | PATROL | ARRESTING |
| PO BROICH,CHRISTOPHER | 226 | PATROL | ARRESTING |
| PO WETTER,CHRIS | 334 | PATROL | ASSISTING |

### CIVILIAN WITNESSES

| Party No. | Party Name (last,first,m.i.) Address | Bus. Home Telephone No | Victim (Y/N) | Wit Age |
|---|---|---|---|---|
| 1 | GLOWCZENSKI,THEODORE 70 LAYTON AVENUE SOUTHAMPTON NY 11968 | 516 283-1487 | Y | 67 |
| 2 | | | | |

### FACTS

COMPLAINANT REPORTS THAT HIS SON, DAVID (4/19/68), HAS INGESTED ALCOHOL W/ HIS PSYCHIATRIC MEDICATIONS. THIS COMBINATION HAS RESULTED IN AN ADVERSE REACTION IN THE PATIENT. THE MOBILE CRISIS TEAM NOTIFIED AND RESPODNING TO I/L.

WHILE BEING INTERVIEWED BY THE MOBILE CRISIS TEAM NURSE, DAVID GLOWCZENSKI FLED INTO THE STREET. SUBJECT IS 508 - 200 LBS LSW/BLK SHORTS, BLK T-SHIRT AND BLK BELT - NO SHOES.

8/27/95 - Defendant apprehended in back yard of residence. Defendant transported to HQ for processing and held for AM arraignment before Local Criminal Court base on charge of Criminal Mischief 4th.

### PROPERTY AND EVIDENCE

{1} Set forth description of property stolen and/or damaged including value, ownership and details of recovery.
{2} Set forth description of all items of physical evidence including quantity, manner in which evidence was obtained, and indic person(s) in the chain of custody. Indicate if search warrant was used and attach copy.

### MOTOR VEHICLE OFFENSE /s

| Uniform Traffic Summonses Issued? N | Summons No. | Violation(s) Charged | Accident Involved | Accident Report No. |
|---|---|---|---|---|
| Test Results | Blood | Breath Test | Urine | Name of Operator, Technician or Doctor |
| Was Test Refused? | | If Yes, (Attach copy of Refusal Report) | | |



Case 2:04-cv-04052-SJF Document 118-3 Filed 11/30/09 Page 40 of 164 PageID #: 1803

SOUTHAMPTON VILLAGE POLICE DEPARTMENT

C R I M E    R E P O R T

| Case Number | Page 3 |
|---|---|
| 95-00487 | |

ATTACH SUPPORTING DEPOSITIONS, COPIES OF STATEMENTS, POLICE REPORTS & OTHER PERTINENT DOCUMENTS

_____   8/17/95        _____
Signature of Preparer          Date          District Attorney Staff Member          Date

COPY

# EXHIBIT AA

Case 2:04-cv-04053-SJL    Document 118-3    Filed 11/30/09    Page 42 of 164 PageID #: 1805

LOCAL CRIMINAL COURT : VILLAGE OF SOUTHAMPTON : TOWN OF SOUTHAMPTON
COUNTY OF SUFFOLK : STATE OF NEW YORK

Case #: 95-00487
Event #: 95-07620

** MISDEMEANOR INFORMATION **

## THE PEOPLE OF THE STATE OF NEW YORK
- against -

DAVID GLOWCZENSKI (04/19/68)    70 LAYTON AVENUE, SOUTHAMPTON NY

**Defendant**

OFFICER CHRISTOPHER BROICH #226 OF SOUTHAMPTON VILLAGE POLICE DEPARTMENT,
BEING DULY SWORN, ACCUSES THE DEFENDANT NAMED ABOVE OF THE FOLLOWING
OFFENSE COMMITTED AT GLOWCZENSKI RESIDENCE 70 LAYTON AVENUE IN THE VILLAGE
OF SOUTHAMPTON, COUNTY OF SUFFOLK, STATE OF NEW YORK ON THE TWENTY-SIXTH
DAY OF AUGUST 1995 AT ABOUT 8:53PM:

CRIMINAL MISCHIEF FOURTH DEGREE (A MISDEMEANOR)

IN VIOLATION OF SECTION 145.00-1 OF THE PENAL LAW OF THE STATE OF NEW YORK
IN THAT AT THE AFORESAID TIME AND PLACE THE DEFENDANT DID HAVING NO RIGHT TO
DO SO NOR ANY REASONABLE GROUND TO BELIEVE THAT HE/SHE HAD SUCH RIGHT,
INTENTIONALLY DAMAGE PROPERTY OF ANOTHER PERSON, TO WIT: At the above date,
time and place the defendant did intentionally damage the kitchen wall to 70
Layton avenue by throwing a telephone at the wall which created a 3 inch
hole.

THE ABOVE ALLEGATIONS OF FACT ARE MADE BY THE COMPLAINANT BASED UPON
INFORMATION AND BELIEF, THE SOURCE BEING THE SIGNED SWORN AFFIDAVIT OF
THEODORE GLOWCZENSKI.

SIGNED: _P.O. Christopher A. Broich #226_
                    Complainant

SWORN TO BEFORE ME THIS TWENTY-SIXTH DAY OF AUGUST 1995

SIGNATURE/TITLE: _____
                    Official Administering Oath

COPY

# EXHIBIT BB

LOCAL CRIMINAL COURT    ☐ : VILLAGE OF SOUTHAMPTON  ☐ : TOWN OF SOUTHAMPTON
COUNTY OF SUFFOLK            ☐ : STATE OF NEW YORK

Case #: 95-00487
Event #: 95-07620

** VIOLATION COMPLAINT **

## THE PEOPLE OF THE STATE OF NEW YORK
- against -

DAVID GLOWCZENSKI (04/19/68)    70 LAYTON AVENUE, SOUTHAMPTON NY

**Defendant**

THEODORE GLOWCZENSKI OF 70 LAYTON AVENUE, SOUTHAMPTON NY, BEING DULY SWORN,
ACCUSES THE DEFENDANT NAMED ABOVE OF THE FOLLOWING OFFENSE COMMITTED AT
GLOWCZENSKI RESIDENCE 70 LAYTON AVENUE IN THE VILLAGE OF SOUTHAMPTON,
COUNTY OF SUFFOLK, STATE OF NEW YORK ON THE TWENTY-SIXTH DAY OF AUGUST 1995
AT ABOUT 8:53PM:

HARASSMENT IN THE SECOND DEGREE (VIOLATION)

IN VIOLATION OF SECTION 240.26 OF THE PENAL LAW OF THE STATE OF NEW YORK
 IN THAT AT THE AFORESAID TIME AND PLACE THE DEFENDANT DID threaten the
complainant, THEODORE GLOWCZENSKI, with harm to his body and property in
that he stated repeatedly, "I'm going to fucking kill you and then I'm going
to burn the house down around you." Said communication caused annoyance and
alarm to the complainant.

THE ABOVE ALLEGATIONS OF FACT ARE MADE BY THE COMPLAINANT BASED UPON
PERSONAL KNOWLEDGE OF YOUR DEPONENT.

SIGNED: _Theodore G Glowczenski_
                    Complainant

SWORN TO BEFORE ME THIS TWENTY-SEVENTH DAY OF AUGUST 1995

SIGNATURE/TITLE: _____
                    Official Administering Oath

COPY

# Southampton Town Justice Court of Suffolk County

## WITHDRAWAL

I, _____ do hereby withdraw the complaint made by me against _____ and do hereby release the Town of Southampton as well as the County of Suffolk and all the officers, employees and agents, thereof; including the respective Police Departments and their personnel from any and all liability resulting out of such complaint or arrest or confinement.

Dated _____

_____
COMPLAINANT

Sworn to before me, this _____
day of _____ , 19 ____

_____
SOUTHAMPTON TOWN JUSTICE COURT OF SUFFOLK COUNTY

## RELEASE

I, _____ do hereby release the Town of Southampton as well as the County of Suffolk and all its officers, agents, employees and/or subcontractors, including the respective Police Departments together with the above complainant, from any and all liability resulting from my apprehension, arrest and/or confinement, that may have been imposed upon me as a result of such charges, that have been dismissed or withdrawn.

Dated _____

_____
DEFENDANT

Sworn to before me, this _____
day of _____ , 19 ____

_____
SOUTHAMPTON TOWN JUSTICE COURT OF SUFFOLK COUNTY

# EXHIBIT C C

Case 2:04-cv-04052-SJF   Document 43-3 Filed 11/30/09   Page 47 of 164 PageID #: 1810

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Southampton Village Police | | | INCIDENT REPORT | | | | | | |

**I N C I D E N T**

| 7. Report Day/Date | | | | 8. Report Time | 9. Occur Day/Date | | | | 10. Occur Time | 11. Time | | | | 15. Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Fri** | **Sep** | **29** | **1995** | **03:2** On/From: | **Fri** | **Sep** | **29** | **1995** | **01:** On/From: | | | | | A. |

| 16. Incident Type | 17. Business Name | 18. Weapon(s) |
|---|---|---|
| | | B. |

| 19. Incident Address(Street No.,Street Name,Bldg. No.,Apt No.) | 20. City,State,Zip(□C □T □V) | 21. Location Code |
|---|---|---|
| **500   LITTLE PLAINS ROAD** | SOUTHAMPTON | |

| 22. OFF. NO. | LAW | SECTION | SUB | CL. | CAT. | DEG. | ATT | NAME OF OFFENSE | CTS | 23. No. of Victims |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PL | 240.26 | - | | | | O | **HARASSMENT IN THE SECOND DEGREE** | 1 | 0 |
| 2 | PL | 205.30 | | | | | O | **RESISTING ARREST** | 1 | 24. No. of Suspects |
| 3 | PL | 145.00 | | | | | O | **CRIMINAL MISCHIEF FOURTH DEGREE** | 1 | 0 |

**A S S O C I A T E D**

| 25. Person Type CO=Complainant OT=Other PI=Person Interviewed PR=Person Reporting WI=Witness NI=Not Interviewed VI=Victim | | 26. Victims also complainant □Y ☑N | | |
|---|---|---|---|---|
| TYPE/NO | NAME(LAST,FIRST,MIDDLE,TITLE) | Date of Birth | STREET NO.,STREET NAME,BLDG,NO.,APT.NO.,CITY,STATE,ZIP | Telephone No. |
| DE | GLOWCZENSKI, DAVID | 04/19/1968 | 70 LAYTON AVENUE SOUTHAMPTON, NY 11968 | BUS ( ) |
| | | | | RES. (516) 283-1487 |
| | | | | BUS. |
| | | | | RES. |
| | | | | BUS. |
| | | | | RES. |
| | | | | BUS. |
| | | | | RES. |

**S U B J E C T S**

| 27. Date of Birth | 28. Age | 29. Sex □M ☑F □U | 30. Race □White □Black □Other □Indian □Asian □Unk. | 31. Ethnic □Hispanic □Unk. □Non-Hispanic | 32. Handicap □Yes □No | 33. Residence Status □Resident □Tourist □Commuter □Military | Temp.Res.-Foreign Nat. □Student □Other. □Homeless □Unk./Not Indicated |
|---|---|---|---|---|---|---|---|
| / / | | | | | | | |

| 34. Type/No | 35. Name(Last,First,Middle) | 36. Alias/Nickname/Maiden Name(Last,First,Middle) | 37. Apparent Condition □Impaired Drugs □Mental Dis □Unk. □Impaired Alco □Im/Ill □App.Norm. |
|---|---|---|---|
| | | | |

| 38. Address(Street No.,Street Name,Bldg.,No., City.,State,Zip) | 39.Phone  Res:  Bus.: | 40. Social Security No. |
|---|---|---|
| | | |

| 41. Date of Birth | 42. Age | 43. Sex □M ☑F □U | 44. Race □White □Black □Other □Indian □Asian □Unk. | 45. Ethnic □Hispanic □Unk. □Non-Hispanic | 46. Skin □Light □Dark □Unk. □Medium □Other | 47. Occupation |
|---|---|---|---|---|---|---|
| / / | | | | | | |

| 48. Height | 49. Weight | 50. Hair | 51. Eyes | 52. Glasses □Yes □Contacts. □No | 53. Build □Small □Large □Medium | 54. Employer/School | 55. Address |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 56. Scars/Marks/Tattoos(Describe) | 57. Misc. |
|---|---|
| | |

**P R O P E R T Y**

| 58. Victim or Suspect No. | Property Status | Property Type | Quantity/ Measure | Make of Drug Type | Model | Serial No. | Description | Value |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**V E H I C L E**

| 59. Vehicle Status | 60. License Plate No | Full □ Partial □ | 61. State | 62. Exp. Yr. | 63. Plate Type | 64. Value |
|---|---|---|---|---|---|---|
| | | | | | | |

| 65. Veh. Yr. | 66. Make | 67. Model | 68. Style | 69. VIN. |
|---|---|---|---|---|
| | | | | |

| 70. Color(s) | 71. Towed By:  To: | 72. Vehicle Notes |
|---|---|---|
| | | |

**N A R R A T I V E**

73. AT THE AFOREMENTIONED DATE, TIME, AND LOCATION, THE ABOVE NAMED DEFENDANT WAS ARRESTED AFTER STRIKING PO RAFFEL #230 IN THE RIGHT SHOULDER WITH A CLOSED FIST.  SAID DEFENDANT DID RESIST THE ARREST BY KICKING THE ARRESTING OFFICERS, PO #229,230, UNTIL HE COULD BE RESTRAINED.  IN ADDITION, WHILE BEING TRANSPORTED BY PO #229 IN MARKED UNIT 126 TO H.Q. FOR PROCESSING THE DEFENDANT REPEATEDLY KICKED THE DRIVER'S SIDE REAR DOOR WINDOW, CAUSING IT TO BREAK AN FALL OFF OF ITS TRACKING.  ALSO, WHILE INSIDE THE DETENTION AREA OF SVPD H.Q. THE DEFENDANT DID AGAIN KICK PO RAFFEL #230 AND DAMAGED A DESK IN THAT AREA BY REPEATEDLY KICKING SAME.  SUSPECT REMANDED AWAITING A.M. ARRAIGNMENT. A#95-245,  REF CC#95-8864.  ASSISTED AT SCENE AND H.Q. BY TOWN PO BENNETT.

**A D M I N I S T R A T I V E**

| 74. Inquiries(Check all that apply). □DMV. □Warr./Warrant. □Scofflaw □Crim. History. □Stolen Property □Other. | 75. NYSPIN Message No. | 76. Complainant Signature | **B** use cover sheet |
|---|---|---|---|
| 77. Reporting Officer Signature(Include Rank) | 78. ID No  229 PO RYAN, MICHAE | 79. Supervisor's Signature(include Rank) | 78. ID No |
| 81. Status □Open □Closed(if Closed, check box below). □Unfounded □Vict. Refused to Coop. □Arrest □Pros. Declined □Warrant Advised □CBI □Juv. - No Custody □Arrest-Juv. □Offender Dead. □Extrad. Declin □Unknown | 82. Status Date  Sep  29  1995 | 83. Notified/TOT | 84. 1 Page of. 2 Pages |

Case 2:04-cv-04052-SfL   Document 118-3   Filed 11/30/09   Page 48 of 164 PageID #: 1811

INCIDENT No.: SV-00562-95

BLOTTER/CC No.: SV-008664-95

## ADDITIONAL OFFENSES(s)

| Off # | Law | Section | Subdiv | CL | Cat | Deg | Att | Name of Offense | Cts |
|---|---|---|---|---|---|---|---|---|---|
| 4 | PL | 145.00 | 1 | | | | O | CRIMINAL MISCHIEF FOURTH DEGREE | 1 |
| 5 | | | - | | | | O | | 1 |

## ADDITIONAL NARRATIVE

Entry/CC#: **SV-008664-95**   Date: **09/29/1995**   Time: **01:59**   Tour:   0 Desk Officer:

Call Type..: **10-32**                         Priority..:     How Received: **PATROL PICK UP**

Caller....: ,
Bus. Name..:
Address...:
City/St/Zip: ,                                                    Call Back #:

Location of Assignment: **500 LITTLE PLAINS ROAD, SOUTHAMPTON**
Cross Street.........:
Business Name........: **LITTLE PLAINS BEACH**
Description..........: **HARASSMENT,RESISTING,CRIM MIS 4TH**
                                                                      Unit:
Post: **A4**            Officer Assigned:            -

Dispatched: **N** Call Taker:        Disp Date: **09/29/1995**  Disp Time:         Arv Time:
                                                                      Comp Time:
Disposition...:                                                Disp to Comp: **00:00**
Add'l Officers:                                                Rcv'd to Comp: **00:00**
Add'l Units...:

Vehicle Plate Number:                     State:       Make:
Vin:                      Model:                    Color:              Year:

## ASSOCIATED NUMBERS

Arrest #      :SV-00245-SV  Defendant: DAVID  GLOWCZENSKI  DOB:04/19/1968
Case #        :SV-00562-95  Incident Type:

## PERSONS INVOLVED

Name.........:GLOWCZENSKI, DAVID      DOB:04/19/1968
Address.......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968
Phone Number..:(516)283-1487
Sex..........:M      Race:WHI
Person Type...:DEFENDANT

## NARRATIVE

AT THE ABOVE DATE, TIME, AND LOCATION THE NAMED DEFENDANT WAS ARRESTED
AFTER STRIKING PO #230 AND RESISTING ARREST FOR SAME.  IN ADDITION, THE
DEFENDANT DID KICK THE DRIVER SIDE REAR WINDOW OUT OF ITS TRACK CAUSING
DAMAGE TO SAME.   WHILE IN THE DETENTION ROOM THE DEFENDANT DID ALSO DO
DAMAGE TO A DESK BY KICKING SAME. A#95-245. REF CC#95-8662.

Certified by _____          Dated: _____

Approved by  _____          Dated: _____

# EXHIBIT DD

## NICHOLAS H. POTT, M.D.

44210F RTE 48, PO BOX 170, SOUTHOLD, NEW YORK 11971
516-765-5191

October 24, 1995

Southampton Town Court
Hampton Road
Southampton, NY  11968

Dear Sir:

RE: DAVID GLOWCZENSKI

Mr. Glowczenski will be appearing before you October 31, 1995 to answer charges arising from his arrest at the end of September 1995.  I am writing this letter in an attempt to clarify his inappropriate behavior and impulsivity on that occasion.

He has been my patient for about four years and suffers from bi-polar disorder.  When he takes his medication he is rational and appropriate in his behavior, for the most part.  However, for about six weeks prior to his arrest he had suffered some setbacks in his personal life and, of his own volition, decided that he would discontinue the medication.

For a few days prior to his arrest, he had spoken of suicide to his mother and on the night of the arrest he announced that he would go to the beach and take a swim in the ocean.  His mother naturally took this as a suicidal threat and called the police, though as David recollects the incident he intended nothing more than to bathe in the ocean, in an attempt to "cleanse his spirit."  His thinking processes and speech were not particularly clear at the time and when he was stopped by the police, he was unable to explain his purpose.  The police moved to restrain him and David, who always has a certain amount of difficulty with authority, resisted arrest, unable to understand at that time the inappropriate nature of his behavior.

He was confined over night at the police station and next day requested admission to the psychiatric unit at Eastern Long Island Hospital.  Here his medication was reinstated ~~and he~~ and his thinking and behavior quickly improved, to the point that after six days he was at his psychological baseline.

He is now quite clear in his mind that he must continue to take his medication, and in this state I do not see him as a threat to himself or to the public order.

Glowczenski - Page 2

I hope this information will be useful in the disposition of
David's case.

Sincerely,

*Nicholas Pott*

Nicholas Pott, M.D.,
Diplomate of the American Board of Psychiatry and Neurology

NP:e

# EXHIBIT EE

Case 2:04-cv-04053-SJL   Document 118-3   Filed 11/30/09   Page 54 of 164 PageID #: 1817

| 6. Report Day | 8. Date | 9. Rept | Occurred 11:53 | 10. Day | Date | 13:3 | 14. Time |
|---|---|---|---|---|---|---|---|

## INCIDENT

| 16. Incident Type | 17. Business Name | 18. Weapon(s) |
|---|---|---|

**19.** Incident Address(Street No.,Street Name,Bldg. No.,Apt. No.)
70 LAYTON AVENUE

**20.** City,State,Zip(☐C ☐T ☐V)
SOUTHAMPTON

**21.** Location Code

| 22. OFF. NO. | LAW | SECTION | SUB | CL | CAT | DEG | ATT | NAME OF OFFENSE | CTS | 23. No of Victims |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PL | 240.26 | | | | | O | HARASSMENT IN THE SECOND DEGREE | 1 | 0 |
| 2 | | | | | | | O | | 1 | |
| 3 | | | | | | | | | | 24. No of Suspects 0 |

## ASSOCIATED PERSONS

**25.** Person Type CO=Complainant OT=Other PI=Person Interviewed PR=Person Reporting WI=Witness NI=Not Interviewed VI=Victim
**26.** Victim also complainant ☐Y ☑N

| TYPE/NO | NAME(LAST,FIRST,MIDDLE,TITLE) | Date of Birth | STREET NO.,STREET NAME,BLDG,NO.,APT NO.,CITY,STATE,ZIP | Telephone No. |
|---|---|---|---|---|
| CO | GLOWCZENSKI, JEAN M | 05/15/1973 | 38 WARDS PATH HAMPTON BAYS, NY 11946 | BUS () / RES. (631) 728-2526 |
| DI8 | GLOWCZENSKI, DAVID | 04/19/1968 | 70 LAYTON AVENUE SOUTHAMPTON, NY 11968 | BUS () / RES. (516) 283-1487 |
| | | | | BUS () / RES |
| | | | | BUS / RES |

## VICTIM

| 27. Date of Birth | 28. Age | 29. Sex ☐M ☐F ☐U | 30. Race ☐White ☐Black ☐Other ☐Indian ☐Asian ☐Unk. | 31. Ethnic ☐Hispanic ☐Unk. ☐Non-Hispanic | 32. Resident ☐Yes ☐No | 33. Residence Status ☐Resident ☐Tourist ☐Student ☐Other. ☐Commuter ☐Military ☐Homeless ☐Unk/Not Indicated | 33a. Res. Foreign Nat. |
|---|---|---|---|---|---|---|---|

## MISSING/WANTED PERSON / SUBJECT

| 34. Type/No | 35. Name(Last,First,Middle) | 36. Alias/Nickname/Maiden Name(Last,First,Middle) | 37. Apparent Condition ☐Impaired Drugs ☐Mental Dis. ☐Unk. ☐Impaired Alco. ☐In/Ill ☐Agg. Norm. |
|---|---|---|---|

| 38. Address(Street No.,Street Name,Bldg.,No.,City,State,Zip) | 39. Phone Res: Bus: | 40. Social Security No. |
|---|---|---|

| 41. Date of Birth | 42. Age | 43. Sex ☐M ☐F ☐U | 44. Rapid ☐White ☐Indian | 45. Ethnic ☐Black ☐Other ☐Asian ☐Unk. | ☐Hispanic ☐Unk. ☐Non-Hispanic | 46. Hair ☐Light ☐Dark ☐Unk ☐Medium | 47. Occupation |
|---|---|---|---|---|---|---|---|

| 48. Height | 49. Weight | 50. Hair | 51. Eyes | 52. Glasses ☐Yes ☐Contacts ☐No | 53. Build ☐Small ☐Large ☐Medium | 54. Employer/School | 55. Address |
|---|---|---|---|---|---|---|---|

| 56. Scars/Marks/Tattoos(Describe) | | | | | | 57. Misc. | |
|---|---|---|---|---|---|---|---|

## PROPERTY

| 58. V Kind of Statement No. | Property Status | Property Type | Quantity Measure | Kind of Drug Type | Model | Serial No. | Description | Value |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

## VEHICLE

| 59. Vehicle Status | 60. License Plate No | | 61. State | 62. Exp. Yr | 63. Plate Type | 64. VYR |
|---|---|---|---|---|---|---|
| | | Full ☐ Partial ☐ | | | | |

| 65. Veh. Yr | 66. Make | 67. Model | 68. Style | 69. VIN |
|---|---|---|---|---|

| 70. Color(s) | 71. Towed By: | 72. Vehicle Notes |
|---|---|---|

## NARRATIVE

**73.** At the above date, time and location, the undersigned officer was assigned to a domestic disturbance at the above incident location.

Upon arrival of the undersigned, the complainant stated that her brother was threatening her and her son at the residence. Specifically, the subject was in an intoxicated condition and after a brief verbal confrontation with the complainant's three year old son, the subject did make threatening remarks to the complainant.

The subject did state the following: "I'll smash you're fucking brains in if you don't shut up." The subject did then stand up, cocked his fist and stated, "I'm gonna kill you."

## ADMINISTRATIVE

| 74. Inquiries( Check all that apply). ☐DMV. ☐Want/Warrant. ☐Scofflaw ☐Crim. History ☐Stolen Property ☐Other | 75. NYSPIN Message No | 76. Complainant Signature JEAN M. GLOWCZENSKI | **B** use cover sheet |
|---|---|---|---|
| 77. Reporting Officer Signature(Include Rank) | 78. ID No 219 PO SCHUCHT,ART | 79. Supervisor's Signature(include Rank) | 78. ID No | 84. 1 |
| 81. Status ☐Vict. Refused to Coop. ☐Open ☐Closed(if Closed, check box below). ☐Unfounded ☐CBI ☐Juv - No Custody ☐Arrest ☐Pros. Declined ☐Warrant Advised ☐Arrest-Juv. ☐Offender Dead. ☐Extrad. Declin ☐Unknown | | 82. Status Date Apr 24 2000 | 83. Notified/TOT | Page of 2 Pages |

INCIDENT No.: SV-00138-00                                                          TTER/CC No.: SV-002611-00

## ADDITIONAL NARRATIVE

Said actions caused fear and alarm to the complainant. The complainant did
sign a Civilian Arrest Form and did verbally state that he was being
arrested for the above stated charge.

Defendant transported to HQ for processing and taken directly to court for
arraignment purposes.

Entry/CC#: **SV-002611-00**   Date: **04/20/2000**   Time: **11:48**   Tour:   **0** Desk Officer:

Call Type..: **10-32**                     Priority..:    How Received:   **TELEPHONE**

Caller.....: ,
Bus. Name..:
Address....:
City/St/Zip: ,                                              Call Back #:

Location of Assignment: **70 LAYTON AVENUE, SOUTHAMPTON**
Cross Street..........:
Business Name.........:
Description...........: **A#00-088**
Post: **A3**         Officer Assigned:        -                    Unit:

Dispatched: **N** Call Taker:       Disp Date: **04/20/2000**  Disp Time:        Arv Time:
Disposition...:                                              Comp Time:
Add'l Officers:                                              Disp to Comp: **00:00**
Add'l Units...:                                              Rcv'd to Comp: **00:00**

Vehicle Plate Number:                   State:    Make:
Vin:                      Model:                 Color:            Year:

## ASSOCIATED NUMBERS

Arrest #      :SV-00088-00  Defendant: DAVID  GLOWCZENSKI  DOB:04/19/1968
Case #       :SV-00138-00  Incident Type:

## PERSONS INVOLVED

Name.........:GLOWCZENSKI, JEAN M     DOB:05/15/1973
Address......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968
Phone Number..:(516)283-1487
Sex..........:F    Race:WHI
Person Type...:COMPLAINANT

Name.........:GLOWCZENSKI, DAVID      DOB:04/19/1968
Address......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968
Phone Number..:(516)283-1487
Sex..........:M    Race:WHI
Person Type...:DEFENDANT

## NARRATIVE

POLICE RESPONSE REQUESTED FOR ONGOING PROBLEM WITH SUBJECT PERSON.
DEFENDANT, DAVID GLOWCZENSKI (4/19/68), ARRESTED AT 70 LAYTON AVENUE
FOR HARASSMENT 2ND (CIVILIAN ARREST FORM). DISPOSITION: ROR'D

Certified by _____              Dated: _____

Approved by _____              Dated: _____

# EXHIBIT FF

TOWN OF SOUTHAMPTON

## MISDEMEANOR INFORMATION

STATE OF NEW YORK
COUNTY OF SUFFOLK              SS:    David Glowczenski Approx: 30 y/o/a
TOWN OF SOUTHAMPTON

Mark Snyder of 30 Bay Ave. W., Hampton Bays, NY 11946
NAME OF COMPLAINANT        ADDRESS OF COMPLAINANT
being duly sworn says that on, Aug. 8, 2000, 6:30 PM, at 30 Bay Ave. W. in the
Hamlet of Hampton Bays, Town of Southampton, County of Suffolk, State of New
York, the Defendant: David Glowczenski Approx: 30 y/o/a 70 Layton Ave.,
Southampton, NY 11968. wrongfully, intentionally, knowingly commit the
offense of Aggravated Harassment in the Second Degree in violation of section
240.30 Sub 1 of the Penal Law of the State of New York, a class "A"
Misdemeanor.

### IN THAT:

A person is guilty of Aggravated Harassment in the Second Degree when, with
intent to harass, annoy, threaten or alarm another person, he or she
communicates, or causes a communication to be initiated by mechanical or
electronic means or otherwise, with a person, anonymously or otherwise, by
telephone, or by telegraph, mail or any other form of written communication in
a manner likely to cause annoyance or alarm.

### TO WIT:

The defendant, on Aug. 8, 2000, 6:30 PM, at 30 Bay Ave. W. in the Hamlet of
Hampton Bays, Town of Southampton, County of Suffolk, State of New York, with
the intent to harass, annoy, threaten, or alarm another person, communicated,
or caused a communication to be initiated by mechanical or electronic means or
otherwise, with such person anonymously or otherwise, by telephone, or by
telegraph, mail or any other form of written communication, in a manner likely
to cause annoyance or alarm; the defendant, did make a telephone call to your
deponent, Mark Snyder, in which he stated "As soon as I heal up, I'm gonna get
a gun and shoot you and Gail." This communication served no purpose and did
threaten, alarm and annoy Mark Snyder.

This complaint is based on Personal Knowledge of your deponent, Mark Snyder.

                              X_Mark Snyder_____
                               Complainant

SWORN TO BEFORE ME THIS the_9th DAY of Aug., 2000

_Richard Schler #191_____
Signature of Official Administering Oath

Sergeant_____
Title
Town of Southampton

# EXHIBIT GG

Case 2:04-cv-04052-SIL Document 118-3 Filed 11/30/09 Page 60 of 164 PageID #: 1823

| 7. Report Day | 8 Date | 9 Report Time | | | | 15. Time |
|---|---|---|---|---|---|---|
| Thru Jun 13 2002 14:0 | On From Wed Jun 12 2002 15: | On/From: | | | | |

| 16. Incident Type | 17 Business Name | 18. Weapon(s) | A. |
|---|---|---|---|

**INCIDENT**

| 19. Incident Address (Street No ,Street Name,Bldg. No .,Apt. No.) | 20. City,State,Zip ☐C ☐T ☐(V) | 21. Location Code | B. |
|---|---|---|---|
| 70 LAYTON AVENUE | SOUTHAMPTON | | |

| 22. OFF NO. | LAW | SECTION | SUB | CL | CAT | DEG | ATT | NAME OF OFFENSE | CTS | 23. No of Victims | C. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | - | | | | O | | 1 | 0 | |
| 2 | | | | | | | | | | 24. No. of Suspects | D. |
| 3 | | | | | | | | | | 0 | |

**PERSON(S)**

| 25. Person Type:CO=Complainant OT=Other PI=Person Interviewed PR=Person Reporting WI=Witness NI=Not Interviewed VI =Victim | | | 26. Victim also complainant ☐Y ☒N | E. |
|---|---|---|---|---|
| TYPE/NO | NAME(LAST,FIRST,MIDDLE,TITLE) | Date of Birth | STREET NO ,STREET NAME,BLDG,NO.,APT.NO.,CITY,STATE,ZIP | Telephone No. | |
| CO | GLOWCZENSKI, TEDDY A | 01/23/1957 | 70 LAYTON AVENUE SOUTHAMPTON, NY 11968 | BUS () | F. |
| | | | | RES. ( )283-1487 | |
| OT | GLOWCZENSKI, DAVID | 04/19/1968 | 70 LAYTON AVENUE SOUTHAMPTON, NY 11968 | BUS () | G. |
| | | | | RES. (516)283-1487 | |
| | | | | BUS | H. |
| | | | | RES. | |
| | | | | BUS | I. |
| | | | | RES. | |

**VICTIM**

| 27. Date of Birth | 28. Age | 29. Sex | 30. Race | 31. Ethnic | 32. Handicap | 33. Residence Status | Temp. Res.-Foreign Nat. | J. |
|---|---|---|---|---|---|---|---|---|
| / / | | ☐M ☐F ☐U | ☐White ☐Black ☐Other ☐Indian ☐Asian ☐Unk. | ☐Hispanic ☐Unk. ☐Non-Hispanic | ☐Yes ☐No | ☐Resident ☐Tourist ☐Student ☐Other. ☐Commuter ☐Military ☐Homeless ☐Unk/Not Indicated | | |

**SUSPECT / MISSING-UNIDENTIFIED**

| 34. Type/No | 35 Name(Last,First,Middle) | 36 Alias/Nickname/Maiden Name(Last,First,Middle) | 37. Apparent Condition | K. |
|---|---|---|---|---|
| | | | ☐Impaired Drugs ☐Mental Dis ☐Unk. ☐Impaired Alco ☐Ini/Ill ☐App Norm. | |

| 38. Address(Street No.,Street Name,Bldg.,No., City ,State,Zip) | 39 Phone Res: Bus: | 40. Social Security No. | L. |
|---|---|---|---|

| 41. Date of Birth | 42. Age | 43. Sex | 44. Race | 45. Ethnic | 46. Skin | 47 Occupation | M. |
|---|---|---|---|---|---|---|---|
| / / | | ☐M ☐F ☐U | ☐White ☐Black ☐Other ☐Indian ☐Asian ☐Unk. | ☐Hispanic ☐Unk. ☐Non-Hispanic | ☐Light ☐Dark ☐Unk. ☐Medium ☐Other | | |
| 48. Height | 49. Weight | 50. Hair | 51. Eyes | 52. Glasses ☐Yes ☐Contacts. ☐No | 53. Build ☐Small ☐Large ☐Medium | 54 Employer/School | 55. Address | N. |

| 56. Scars/Marks/Tattoos(Describe) | 57. Misc. |
|---|---|

**PROPERTY**

| 58. Victim or Suspect No. | Property Status | Property Type | Quantity/ Measure | Make or Drug Type | Model | Serial No. | Description | Value | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 1 |
| | | | | | | | | | 2 |
| | | | | | | | | | 3 |

**VEHICLE**

| 59. Vehicle Status | 60. License Plate No | Full ☐ Partial ☐ | 61. State | 62. Exp. Yr. | 63. Plate Type | 64. VMK | 4 |
|---|---|---|---|---|---|---|---|
| 65. Veh. Yr. | 66. Make | | 67. Model | 68. Style | | 69. VIN. | 5 |
| 70. Color(s) | 71. Towed By: To: | | | | 72. Vehicle Notes | | 6 |

**NARRATIVE**

73.

| | |
|---|---|
| COMPLAINANT REPORTS HAVING A VERBAL DISPUTE AND BEING PUSHED BY HIS BROTHER | 7 |
| AT ABOVE LOCATION. BOTH PARTIES INTOXICATED. COMPLAINANT DID NOT WISH TO | 8 |
| PRESS CHARGES. SITUATION RESOLVED. | 9 |
| | 10 |
| | 11 |
| | 12 |
| | 13 |
| | O |

**ADMINISTRATIVE**

| 74. Inquiries(Check all that apply). ☐DMV ☐Want/Warrant ☐Scofflaw ☐Crim. History ☐Stolen Property ☐Other | 75. NYSPIN Message No. | 76. Complainant Signature TEDDY A. GLOWCZENSKI | B use cover sheet |
|---|---|---|---|
| 77. Reporting Officer Signature(Include Rank) 230 PO RAFFEL, THEO | 78. ID No | 79. Supervisor's Signature(include Rank) | 78. ID No | 84. |
| 81. Status ☐Open ☐Closed(if Closed, check box below). ☐Unfounded ☐Vict. Refused to Coop. ☐Arrest ☐Pros. Declined ☐Warrant Advised ☐CBI ☐Juv. - No Custody ☐Arrest-Juv. ☐Offender Dead. ☐Extrad. Declin ☐Unknown | 82. Status Date | 83. Notified/TOT | Page of 1 Pages |

# EXHIBIT 

Case 2:04-cv-04052-SJF Document 115-3 Filed 11/30/09 Page 62 of 164 PageID #: 1825

| 7. Report Day | 8. Date | 9. Rept. | Occurred | 10. Day | Date | 11. To | Date | 13. | 14. Date | 15. Time |
|---|---|---|---|---|---|---|---|---|---|---|
| Thu | Jan 30 2003 | | | Thu | Jan 30 2003 | On/From | Jan 30 2003 | | Jan 30 2003 | 16:15 |

**N C I D E N T**

| 16. Incident Type | 17. Business Name | 18. Weapon(s) | |
|---|---|---|---|
| DISTURBANCE | | BLUNT OBJECT | A 12 |

| 19. Incident Address(Street No ,Street Name,Bldg. No ,Apt. No ) | 20. City,State,Zip☐C ☐T ☒V) | 21. Location Code | |
|---|---|---|---|
| 70 LAYTON AVE | SOUTHAMPTON | | B |

| 22. OFF. NO. | LAW | SECTION | SUB | CL | CAT | DEG | ATT | NAME OF OFFENSE | CTS | 23. No. of Victims |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PL | 120.15 | | B | M | | O | MENACING THIRD | 1 | 2 |
| 2 | PL | 240.26 | -1 | U | V | 2 | O | HARASSMENT SECOND DEGREE - | 1 | |
| 3 | | | | | | | | | | 24. No. of Suspects 2 |

**C** / **D 02**

**A S S O C I A T E D**

| 25. Person Type:CO=Complainant OT=Other PI=Person Interviewed PR=Person Reporting WI=Witness NI=Not Interviewed VI=Victim | | 26. Victim also complainant ☐Y ☒N | | |
|---|---|---|---|---|
| TYPE/NO | NAME(LAST,FIRST,MIDDLE,TITLE) | Date of Birth | STREET NO ,STREET NAME,BLDG,NO ,APT.NO ,CITY,STATE,ZIP | Telephone No. |
| | | | | BUS. / RES. |
| | | | | BUS. / RES. |
| | | | | BUS. / RES. |
| | | | | BUS. / RES. |
| | | | | BUS. / RES. |

**E** **F** **G** **H** **I**

**VICTIM**

| 27. Date of Birth | 28. Age | 29. Sex ☐M ☐F ☐U | 30. Race ☐White ☐Indian | ☐Black ☐Other ☐Asian ☐Unk. | 31. Ethnic ☐Hispanic ☐Unk. ☐Non-Hispanic | 32. Handicap ☐Yes ☐No | 33. Residence Status ☐Resident ☐Tourist ☐Consumer ☐Military | Trans.Res.-Foreign Nat.: ☐Student ☐Other. ☐Homeless ☐Unk/Not Indicated | J |
|---|---|---|---|---|---|---|---|---|---|

**DEFENDANT / ARRESTEE**

| 34. Type/No | 35.Name(Last,First,Middle) | 36.Alias/Nickname/Maiden Name(Last,First,Middle) | 37. Apparent Condition ☐Impaired Drugs ☐Mental Dis ☐Unk. ☐Impaired Alco ☐Ini/Ill ☐App. Norm. | |
|---|---|---|---|---|
| AR | GLOWCIENSKI DAVID | NONE | | K |

| 38.Address(Street No ,Street Name,Bldg.,No., City.,State,Zip) | 39.Phone | 40. Social Security No. | |
|---|---|---|---|
| 70 LAYTON AVENUESOUTHAMPTON NY 11968 | Res: (516) 283-1487 Bus.: | 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 | L |

| 41. Date of Birth | 42. Age | 43. Sex ☒M ☐F ☐U | 44. Race ☒White ☐Indian | ☐Black ☐Other ☐Asian ☐Unk. | 45. Ethnic ☐Hispanic ☐Unk. ☐Non-Hispanic | 46. Skin ☐Light ☐Dark ☐Unk. ☒Medium | 47. Occupation | |
|---|---|---|---|---|---|---|---|---|
| 04/19/1968 | 34 | | | | | | | M |

| 48.Height | 49. Weight | 50. Hair | 51. Eyes | 52. Glasses ☐Yes ☐Contacts. ☒No | 53. Build ☐Small ☐Medium ☒Large | 54.Employer/School | 55. Address | |
|---|---|---|---|---|---|---|---|---|
| 5 11 | 200 | BRO | BRO | | | | | N |

| 56. Scars/Marks/Tattoos(Describe) | 57. Misc. |
|---|---|
| | |

**PROPERTY**

| 58. Victim or Suspect No. | Property Status | Property Type | Quantity/ Measure | Make or Drug Type | Model | Serial No. | Description | Value |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**1 2 3 4**

**VEHICLE**

| 59. Vehicle Status | 60. License Plate No | | 61. State | 62. Exp. Yr. | 63. Plate Type | 64. VINS |
|---|---|---|---|---|---|---|
| | | Full ☐ Partial ☐ | | | | |
| 65. Veh. Yr. | 66. Make | | 67. Model | 68. Style | | 69. VIN. |
| 70. Color(s) | 71. Towed By: | | | | | 72. Vehicle Notes |

**5 X X X**

**NARRATIVE**

73. **223:01/30/2003 17:35 - RESPONDED TO SAID LOCATION, WHERE DOMESTIC VIOLENCE WAS OCCURRING. INTERVIEW WITH MOTHER REVEALS THAT HER SON, DAVID HAD A PHYSICAL FIGHT WITH HIS BROTHER TEDDY AND THAT HE HAD PUNCHED TEDDY IN THE NOSE AND PHYSICALLY MENACED HER AND HIS BROTHER WITH A HAMMER. TEDDY DID ALSO ENGAGE IN A FIGHT WITH HIS BROTHER, AND HIT HIM IN THE HEAD WITH A METAL CANE. DAVID THEN PUSHED HIS MOTHER TO THE GROUND AND STATED IF YOU CALL THE POLICE , I WILL COME BACK AND KILL YOU ALL!**

**BOTH BROTHERS WERE TAKEN INTO CUSTODY FOR DOMESTIC VIOLENCE.**

**THE HAMMER AND METAL CANE WERE TAKEN INTO EVIDENCE.**

**DEFENDANTS WERE PHOTOGRAPHED AND FINGERPRINTED. THEN LODGED INTO THE MALE DETENTION AREA FOR A.M. ARRAIGNMENT.**

**9 X 11 12 13**

**9**

**ADMINISTRATIVE**

| 74. Inquiries(Check all that apply). ☐DMV ☐Want/Warrant ☐Scofflaw ☒Crim. History ☐Stolen Property ☐Other | 75. NYSPIN Message No. | 76. Complainant Signature | | **B** use cover sheet |
|---|---|---|---|---|
| 77. Reporting Officer Signature(Include Rank) | 78. ID No 237 PO DORCHAK | 79. Supervisor's Signature(include Rank) | 78. ID No | Approved |

| 81. Status ☐Open ☒Closed(if Closed, check box below) ☐Unfounded ☐Vict. Refused to Coop. ☒Arrest ☐Pros. Declined ☐Warrant Advised ☐CBI ☐Juv. - No Custody ☐Arrest-Juv. ☐Offender Dead. ☐Extrad. Declin ☐Unknown | 82. Status Date Jan 30 2003 | 83. Notified/TOT | 84. 1 Page of 2 Pages |
|---|---|---|---|

Case 2:04-cv-04052-SII   Document 118-3   Filed 11/30/00   Page 63 of 164 PageID #: 1826

## ADDITIONAL SUSPECT/MISSING/ARRESTED PERSON(s)

Type:ARRESTED PERSON Name:TEDDY A GLOWCZENSKI  Address: 70 LAYTON AVENUE SOUTHAM
AKA :,      Condition:IMPAIRED ALCOHOL    SS #:--
Home Phone:(  )283-1487      Business Phone..:
DOB.:O1/23/1957  Age: 46  Sex:M   Race:    Ethnic:                    Skin:MED
Height:  0 Weight:  0 Hair:OTH Eyes:HAZ Glasses:NO      Build:MEDIUM
Occupation:              Employer:
Scars:                        Misc:




| Entry/CC#: **SV-000697-03** | Date: **01/30/2003** | Time: **16:15** | Tour: **3A** | Desk Officer: **223** |
|---|---|---|---|---|

| Call Type..: **DOMESTIC INCIDENT** | Priority..: **1** | How Received: **TELEPHONE** |
|---|---|---|

Caller.....: **GLOWCZENSKI, THEODORE**
Bus. Name..:
Address....: **70 LAYTON AVENUE**
City/St/Zip:                                       Call Back #: **(516)283-1487**

Location of Assignment: **70 LAYTON AVE, SOUTHAMPTON**
Cross Street.........:
Business Name........:
Description..........: **SUBJECT POSS ARMED WITH KNIFE**
Post:            Officer Assigned: **237  -DORCHAK**          Unit: **147**

| Dispatched: **Y** Call Taker: **117**  Disp Date: **01/30/2003**  Disp Time: **16:15** | Arv Time: **16:18** |
|---|---|
| Disposition...: **10-38** | Comp Time: **16:34** |
| Add'l Officers: **233    ,223    ,** | Disp to Comp: **0:19** |
| Add'l Units...: **135,144,** | Rcv'd to Comp: **0:19** |

Vehicle Plate Number:            State:    Make:
Vin:                  Model:            Color:         Year:

### ASSOCIATED NUMBERS

Arrest #    :SV-00032-03  Defendant: DAVID GLOWCZENSKI   DOB:04/19/1968
Arrest #    :SV-00033-03  Defendant: TEDDY A GLOWCZENSKI   DOB:01/23/1957
Case #      :SV-00044-03  Incident Type: DISTURBANCE

### PERSONS INVOLVED

Name.........:GLOWCZENSKI, MARY J    DOB:03/12/1932
Address......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968-'
Phone Number..:(\ )   -
Sex..........:F    Race:
Person Type...:VICTIM

Name.........:GLOWCZENSKI, TEDDY A    DOB:01/23/1957
Address......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968
Phone Number..:(   )283-1487
Sex..........:M    Race:WHT
Person Type...:DEFENDANT
Remarks......:suspect

Name.........:GLOWCZENSKI, DAVID    DOB:04/19/1968
Address......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968
Phone Number..:(516)283-1487
Sex..........:M    Race:WHT
Person Type...:DEFENDANT

### NARRATIVE

223:01/30/2003 17:35 - RESPONDED TO SAID LOCATION, WHERE DOMESTIC VIOLENCE
WAS OCCURRING. INTERVIEW WITH MOTHER REVEALS THAT HER SON, DAVID HAD A
PHYSICAL FIGHT WITH HIS BROTHER TEDDY AND THAT HE HAD PUNCHED TEDDY IN THE

NOSE AND PHYSICALLY MENACED H   AND HIS BROTHER WITH A HAMMER. JEDDI DID
ALSO ENGAGE IN A FIGHT WITH    BROTHER, AND HIT HIM IN THE HEAD WITH A
METAL CANE. DAVID THEN PUSHED HIS MOTHER TO THE GROUND AND STATED IF YOU
CALL THE POLICE , I WILL COME BACK AND KILL YOU ALL!
BOTH BROTHERS WERE TAKEN INTO CUSTODY FOR DOMESTIC VIOLENCE.
THE HAMMER AND METAL CANE WERE TAKEN INTO EVIDENCE.
DEFENDANTS WERE PHOTOGRAPHED AND FINGERPRINTED. THEN LODGED INTO THE MALE
DETENTION AREA FOR A.M. ARRAIGNMENT.

NARRATIVE FROM CAD SYSTEM

Caller states that David pushed mother to the
ground and is now making verbal threats.  caller
also stated that David in known to carry a knife,
but has not displayed one at this time.
[Thu  01/30/2003  16:20 By 117]
Officer reports male 10-32.
[Thu  01/30/2003  16:26 By 117]
Second officer reports another male 10-32.
[Thu  01/30/2003  16:32 By 117]


Certified by _____          Dated: _____

Approved by _____          Dated: _____

JC-111

ORDER TO REMAND AND PRODUCE DEFENDANT
FOR COURT APPEARANCE
C.P.L. 510.10   170.10(7)

SOUTHAMPTON VILLAGE     TO: WARDEN OF SUFFOLK COUNTY JAIL     Date: 02/24/03
Room: 0900

PIN: 346897   Name: GLOWCZENSKI,DAVID                    DOB: 04/19/68

| | Count-Description | Docket No. | Current Bond | Bail | Changed Bond | Bail | Date |
|---|---|---|---|---|---|---|---|
| 1 | PL 240.26 | 03-697 | 250 | 250 | ROR | | 2/24/0 |
| 2 | PL 240.26 | | 250 | 250 | ROR | | 2/24/0 |
| 3 | PL 120.15 | | 500 | 500 | ROR | | 2/24/0 |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |

RETURN TO COURT ON: ____3/31/03____     ROOM NO. _____

HOLDS:

ROR on 2/25/03
AM

DISPOSITION

COUNT:
1 _____   6 _____
2 _____   7 _____
3 _____   8 _____
4 _____   9 _____
5 _____   10 _____

DATED: _____                    _____
                                        Village/Town Justice

C.P.L. 380.60
CERTIFICATE OF CONVICTION
The above named defendant having been convicted of the offense listed below, it
is ORDERED that the defendant be committed to the Suffolk County Correctional
Facility for a term listed below, pursuant to section 380.60 C.P.L., and the
defendant be remanded to the custody of the Sheriff.

COUNT:
1 _____   6 _____
2 _____   7 _____
3 _____   8 _____
4 _____   9 _____
5 _____   10 _____

DATED: ___2/24/03___                    _____
                                        Village/Town Justice

2003 FEB 24 PM12:46
S.C. CORRECTIONAL FAC
RECORD ROOM
RECEIVED

# EXHIBIT II

| CC NUMBER 04-65136 | COMMAND 3310 | PCT. | SECTOR S.V. | GRID | POLICE DEPARTMENT, COUNTY OF SUFFOLK, N.Y. |
|---|---|---|---|---|---|

**DEATH REPORT**

| DATE OF REPORT 2/06/2004 | DATE & TIME OF INCIDENT 02/04/2004  1035    Hrs | M.E.#: 04-0487   *TCW* |
|---|---|---|

| NAME OF DECEASED   (LAST, FIRST, MIDDLE)<br><br>GLOWCZENSKI, DAVID | TYPE/TRAFFIC, NATURAL, SUICIDE, ACCIDENTAL, HOMICIDE, ETC<br>DEATH INVESTIGATION |
|---|---|
|  | PLACE OF INCIDENT<br>N. Main St./RR Plaza, Southampton |

| ADDRESS 70 Layton Ave., Southampton | PH 283-1487 | DATE/TIME DEATH PRONOUNCED 02/04/2004   1119 | PRONOUNCED BY Dr. Ameres |
|---|---|---|---|
| D.O.B. 4/19/1968 | BIRTHPLACE Southampton | MARITAL STAT single | PROPERTY REMOVED FROM DECEASED<br>YES: X       NO: | PROPERTY INVOICE NO. |
| DESCRIPTION _ EST OF DECEASED x ACT | AGE 35 | SEX m | RACE w | REMOVED BY RANK/SHIELD/COMMAND<br>Hospital Personnel |
| HEIGHT 71" | WEIGHT 207 | HAIR brown | EYES hazel | A.M.E. ASSIGNED<br>Dr. Wilson |

| IDENTIFYING CHARACTERISTICS-SCARS-MOLES | NAME AND RELATIONSHIP OF PERSON NOTIFIED<br>Mary Jane Glowczenski |
|---|---|
|  | ADDRESS<br>70 Layton Avenue, Southampton | PHONE 283-1487 |

| CLOTHING WORN<br><br>brown sneakers, plaid shirt,<br><br>black jeans, black belt and<br><br>white underwear | DATE AND TIME NOTIFIED<br>02/04/2004           1315 |
|---|---|
|  | NOTIFICATION MADE BY<br>Hospital Personnel |
|  | PERSON IDENTIFYING DECEASED<br>Mary Jane Glowczenski |
|  | ADDRESS<br>70 Layton Avenue, Southampton | PHONE 283-1487 |

**RECONSTRUCT CIRCUMSTANCES SURROUNDING DEATH**

On 2/04/04 at 1035 hrs., the above decedent was involved in an altercation with Southampton Police Officers.  The decedent was eventually subdued, but only after the officers had to use pepper spray and a Tazer Stun Gun.  After the decedent's hands were cuffed and his legs restrained, he became unresponsive.  First Aid including CPR were initiated immediately and the decedent was transported to Southampton Hospital where he was pronounced dead at 1119 hours.

Investigation continuing.

| CASE STATUS _ ACTIVE x PENDING | SIGNATURE OF REPORTING OFFICER<br>Det. Pasquale Alberta #783 | SIGNATURE OF SUPERVISING OFFICER<br>Sgt. John Twiname #519   ja |
|---|---|---|

# EXHIBIT JJ

| CC NUMBER | PCT | COMMAND | SECTOR | GRID | POLICE DEPARTMENT, COUNTY OF SUFFOLK, N.Y. |
|---|---|---|---|---|---|
| 04-65136 | 3310 | | V. | | |

| DATE OF REPORT | DATE AND TIME OF OCCURRENCE | SUPPLEMENTARY REPORT |
|---|---|---|
| 4/21/2004 | 02/04/2004    1035    Hrs | |

| INCIDENT | STATUTE | PLACE OF OCCURRENCE | IN:  OUT:X |
|---|---|---|---|
| DEATH INVESTIGATION | | N. Main St./RR Plaza, Southampton | |

| COMPLAINANT | PHONE | ADDRESS |
|---|---|---|
| GLOWCZENSKI, DAVID | (Deceased) | 70 Layton Ave., Southampton |

**DETAILS:**

On 2/04/04 at 1135 hrs., the undersigned detective was notified by PHYSICIAN's ASSISTANT ROBERT GOLDEN of the Suffolk County Medical Examiner's Office that DAVID GLOWCZENSKI had been pronounced dead at Southampton Hospital at 1119 hours. The Homicide Squad had been advised earlier in the morning by LIEUTENANT HOWARD LEWIS of Southampton Village Police Department that the above subject had become unresponsive while being subdued by Village Police Officers.

The undersigned detective then contacted LT. LEWIS who advised me that the incident had occurred at North Main Street and Railroad Plaza in Southampton Village. He agreed to meet me at that location.

The undersigned detective and DETECTIVE ALFRED CICCOTTO #1077, responded to the incident location and were logged in by POLICE OFFICER THEODORE RAFFEL #230 at 1245 hours. DETECTIVE SERGEANT JOHN TWINAME #519 arrived at the scene and assigned the undersigned detective the investigation.

LIEUTENANT LEWIS reported that the decedent was an emotionally disturbed person with a history of violence. The decedent had been hospitalized prior because of his condition. LT. LEWIS stated that the Village Police had been called by the decedent's family twice on the morning of 2/04/04. The first call was at 0909 hours. The decedent's family reported at that time that the decedent had not been taking his medication and was causing a disturbance in their home at 70 Layton Avenue, Southampton. The officers responding to that first call were SERGEANT ARTHUR SCHUCHT #219, POLICE OFFICERS CHRISTOPHER WETTER #233 and BRIAN PLATT #232. The GLOWCZENSKI family advised the officers that they would take the decedent to the hospital for treatment and that police assistance was no longer required. At 1031 hrs., a second call was received by Southampton Village Police Department. The GLOWCZENSKI's reported that the decedent, again, had become violent and had left their house. The decedent was encountered walking on North Main Street, near Railroad Plaza in Southampton Village. The decedent was stopped by POLICE OFFICERS MARLA DONOVAN #225, BRIAN PLATT #232, CHRISTOPHER WETTER #233 and SERGEANT ARTHUR SCHUCHT #219. During this encounter, the decedent became violent and the officers were forced to restrain the decedent by using physical force, pepper spray and a taser stun gun. After the decedent was restrained, he became unresponsive. The officers started C.P.R.. An ambulance had already been called because it is Southampton Village Police Department's policy to transport a subject who has been pepper sprayed to the hospital. The ambulance arrived and the decedent was transported to Southampton Hospital where he was pronounced dead at 1119 hours.

The aforementioned confrontation took place on the sidewalk, outside of Our Lady of the Hampton's School, on the east side of North Main Street, approximately 30 feet south of Railroad Plaza. The scene was photographed by DETECTIVE JOHN KEANE #913 of the Identification Section.

DETECTIVE SERGEANT TWINAME and DET. CICCOTTO, remained at the scene and were later joined by DETECTIVE DONNA GIORDANO #827. The undersigned detective responded to Southampton Hospital with LT. LEWIS and PHYSICIAN ASSISTANT ROBERT GOLDEN.

The undersigned detective observed as P.A. GOLDEN examined the decedent. Emergency Room personnel reported that the decedent arrived at the hospital fully clothed. His

| FOUNDED | CASE STATUS | CHECK & ENTER ON REVERSE IF |
|---|---|---|
| X YES _ NO | _ ACTIVE    _ CLEARED BY ARREST    _ CLOSED - <br> x PENDING    _ EXCEPTIONALLY CLEARED    NON CRIMINAL | _ RECLASSIFICATION OF INCIDENT <br> _ STOLEN OR RECOVERED PROPERTY |

NOTE: BOTH TELETYPE MESSAGE NUMBERS WITH DATES MUST BE OBTAINED AND ENTERED BY THE COMMAND REPORTING THE RECOVERY OF STOLEN/LOST PROPERTY

| T.T. MESS. NO. REPORTING THE STOLEN AND OR LOST PROPERTY | DATE SENT | T.T. MESS. NO. CANCELING | DATE CANCELED |
|---|---|---|---|
| | | | |

| REPORTING OFFICER'S SIGNATURE <br> Det. Pasquale Albergo #783 | SUPERVISOR'S SIGNATURE <br> D/Sgt. John Twiname #519   ja |
|---|---|

53-274...7/91c#

Case 2:04-cv-04052-SJL    Document 118-3    Filed 11/30/09    Page 71 of 164 PageID #: 1834

| CC NUMBER 04-65136 | DATE OF REPORT 4/21/2004 | COMMAND 3310 | POLICE DEPARTMENT, COUNTY OF SUFFOLK, N.Y. |
| PAGE NO. 2 | OF | 5 PAGES | **CONTINUATION REPORT** |

DISTRIBUTION: Same as Initial Report

clothes were removed and bagged by Emergency Room personnel. Emergency Room personnel also removed the plastic zip cuffs from the decedent's legs and handcuffs from the decedent's wrists. Charge Nurse, JOYCE WILSON, did not recall smelling pepper spray on the decedent's clothes or his body. The undersigned detective took possession of the decedent's clothing upon arrival at the hospital. These clothes were later packaged and invoiced to the Suffolk County Crime Lab. The decedent had been intubated and defibrillation had been attempted. P.A. GOLDEN reported that the decedent was in the very early stages of rigor mortis. The decedent had no obvious signs of serious head trauma. He did have some abrasions and contusions in the facial area. P.A. GOLDEN found no petechia in the eyes or injuries inside the decedent's mouth. The decedent had abrasions on his knees and a linear abrasion on the left side of his neck. There were contusions on the decedent's right flank which, possibly were the result of the stun gun application. There were also contusions on the decedent's wrists and bruising on his lower legs where the handcuffs and plastic zip cuffs had been applied. P.A. GOLDEN reported the decedent's rectal temperature was 100 degrees upon admission and 99.8 when P.A. GOLDEN conducted his examination. Neither the undersigned nor P.A. GOLDEN detected the odor of pepper spray on the decedent. Upon completion of the examination in the Emergency Room, the decedent was removed to the Suffolk County Medical Examiner's Office where an autopsy was to be performed.

The undersigned detective then returned to the scene where I took possession of a watch and books belonging to the decedent. I also took possession of a Taser International, Inc. Taser Gun, Model 26, serial #P3015300, and a Defense Technology Federal Laboratory pepper mace canister, Lot PMS056, serial #PMS6021075. The pepper spray and taser were used by the police officers when they subdued the decedent. The taser and pepper spray canister were invoiced to the Suffolk County Crime Lab.

On 2/04/04, the following people were interviewed in furtherance of this investigation:

CAROLYN CIRIGLIANO, DOB 5/17/43, 6 Sherwood Road, Hampton Bays, gave a sworn statement to DET. GIORDANO. MS. CIRIGLIANO stated that she was employed as a teacher at Our Lady of the Hampton's School. Sometime before 1100 hrs. on 2/04/04, MS. CIRIGLIANO was in her first floor classroom located on the west side of the school. She heard yelling, looked out her window and saw several police officers restraining a man who was lying face down across the sidewalk with his head on the grass. The man's hands were behind his back and his feet appeared to have been bound. She observed an officer holding each arm and a third officer at the man's legs. Suddenly, the man became still. The officers turned him over, moved him totally onto the sidewalk and began C.P.R.. MS. CIRIGLIANO saw other officers and a woman from the ambulance crew arrived and assisted with First Aid. MS. CIRIGLIANO stated at no time did she see the officers strike the man.

JULIE COSGROVE, DOB 7/13/65, of 6 Silas Carter Road, Manorville, gave a sworn statement to DET. CICCOTTO. MS. COSGROVE also was employed as a teacher at Our Lady of the Hampton's School. MS. COSGROVE stated that at about 1045 hrs., she was in the school driveway when she heard yelling. She walked out toward North Main Street and saw three police officers standing around the man. It was the man who was screaming. MS. COSGROVE saw the man step up to OFFICER MARLA DONOVAN and push her to the ground. MS. COSGROVE turned to walk away fearing the man was coming towards her. When MS. COSGROVE looked back, she saw OFFICER DONOVAN getting up and the other two officers wrestling the man down to the ground. While the officers were restraining the man, he kept bucking his head and kicking his feet. MS. COSGROVE stated the officers struggled with the subject for three to five minutes. MS. COSGROVE became concerned that the subject might escape from the police so she went back into the school to make sure the doors were locked. MS. COSGROVE then went to the nurse's office, looked out the window and saw the man motionless on the ground with someone performing C.P.R. on him.

SANDRA MARTINELLI, DOB 5/15/69, of 12 Artist Lake Blvd., Middle Island, gave a sworn statement to DET. GIORDANO. MS. MARTINELLI is a school teacher at Our Lady of the Hampton's School. She stated that between 1030 and 1100 hrs., she looked out her window and saw four police officers around a man with long, dark hair. MS. MARTINELLI closed the blinds because students were entering her room. Two minutes later, she heard yelling outside. MS. MARTINELLI looked out and saw the police officers holding the man down on the ground. The man was yelling incoherently and attempting to get up. MS. MARTINELLI had students in her room so she could not stand at the window. The next time she looked

| REPORTING OFFICER Det. Pasquale Albergo #783 | SUPERVISOR D/Sgt. John Twiname #519  ja |

| CC NUMBER<br>04-65136 | DATE OF REPORT<br>4/21/2004 | COMMAND<br>3310 | POLICE DEPARTMENT, COUNTY OF SUFFOLK, N.Y. |
|---|---|---|---|
| | | | **CONTINUATION REPORT** |

| PAGE NO.   3 | OF | 5 | PAGES |
|---|---|---|---|

DISTRIBUTION: Same as Initial Report

out the window, she saw that the man had been rolled over on his back with a police officer checking for breath. She then saw a woman with a blue duffle bag run over. She, again, looked away. When she looked back, she saw someone performing C.P.R. on the man. Finally she saw the man placed in an ambulance.

PATRICIA POPE, DOB 1/21/41, of 48 Lumber Lane, Bridgehampton, gave a sworn statement to DET. GIORDANO. MS. POPE also is a teacher at Our Lady of the Hampton's School. MS. POPE stated that sometime between 1000 and 1100 hrs., she looked out her window and saw P.O. MARLA DONOVAN and several other police officers talking with a man with long hair. She then saw the man push P.O. DONOVAN. The other officers then grabbed the man and wrestled him to the ground. The man was face-down, the officers were attempting to handcuff him and the man was yelling and fighting them. MS. POPE saw one of the officers crouch down on one knee at the man's feet. That officer had something black in his hand. MS. POPE stated she had to pull the shade down because children were entering the room. When MS. POPE no longer heard yelling, she looked out and saw the police officers performing C.P.R. on the man. She then saw MELISSA CROKE of Southampton Village Ambulance arrive and assist the officers. She again moved away from the window. The next time she looked out, the yellow tape was up.

MICHAEL MARYON, DOB 9/19/74, of 27 Grassmere Drive, Mastic Beach, gave a sworn statement to the undersigned detective. MR. MARYON stated he was doing a plumbing job at 137 North Main Street, when at approximately 1030 hrs., he heard screaming. He looked over and saw several police officers holding a man down on the ground. He got his digital camera and began taking photos of the police performing C.P.R. on the man. Sometime later, he gave the computer card from his camera to a Southampton Village Police Officer. This 16MB XD Olympus picture, was turned over to DET. KEANE who caused a copy to be made. The original is being maintained in the case file.

MELISSA "MISSY" CROKE, DOB 11/02/53, of 241 Main Street, Southampton,' was interviewed by the undersigned detective. MS. CROKE is the Chief and First Responder of the Southampton Village Volunteer Ambulance. MS. CROKE stated she responded directly to the scene after receiving the rescue call. She arrived at the scene at 1044 hours. She observed the decedent face-down on the ground, handcuffed behind his back, his legs were restrained by plastic handcuffs. The officers were in the process of turning the decedent over. They found the decedent was not breathing and had no pulse. C.P.R. was started. MS. CROKE attempted to defibrilate the decedent several times, but she received a No Shock message. C.P.R. was continued and the decedent was transported to Southampton Hospital. MS. CROKE advised the original call received by Southampton Ambulance Squad was to assist with a psychiatric patient. MS. CROKE further reported that the decedent was not being physically restrained by officers when she arrived. The original call for an ambulance was received at 1042 hours. The ambulance was on route at 1045 hrs. and arrived at the scene at 1047 hours. The decedent was transported at 1056 hrs. arriving at the hospital at 1059 hours.

The officers involved in the struggle with DAVID GLOWCZENKI were SERGEANT ARTHUR SCHUCHT #219, POLICE OFFICER MARLA DONOVAN #225, POLICE OFFICER BRIAN PLATT #232, and POLICE OFFICER CHRISTOPHER WETTER #233. Each of these officers submitted written reports on this incident. These reports were made part of the case file.

SERGEANT SCHUCHT reported that he and OFFICERS PLATT and WETTER, had responded to the first radio call involving the decedent at 0915 hrs. on 2/04/04. The call was a request to assist the GLOWCZENSKI family in getting the decedent treatment for his psychiatric problems. Upon responding to the GLOWCZENSKI home at 70 Layton Avenue, Southampton, the officers were told by THEODORE GLOWCZENSKI that the family would seek treatment on their own and they no longer needed police assistance. The second call for assistance was received at 1031 hours. The caller reported that the decedent was disturbed and hearing voices, and that he had left the house. In response to the second call, the decedent was first encountered by P.O. DONOVAN at 1035 hours. P.O. DONOVAN observed the decedent walking in front of Our Lady of the Hampton's School. When the decedent saw P.O. DONOVAN, he first started to run away, then stopped. POLICE OFFICERS PLATT and WETTER arrived at the scene just as P.O. DONOVAN was attempting to stop the decedent. The three officers then engaged the decedent in conversation in an attempt to get him psychiatric help. SERGEANT SCHUCHT arrived and joined the officers. The decedent began to get more agitated and attempted to get away from the officers. The officers attempt to stop the decedent resulted in a physical struggle. P.O. DONOVAN, SGT. SCHUCHT

| REPORTING OFFICER<br>Det. Pasquale Albergo #783 | SUPERVISOR<br>D/Sgt. John Twiname #519  ja |
|---|---|

Case 2:04-cv-04052-SJL   Document 118-3   Filed 11/30/09   Page 73 of 164 PageID #: 1836

| CC NUMBER O 4 - 65136 | DATE OF REPORT 4/21/2004 | COMMAND 3310 | POLICE DEPARTMENT, COUNTY OF SUFFOLK, N.Y. |
| --- | --- | --- | --- |

CONTINUATION REPORT

PAGE NO.   4   OF   5   PAGES

DISTRIBUTION: Same as Initial Report

and the decedent fell to the ground during the struggle. SERGEANT SCHUCHT and P.O. DONOVAN were having a great deal of difficulty handcuffing the decedent. SERGEANT SCHUCHT directed POLICE OFFICER PLATT to remove the taser probes from his taser and use the taser to stun the decedent with the hope that this would put a stop to the decedent's combativeness. POLICE OFFICER PLATT applied the taser several times, with no effect. POLICE OFFICER WETTER then sprayed pepper spray into the decedent's face. This also had no effect. The decedent continued to struggle with the officers who were eventually able to get the decedent's hands behind his back and handcuffed him using two sets of handcuffs. They then used a third set of handcuffs to secure the handcuffs on the decedent to the decedent's belt. The decedent continued to struggle kicking out at the officers. SERGEANT SCHUCHT then called for an ambulance. It is procedure to have any individual who was subjected to pepper spray or taser application, examined at a hospital. The decedent was moved off a patch of ice onto the grass, next to the sidewalk. The decedent continued screaming and kicking out at the officers. LIEUTENANT HOWARD LEWIS and DET. HERMAN LAMISON, arrived at the scene as this was happening. They assisted the officers by retrieving a plastic zip cuff which P.O. PLATT used to tie the decedent's feet. The decedent then became quiet. Just as this occurred, Southampton Village Volunteer Ambulance First Responder, MELISSA CROKE, arrived at the scene. As previously noted, MS. CROKE arrived at 1044 hours. The decedent was turned over and found to be unresponsive. C.P.R. was initiated and defibrillation was attempted. The decedent was transported to Southampton Hospital, accompanied by P.O. DONOVAN who was assisting with the C.P.R..

On the evening of 2/04/04, the undersigned detective and D/SGT. TWINAME, spoke with MARY JANE and THEODORE GLOWCZENSKI in their home at 70 Layton Avenue, Southampton. The GLOWCZENSKIS' reported that the decedent's doctor, DOCTOR SATISH, had recently changed the decedent's medications. About two weeks prior to this incident, the decedent read an article that reported his new medications might cause diabetes. MR. GLOWCZENSKI reported that around the time of the article, the decedent had been hospitalized with high blood pressure and high blood sugar. MR. GLOWCZENSKI believed this article and his son's diagnosis caused the decedent to stop taking his medications. As a result of not taking his medications, the decedent was unable to sleep, he began hearing voices and became manic. MR. GLOWCZENSKI reported that his son suffered from manic depression. Attempts were made to get the decedent into the hospital where he could get the proper medications. The morning of 2/04/04, the decedent left the house in an agitated state. The family called the police. The decedent returned to the house without police assistance. When this occurred, the GLOWCZENSKI family decided to attempt to get the decedent to the hospital without police assistance. The police left. Later in the morning of 2/04/04, the decedent again left the house in an agitated state. The family again called the police for assistance. This call resulted in the police encounter.

On 2/06/04, the undersigned detective spoke via telephone with the decedent's PROBATION OFFICER, HELEN MECAGNI. PROBATION OFFICER MECAGNI reported her last contact with the decedent was on 1/12/04. MS. MECAGNI reported that the decedent appeared to be in good mental and physical condition at that time. P.O. MECAGNI further reported that the decedent had completed a rehabilitation at Lake Grove Treatment Center on 9/16/03. Upon completion of this rehabilitation, the decedent had been released to a sober house at 163 Cedar Road in Mastic. P.O. MECAGNI further reported that part of his probation was that he stay away from his family because the decedent had assaulted his brother, TEDDY GLOWCZENSKI.

On 2/06/04, the undersigned detective spoke with DOCTOR JAMES WILSON of the Suffolk County Medical Examiner's Office. DOCTOR WILSON was the Assistant Medical Examiner who performed the autopsy on DAVID GLOWCZENSKI. DOCTOR WILSON reported finding several contusions and abrasions on the decedent's face, wrists, knees and torso. DOCTOR WILSON stated these contusions and abrasions were superficial in nature. DOCTOR WILSON found no significant trauma which includes fractures and hemorrhaging. DOCTOR WILSON reported that there was no evidence that the decedent had been choked or struck. He attributed the contusions and abrasions to struggle and the stun gun application. DOCTOR WILSON pended his findings until further tests were to be completed. These tests were to include an examination of a portion of the decedent's brain by an expert on Excited Delirium.

Suffolk County Crime Lab ANALYST ROY SINEO examined both the Taser Model #26 and Armor Holdings Company Pepper Mace, and submitted a report on 2/11/04. He found both to be operative. He reported that the pepper mace is a 5.5% solution. He also reported that

| REPORTING OFFICER Det. Pasquale Albergo #783 | SUPERVISOR D/Sgt. John Twiname #519   ja |
| --- | --- |

Case 2:04-cv-04052-Slt   Document 118-3   Filed 11/30/09   Page 74 of 164 PageID #: 1837

DISTRIBUTION: Same as Initial Report

the Crime Laboratory is not equipped to test the output of the taser. That same day, the undersigned detectives spoke with ANDREW HINES of Taser International. MR. HINES reported that the Taser Model #M26 cannot be modified. It is a self-contained, sealed unit. If in fact the taser malfunctioned and the amperage increased, the internal electronics would burn out before extra amperage could be deployed. The pepper mace and taser are to remain secured in case it is determined that further examination is necessary.

On 4/21/04, the undersigned detective interviewed THOMAS CAMPBELL, DOB 9/20/49, of 78 Sebonaco Road, Southampton. MR. CAMPBELL was one of the volunteer ambulance crew that responded to the incident on 2/04/04. MR. CAMPBELL reported that upon arriving at the scene, he saw police officers turning the decedent onto his back. He assisted with First Aid which included an attempt to defibrilate the decedent. MR. CAMPBELL performed chest compressions on the decedent all the way to the hospital. MR. CAMPBELL stated that upon arrival at the hospital, the handcuffs were removed in the Emergency Room by hospital personnel and that nurse WILSON, cut off the plastic zip restraints on the decedent's legs. MR. CAMPBELL stated that he did not detect the odor of pepper mace on the decedent while he performed C.P.R..

It is the undersigned detective's opinion after reviewing all the facts available which include eyewitness statements, officer statements, scene investigation, personal examination of the decedent, available autopsy results, medical reports and police procedural policy reports, that the officers involved used only the force necessary to effectively subdue a dangerous individual. The officers first attempted to talk the decedent into seeking help. The situation quickly escalated into a physical confrontation which was initiated by the decedent who pushed aside an officer in an attempt to get away. The officers had to consider the close proximity of a school in session and the danger the decedent posed to the school children and the general public. There is no eyewitness report nor physical evidence that the officers used undue force. The officers used the stun gun and pepper spray only after they were unable to restrain the decedent. The officers did not strike the decedent nor did they apply choke holds. The force they used is well within the guidelines of Southampton Village Police Department policy on the use of physical force. It is for these reasons that in the undersigned detective's opinion, the decedent's death, however tragic, is not criminal.

This case is to remain ACTIVE until such time as a final Medical Examiner's Report is completed.

| REPORTING OFFICER | SUPERVISOR |
|---|---|
| Det. Pasquale Albergo #783 | D/Sgt. John Twiname #519   ja |

PDCS 1083a                                                        53-273..7/91c#

# COUNTY OF SUFFOLK



## STEVE LEVY
### SUFFOLK COUNTY EXECUTIVE
### DEPARTMENT OF HEALTH SERVICES
## Brian L. Harper, M.D., M.P.H.
### COMMISSIONER

**DIVISION OF MEDICAL-LEGAL INVESTIGATIONS &
FORENSIC SCIENCES
SIDNEY B. WEINBERG CENTER
FOR FORENSIC SCIENCES**

**ACCREDITED BY ABFT, ASCLD/LAB & NAME**

## CHARLES V. WETLI, M.D.
### CHIEF MEDICAL EXAMINER

Date:  November 5, 2004
Re:  Your CC#  04-65136
Name:  DAVID GLOWCZENSKI
Our File #:   04-0487

COMMAND #3310, HOMICIDE
YAPHANK AVENUE
YAPHANK, NY  11980

Detective Albergo #783

The death was certified as:

ACUTE EXHAUSTIVE MANIA DUE TO SCHIZOPHRENIA
NATURAL

Sincerely yours,

*Charles V. Wetli, M.D. / Hc*

Charles V. Wetli, M.D.
Chief Medical Examiner

DRUGS ⊕

ETHANOL

Ethanol Level:        BRAIN _____
CVW/hc:                 BLOOD _____

NORTH COUNTY COMPLEX, BLDG #487, 725 VETERANS MEMORIAL HIGHWAY, P.O. BOX 6100, HAUPPAUGE, NY  11788-0099        631.853.5555

POLICE
COUNTY OF SUFFOLK, N.Y.

Page 1 of 2 Pages

I Patricia Pape being duly sworn deposes and says that I am 63 years old and I was born on 1·21·41 (PP) I live at 48 Lumbar Lane, Bridgehampton. I am a forth fourth grade teacher at Our Lady of the Hamptons School, 160 N. Main St, Southampton. I have worked for the school for 25 years.

On 2-4-04, sometime between 10:00 AM and 11:00 AM I was in my classroom which is on the first floor at the northwest corner of the school. Outside my classroom, maybe thirty feet away, where the sidewalk meets the grass I saw Officer Marla Donovan and other officers talking to a man with long hair. The man with the long hair went to leave and pushed Officer Donovan. The other officers tried to restrain him. They struggled with him on the ground. The man was face down and kept moving and kicking. The officers were trying to put handcuffs on him and he continued to fight them and yell. There was an officer crouched down on one knee towards the man's feet, the officer had something black in his hand and I'm not sure if it was a gun, stun gun, or a radio. The officer was about a foot away from the man on the floor with the long hair. I didn't see the officer do anything with the object in his hand. The other officers were trying to handcuff the man that was still struggling and yelling. I couldn't hear what he was saying when he was yelling.

Dana Graham Det.827      x Patricia Pape      2-4-04

Statement of Patricia Pape

    I moved away from the window and pulled the last shade down because the kids were coming back into the classroom.

    When I heard that the man wasn't yelling anymore I went over to the classroom window and peeked from behind the shade. I saw the officers turning the man over on to his back. The man was wearing a plaid shirt and pants. I noticed that the man's shirt was ele either open or pulled up and that the officers were doing C.P.R., the chest compressions. I heard one of the officers say something about an ambulance. A few minutes later I saw Missy Croke of the Southampton Village Ambulance arrive and go over to the area where the officers and the man were. I moved away from the window and didn't look out for a long while. The next time I looked out the window I saw that the police yellow tape was up.

    I have read this two page statement that I have given to Detective Giordano and I swear it is all true

Sworn to before me this       X Patricia Pape     2-4-04
4th day of February 2004

DONNA C. GIORDANO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01GI6057518, SUFFOLK COUNTY
TERM EXPIRES APRIL 18, 20__

Donna Giordano Det #27

2-4-04

POLICE DEPARTMENT
COUNTY OF SUFFOLK, N.Y.

Page 1 of 3 Pages

I Carolyn Cirigliano being duly sworn deposes and says that I am 60 years old and I was born on 5-17-43. I live at 6 Sherwood Road, Hampton Bays. I work as a Southampton Town Public School Teacher at the Our Lady of the Hamptons School, 160 N. Main St, Southampton. I teach remedial reading to all the grades, and have worked at that school for about ~~eight~~ seven years.

On 2-4-04, sometime before 11:00AM I was in my classroom which is the resource room, that I share with the ~~nurse~~ Special Education teacher Madeleine Danowite. The resource room is on the first floor of the school, less than halfway in the middle of the building on the west side.

I heard a man screaming, he was making noise or a sound but I couldn't understand what he was saying. When I turned around to look completely I saw a white or hispanic male, with long dark curley hair wearing dark pants and a shirt, lying on his stomach with his head (face) away from me, partly on the grass. His body was across the sidewalk. His hands were behind his back, and his feet were crossed and I thought they were bound. He was about 40 feet away from me. I opened the window the man was yelling but I couldn't understand what he was saying. The officers were talking but I couldn't hear what they were saying.

Officer Donovan was closest to me, she was

Ct. W. Gualano #812                    X Carolyn Cirigliano

Statement of Carolyn Cirigliano

Kneeling to the man's right side holding his right arm. The man's arms were behind his back but I don't if he was handcuffed or not. Another officer, with a balding head (greying hair) was on the opposite side of the man near his head. A third officer was at the man's legs.

It looked as if the officers were restraining him. The man stopped yelling for a few seconds and then continued again and the officers held on to him.

At some point the man became quiet for a longer period of time, maybe for about a half a minute. The officer by the man's head pulled his hair to move his head, which was facing away from me, or he brushed the hair away from his face and checked for a pulse. The officers turned the man over and put him on his back and moved his shirt. The man was now lying completely on the sidewalk which was a flat surface and they began to do (C.P.R.) chest compressions. Other officers were coming and I saw a woman from the ambulance there. Someone also was administering oxygen to man. Officer Donovan put gloves on to help the man.

When they first turned the man over I saw his face. It was a bluish grey color

Caro Cirigliano #927          X Caroline Cirigliano

Case 2:04-cv-04052-SJL   Document 118-3   Filed 11/30/09   Page 80 of 164 PageID #: 1843

Statement of Carolyn Cirigliano

and I think he had a mustache or dirt by his lip and it looked like there could have been blood by his mouth or nose but I didn't get a real good look at his face.

The police and ambulance people worked on the man for a while to try to resusitate him. Eventually the regular ambulance came. The man was placed on a stretcher and the police and ambulance people continued to give him first aide to try to resusitate him. They put the man in an ambulance and the ambulance left.

At no time did I see the officers strike the man, & who was on the ground, ~~and the floor~~ and I was watching carefully. I did not see the officers do anything inappropriate to the man. I saw them try to restrain him and then I later saw them try to resusitate the man. I don't think the officers knew the man wasn't breathing untill they turned him over, especially since he had the hair covering his face.

I have read this three page statement that I have given to Detective Giordano and I swear that it is all true.

Sworn to before me this
4th day of Feb 2004

x Carolyn Cirigliano

2/4/04

DONNA C. GIORDANO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01GI6057518, SUFFOLK COUNTY
TERM EXPIRES APRIL 18, 20___

2/9/04

POLICE DEPARTMENT
COUNTY OF SUFFOLK, N.Y.

PAGE 1 OF 2

I Julie Cosgrove being duly sworn deposes and says I am 38 years old. I was born on 7/13/65. I live at 96 Silas Carter Rd, Manorville. I am a music teacher at Our Lady of the Hamptons School, 160 No. Main St, Southampton Village. Today I was working at the school when I went outside by the school driveway to smoke a cigarette. This was at about 10:45 am. When I got outside I heard yelling but I couldn't understand the words. It was very loud. I walked towards No. Main St. I was standing at the north west corner of the school. I saw three police officers around a man with brown hair and a white tee shirt. They were facing my direction. except for Officer Donovan (JC) The man was screaming but I don't remember the police officers yelling. The man went up to Police Officer Marla Donovan, who I have seen at the school before. He pushed her. I turned to walk away because I thought the man was coming towards me. I looked back and I saw Police Officer Donovan getting up off the ground and wiping herself off. The two other police officers were holding the man by his arms and pushing him down to the ground. The man was screaming, but it was total jibber jabber. I couldn't understand anything the man was yelling. When (CONT PAGE 2)

ALFRED M. CICCOTTO
NOTARY PUBLIC, STATE OF NEW YORK

SWORN TO BEFORE ME

FEB. 4, 2004

2/4/04
POLICE DEPARTMENT
COUNTY OF SUFFOLK, N.Y.

SWORN STATEMENT OF JULIE COSGROVE

PAGE 2 OF 2

(CONT. FROM PAGE 1) the officers got him on the ground
the man was bucking his head, kicking his legs,
and still screaming. The man struggled to get
free for three to five minutes. I did not see the
officers punch or kick the man, they were just
trying to hold him down by the arms. One officer
tried to hold him down by the hair. I was
concerned that the man was going to get
away from the police officers so I went back
into the school and checked to make sure the doors
were locked. I didn't want the man to come
into the school. Then I went into the nurses
office and watched from a window. At that point
the man was lying on the ground. He was not moving
and someone was doing C.P.R. on him as the
ambulance pulled. The ambulance people put the
man on a stretcher, put the red belts on him,
and they took him away. I have read the above
statement consisting of two pages taken by Det.
Ciccotto and I swear it is all true.

SWORN TO BEFORE ME
FEB. 4, 2004

Julie Cosgrove

ALFRED M. CICCOTTO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CI5074751, SUFFOLK COUNTY
TERM EXPIRES 3/24/07

POLICE DEPARTMENT
COUNTY OF SUFFOLK, N.Y.

PAGE 1 OF 2

I Sandra Martinelli being duly sworn deposes and says I am 34 years old. I was born on 5/15/69. I live at 12 Artist Lake Blvd, Middle Island. I am a 3rd and 4th grade math teacher at Our Lady of the Hamptons School, 160 No. Main St, Southampton. I have been working there since September, 2003.

Today between 10:30 and 11:00am I was in my classroom at the school. I looked out the window, which is on the first floor. I saw about four cops standing around a man with long dark hair. They were standing about twenty feet from my window. Students started coming into the classroom so I shut the blinds. I started hearing a lot of yelling outside but I couldn't understand the words. I went to close the classroom windows, which were still open. This was about two minutes after closing the blinds I saw the man was on the ground at that point. The police officers were trying to hold him down. The man looked like he was trying to get up and he was yelling incoherently. I moved away from the window. I had students in the room so I couldn't stand there and watch but I kept peeking out the window. The next time I looked out I saw the police roll him (cont page 2)

SWORN TO BEFORE ME

FEB 4 2004

Sandra Martinelli

ALFRED M. BICCOTTO
NOTARY PUBLIC, STATE OF NEW YORK

2/9/04

SWORN STATEMENT OF SANDRA MARTINELLI      PAGE 2 OF 2
(cont. from page 1) over. A cop had his ear to the
mans face like he was checking for breathing.
A woman with a blue duffel type bag ran
over. I moved away from the window again. I
looked a moment later and I saw someone
doing C.P.R. on the man. I never saw the
police strike or hit the man. They were just
trying to hold the man down, restrain him. I
left the window again. The last time I looked
out I saw the stretcher being put in the back
of the ambulance. I have read the above
statement consisting of two pages taken by
Det. Ciccotto and I swear it is all true.

*Sandra Martinelli*

SWORN TO BEFORE ME

FEB. 4, 2004

*[signature]*

**ALFRED M. CICCOTTO**
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CI5074751, SUFFOLK COUNTY
TERM EXPIRES 3/24/07

2/4/03

04-65136

POLICE DEPARTMENT
COUNTY OF SUFFOLK, N.Y.

I Michael Maryon being duly sworn, deposes and says, I am 29 years old. I was born in Glen Cove on September 19, 1974. I live at 27 Grassmere Dr, Mastic Beach. My home phone is 281-4869. I work for Hardy Plumbing, 1654 County Rd 39A, Southampton.

Today, Wednesday, 2/4/03 I was on a job at 137 N. Main Street in Southampton. Also on the job were my brother John Maryon and my helper, Keith Schneckenberger. Sometime around 10:30 A.M. I heard screaming that sounded like an animal. I looked over by the school on North Main St and saw several police officers standing and another officer holding down something on the ground. I got my camera and was taking pictures. Suddenly the officers started doing first aid. It was then that I realized the thing on the ground was a man. I was far away and all I could tell was the man looked big with a big gut. I never saw the officers strike or choke the man. All I saw was them trying to hold the man down. As I said, earlier they

POLICE DEPARTMENT
COUNTY OF SUFFOLK, N.Y.

then began doing CPR on the man.
I took several pictures of the struggle
and the first aid. I turned over
the computer card from my camera
to the police.
        I have read this two page
statement and swear it is all true.

Michael Mayo

Sworn to before me
the 4th day of February, 2004
Pasquale N. Alberg
    Notary Public
    State of New York
    County of Suffolk
    Reg no. 01AL4887833
        Exp 3/23/07

STATE OF NEW YORK      }
COUNTY OF SUFFOLK      }
TOWN OF SOUTHAMPTON    }      s.s:
VILLAGE OF SOUTHAMPTON }

Page 1 of 1

*Statement of Patricia Carlson*
**Date:  February 6, 2004**
**Time:  1130 hours**
**C.C. #0801-04**

    I Patricia Carlson being first duly sworn depose and say that I am 67 years of age born on ██████████████. I live at 4174 Beacon Place, Discovery Bay California where my telephone number is ███████████. I'm talking to Detective Lamison whom I am freely and voluntarily given, with out any consideration given of promises being made to induce this statement and with the knowledge that it can be used in a criminal prosecution.

    I have been up from California for a couple of weeks helping my mother, Dorothy Schoen d.o.b. 10 3 1918 of #155 Elm Street, Southampton, prepare to sell her home and move to California. On Wednesday February 4, 2004 at about 9:30 a.m. I was sitting in the living room with my mother waiting for Despatch, the moving company, to come and pick up some things that we had packed. As I was sitting on the couch a large white male with long hair appeared at the living room window. There were no window coverings on the windows. The man looked like Charles Manson. I went over to the front door and opened it to see who it was. I thought it was the moving men, but when I confronted the man he just starred at me without saying anything. I became very uncomfortable and frightened, so I immediately rushed back into the house and locked the door and went to the back of the house to lock the other doors. I then picked up the telephone and called 9-1-1. As I was calling the police I went back into the living room with my mother with the phone in my hand and the man was still starring into the window. I was hoping the man would leave when he saw me on the phone but he didn't leave immediately. The police arrived within a minute or two and the man had gone. I told the police what had happened and asked them to check the ~~house in the back~~ SIDE APARTMENT (C) of my mother's property to make sure the man wasn't there.

    After talking with my mother ~~we both~~ she (P) recognized the man to be David 25 (P) Glowczenski of Layton Avenue. When I used to live in Southampton about 30 years ago, I lived on the corner of Layton Avenue and Elm Street and David used to come over to my house to play with my son.

    I can read and write the English language and I have read this ~~two~~ ONE page statement and I swear it to be all true.

*Patricia Carlson*

Sworn to me this 6th,
Day of February 2004
HERMAN LAMISON JR.
Notary Public, State of New York
No. 01LA06061993, Suffolk County
Commission Expires June 30, 20__

# EXHIBIT NOT INCLUDED
## TRANSCRIPT OF TESTIMONY IS IN POSSESSION OF ALL PARTIES' COUNSELS

# EXHIBIT KK

# EXHIBIT LL



CC# 8093-04
Time: 10:31AM

Supplemental Report of PO Christopher Wetter 233

This report is given for departmental purposes only at the direction of Lt. Howard Lewis 215.

The undersigned officer, PO Platt, PO Donavan and Sgt. Schucht responded to the area of North Main Street in front of the Our Lady of the Hamptons School for a male subject in an emotionally deranged state. The undersigned officer while north bound on North Main Street did observe Po Donovan attempting to stop a male subject matching the description of the subject in question. At that time PO Platt was exiting his patrol vehicle and was walking towards PO Donovan and the male subject. The undersigned officer then did exit unit 144 and walk up to the male subject. PO Platt was talking to the male at this time known to the undersigned officer as David Glowczenski. David was upset and PO Platt and Po Donovan were telling him that we were there to help him and that he was not under arrest. Po Platt said to David that we were there to help his family that he was off his medication and that we would help him get to a hospital to get back on his medication. At that time David's demeanor changed and he seemed to the undersigned officer that he was thinking how he could run and get away from the officers. Sgt. Schucht did then arrive at the scene and told David that we were going to help him. David then turned towards PO Donovan and swung his left arm at her head. PO Donovan moved away from David and Sgt. Schucht, Po Platt and the undersigned officer did grab David and take him to the ground. David became very combative and violent and the undersigned officer and Sgt. Schucht were yelling at him to calm down and to give us his hands, to put in handcuffs. David was refusing to physically give up his hands and at that time PO Platt did use a Taser on him. David continued to fight with the officers and the undersigned officer did deploy OC in his face. The struggle continued and Sgt. Schucht and PO Donovan were able to get one handcuff on one of his hands and eventually another pair of handcuffs on his other hand, connecting both sets of cuffs. The undersigned officer then with a third set of handcuffs did cuff the two sets of handcuffs to his belt rear center belt loop. David was still combative and kicking PO Platt when the undersigned officer yelled to Det. Lamison and LT. Lewis to grab a zip-tie out of the undersigned officers hat in patrol vehicle 144. Det. Lamison did retrieve same and PO Platt did place the zip-tie on David's feet to control same. At that time all officers did get off of David and he did stop struggling. Sgt. Schucht did request an ambulance for him to transport him to Southampton Hospital to be treated for OC contact and Taser contact. At that time First Responder Missy Crooke did arrive on the scene and with help from the undersigned officer did roll David from his chest to his back. David was unresponsive. The undersigned officer did then check for breathing, noticed none and started CPR. The ambulance pulled up and ambulance members started to help with David. David was loaded into the ambulance and taken to Southampton Hospital. The undersigned officer did then respond to the hospital for treatment were it was learned that David Glowczenski was pronounced dead.

Po Wilcat 233
Po Christopher J Wetter 233

Exh 1
Wedder

34

# EXHIBIT MM

Case 2:04-cv-04052-SIL Document 118-3 Filed 11/30/09 Page 92 of 104 PageID #: 1855

5 February 2004

To: Lieutenant H. Lewis #215

From: Sgt. A. Schucht #219 _SN_ _(signature)_ #215

Re: Use of Force/ 04-0801; 04-0803

The reporting officer while responding to a call of an emotionally disturbed person did authorize the use of force in the form of Taser Equipment as approved by Southampton Village Police Department Guidelines.

Further, the reporting officer authorized the use of OC Pepper Spray to the emotionally disturbed person as approved by Southampton Village Police Department Guidelines.

_Schucht_
_two Eth 2_

**POLICE DEPARTMENT, VILLAGE OF SOUTHAMPTON, N.Y.**
**INTERNAL CORRESPONDENCE**

4 February 2004

To: Lieutenant H. Lewis #215

From: Sgt. A. Schucht #219

Re: 04-0801; 04-0803

On the above date, the reporting officer was assigned to work a 9am-5pm shift working in Headquarters.

At approximately 0915, the reporting officer did hear a call on the Police radio of a disturbance at 70 Layton Avenue involving a possible emotionally disturbed person at that location. The reporting officer met with Officer Wetter prior to arriving at the scene and was advised that the person involved was one David Glowczenski.

The reporting officer, along with Officer Wetter and Officer Platt did respond to the residence where we were met by a household member, Ted Glowczenski. Ted Glowczenski advised the responding officers that the family was going to try to get David into a treatment program, possibly Greenport Hospital.

At this point Officer Wetter advised Ted Glowczenski that if he needed any further assistance to call the Police Department again. At this point all responding officers left the scene and completed the call for service.

Approximately one hour later, the reporting officer heard a radio call about David Glowczenski leaving the house at 70 Layton Avenue in a rage and was out of control according to the caller. Further monitoring of the radio revealed that Officer Donovan had made contact with David Glowczenski on North Main Street in front of Our Lady of the Hamptons School.

The reporting officer responded to the scene and observed that Officer's Wetter, Platt and Donovan were engaged in conversation with David Glowczenski. The reporting officer also engaged in a short conversation with David Glowczenski in an effort to get David Glowczenski to seek medical help.

At this point David Glowczenski began to move away from the reporting officer. The reporting officer did grab David Glowczenski's left arm in an effort to stop his movement. David Glowczenski did stop and the reporting officer told him to calm down, take a deep breath and let's talk about the situation.

David Glowczenski then moved in the direction of Officer Donovan and Officer Donovan then grabbed him. The reporting officer did then kick David Glowczenski's legs in an effort to subdue his actions on the ground. David Glowczenski did fall to the ground along with Officer Donovan and the reporting officer

At this time, the reporting officer did attempt to place handcuffs on David Glowczenski with the assistance of Officer Donovan. David Glowczenski was extremely enraged and was kicking and screaming during the entire incident.

The reporting officer observed Officer Platt by David Glowczenski's legs. Officer Platt had a taser gun pointed at David Glowczenski's right leg. The reporting officer told Officer Platt to take the taser probes off and use the equipment without the probes. Officer Platt did this and did use the taser equipment on the lower right back of David Glowczenski several times. The use of the taser equipment was ineffective in subduing David Glowczenski. Officer Wetter did then use OC spray in the face of David Glowczenski in an effort to stop his combative behavior.

Within a short time, the reporting officer, with Officer Donovan did handcuff David Glowczenski's left hand.  The reporting officer observed David Glowczenski reach for the gun belt of Officer Wetter with his right hand. The reporting officer grabbed the right hand of David Glowczenski with the help of Officer Platt. The reporting officer was unable to handcuff the two hands of David Glowczenski using one set of handcuffs.

The reporting officer did take a second set of handcuffs and placed them on the right hand of David Glowczenski. The reporting officer then secured David Glowczenski's hands by connecting the two sets of handcuffs together. During this entire procedure, David Glowczenski was extremely agitated and was still screaming.

At this point, the reporting officer called on the radio for an ambulance to respond as is standard operating procedure when a subject is either given OC Spray or taser equipment is used.

David Glowczenski was still lying on the ground and Officer Platt asked David Glowczenski if he would like to be moved off the ice and onto the grass. David Glowczenski replied "Yes" and Officer's Platt and Wetter began to move him. At this point David Glowczenski started to become combative again by kicking his legs.

Lieutenant Lewis and Detective Lamison arrived on the scene a short time later. Officer Wetter asked Detective Lamison to get a zip tie from Officer Wetter's patrol vehicle so that David Glowczenski's legs would have restricted movement. The reporting officer is not aware who tied up David Glowczenski's legs.

Approximately 30 seconds later, the Southampton Village Volunteer Ambulance First Responder arrived at the scene. This person was Missy Croke, a member of the Southampton Village Volunteer Ambulance. Missy Croke asked to have David Glowczenski turned over and it was observed that David Glowczenski was not responsive or breathing.

Officer Wetter, Officer Donovan, and Missy Croke immediately began CPR. The reporting officer radioed to Headquarters to expedite the ambulance.

The Southampton Village Volunteer Ambulance arrived a very short time later and took David Glowczenski to Southampton Hospital.

The reporting officer did place crime scene tape around the area at the direction of Lieutenant Lewis.

Approximately 20 minutes later, the reporting officer and Officer Platt were taken to Southampton Hospital by Lieutenant Cummings. The reporting officer was checked by hospital staff personnel for ingestion of OC Spray, an injury to the left knee, and right elbow.

The reporting officer was released from Southampton Hospital at approximately 1500 hours. The reporting officer then responded back to Police Headquarters for requisite paperwork.

Arthur Schmitt



**Order #:** 32                     **Date:** 04/01/2003
**Category:** GENERAL ORDERS
**Title:** USE OF FORCE/DEADLY PHYS.FORCE                *Eth 3 Schick*

**Text:** This revision replaces General Order 15 and the Appendage to General Order 32 regarding Use of Force Reporting and consolidates them into this General Order.



I.  FORCE:  Use of force by members of the Inc. Village of Southampton Police Department.

A.  In our complex society, law enforcement officers are confronted daily with situations where control must be exercised to effect arrests and to protect public safety.

B.  Control may be achieved through mediation, advice, warnings, persuasion, or in extreme situations, by the use and application of the appropriate physical force.

C.  If physical force is used when not required, or is unreasonable in degree, it is usually construed as brutality and is considered to be the ultimate in discourtesy, misconduct and abuse of authority.

D.  Physical Force may be used when the exercise of mediation, advice, and/or warning is found to be insufficient to obtain cooperation and control.  Such physical force, if used, shall be the minimum force reasonably necessary for the particular situation, and shall be reasonable in degree to the extent that it is necessary to effect cooperation and control of a particular incident.

E.  Under no circumstances will such force exceed that provided for by Section D above and State and Federal Statutes.

F.  The amount of force used or the methodology employed to secure compliance with the law, or to effect an arrest, is governed by the situation and similar circumstances will require similar response for all groups and individuals.  An officer must remain alert however, and may be called on to exercise additional patience and understanding in those situations where language or cultural differences might be mistaken for resistance to enforcement of the law.

II. METHODOLOGY FOR ACCOMPLISHING USE OF FORCE.

A.  Articulate- Attempt to communicate with the person or persons involved in a particular situation.

B.  Physical Force- Only if necessary for a given situation - Members of the force will utilize their physical strength, skills, and training in self-defense.

**Order #:** 32    **Date:** 04/01/2003
**Category:** GENERAL ORDERS
**Title:** USE OF FORCE/DEADLY PHYS FORCE

C. Advanced Taser M26

1. Only officers trained and certified in the use of the department Taser will carry such in their assigned vehicles while on patrol. The Sergeant or Officer in Charge (OIC) of the shift will assign a qualified Taser operator to deploy the Taser during the shift. Tasers will be deployed only in accordance with department policy regarding use of force, certified training and the procedures contained herein.

2. When not in use the Taser and two (2) air cartridges will be secured in the main floor weapon storage locker labeled #9 and the key to said locker will be secured within the communications section key box.

3. Tasers will be kept in their carrying case while within the assigned vehicles and all officers will protect them from damage and theft. At the end of each tour, the Taser operator will turn the Taser kit over to their Sergeant or OIC to be inventoried and tuned over to their relief or secured as prescribed above.

4. The Taser kit shall consist of the following: (1) M26 Advanced Taser and carrying case, (2) crosshatched air cartridges, (1) magazine of NIMH batteries, (1) magazine of emergency use alkaline batteries and (1) encapsulated sample probe.

5. Prior to placing the Taser into service, officers will perform a battery check to ensure their assigned Taser is properly functioning. Prior to performing the battery check, the Taser will be inspected to make sure there is not an air cartridge already affixed. If an air cartridge is present, it will be removed before the battery check is performed, preventing an accidental discharge of the air cartridge. The Taser will be carried within the case and the air cartridge will be affixed only when an actual confrontation is imminent. During the battery check a fast pulse rate of approximately 15-20 pulses per second will be observed if the NIMH batteries are functioning properly.

6. Should the battery malfunction, the assigned officer shall advise the department Armorers Unit for inspection of the Taser and to obtain a NIMH battery magazine replacement or an emergency alkaline battery magazine if a NIMH battery magazine is not available.

7. In the event a cartridge is used, a replacement will be requested from the department Armorers Unit.

8. Should the Taser be used, the Taser operator will voucher the spent air cartridge as evidence per normal department procedures.

9. If the Taser is used the probes may be removed from the defendant as per department training guidelines. If the Taser probes have lodged in a sensitive area of the defendant's body, particularly the head, neck or groin, the defendant will be taken to the hospital for probe removal by medical personnel. The officer will show the attending physician the encapsulated probe from the Taser kit and appraise the physician of any

51

**Order #:** 32    **Date:** 04/01/2003
**Category:** GENERAL ORDERS
**Title:** USE OF FORCE/DEADLY PHYS.FORCE

secondary injuries sustained by the defendant as a result of the Taser deployment.

10. The use of the Taser is to be considered a Use of Force. As such a Use of Force Report will be completed as per the provisions of this General Order.

D. Oleo Resin Capsicum (O.C.)

1. Oleo Resin Capsicum may be carried by all full time police officers and any part time police officer authorized by the police department.

2. The department will provide its members with training in the proper use of O.C. Members of the department are to follow the procedures outlined in said training and all applicable department guidelines when using O.C.

3. A Member of the Force who discharges O.C. will have the subject to whom the O.C. was applied examined by a physician immediately after obtaining control over and custody of the subject. Appropriate medical aid will be given and if practical the subject's face will be flushed with cold water.

4. A Member of the Force who discharges O.C. under any circumstances will submit a written report as per the requirements for Use of Force Reporting established in this General Order.

5. The application of O.C. is to be considered a use of force.

6. The unauthorized or improper use of O.C. is prohibited.

E. Mace and Chemical Agents other than O.C.

1. Mace or Chemical Agents will NOT be intentionally used on ANIMALS or INTOXICATED PERSONS.

2. When mace, or a chemical agent other than O.C. is used, the person the agent was applied to will be brought for medical evaluation to the hospital as soon as they are in custody and under control. The use of Mace or a Chemical Agent is to be considered a Use of Force, as such a Use of Force Report will be completed as per the procedures contained in this General Order.

F. Night Stick, Baton, Monadnock PR-24, ASP Expandable Baton

1. The aforementioned instruments are to be considered dangerous when not used properly. Therefore, only those members who have been trained shall be authorized to carry same. The department will train members in the appropriate use of these instruments.

DEPARTMENT ORDER

**Order #:** 32          Date: 04/01/2003
**Category:** GENERAL ORDERS
**Title:** USE OF FORCE/DEADLY PHYS.FORCE

2.  These instruments should be utilized on the sensitive areas
of the body (i.e. ankles,knees, shins, hands, wrists,elbows)
At no time will a subject be struck above the shoulders.

3.  The use of the above impact weapons should be considered a Use of Force
and as such a Use of Force Report is to be completed as per the provisions of
this General Order.

4.  The above instruments should be used only when less violent
methods of apprehension have failed, and an arrest must be
effected.  It should be used only for self-defense and/or
the defense of others.

G.    Members of the department are hereby prohibited from using
and possessing the following instruments:

1.  Blackjack
2.  Sap-sap gloves
3.  Chains (come alongs)
4.  Any other article, substance or instrument not authorized by the Chief of
Police.

III. USE OF DEADLY PHYSICAL FORCE: NECESSITY

The use of deadly physical force by members of the Department is
governed by the New York State Penal Law, Article 35  Defense of
Justification as affected by the United States Supreme Court
Decision Tennessee Vs. Garner.  Members of the Department are to be
governed by the following guidelines regarding the use of deadly
physical force:

A.  The amount of force should be the minimum amount necessary to
accomplish a mission and such force shall not exceed that
provided for by statute.

B.  A member of the department will use every reasonable alternative
before resorting to the use of deadly physical force.

C.  Deadly physical force may only be used under the following
circumstances:

1.  In defense of self, or another against deadly physical
force, or
2.  When necessary to prevent the escape of a fleeing felon and
where reasonable cause to believe exists that the felon(s)
poses a significant threat of death or serious physical injury to the
member or other person(s).

Order #: 32        Date: 04/01/2003
Category: GENERAL ORDERS
Title: USE OF FORCE/DEADLY PHYS FORCE

## IV. FIREARMS -INTRODUCTION

As law enforcement officers sworn to protect life and property, to prevent crime and apprehend offenders, we must constantly be aware of the sanctity of human life. Therefore, the guidelines listed below have been developed to make it incumbent on an officer to use good judgment before using his firearm, not to restrict him from properly performing his duty. The guidelines have been prepared to avoid unnecessary shooting incidents and consequently to protect life and property.

## V. USE OF FIREARMS

The following guidelines have been prepared to help members of the department, members of the force to understand what is allowable by this department in regard to the use of deadly physical force to protect life and property. As members of the law enforcement profession we know that we are governed by what is stated in Article 35 of the New York State Penal Law About Defense of Justification. However, we are incorporating the US Supreme Court ruling Tennessee vs: Garner that deadly force may not be used to effect the arrest of an unarmed, non-dangerous, fleeing felon. The following is to be the policy for the Inc. Village of Southampton Police Department.

A.  In all cases, only the minimum amount of force will be used which is consistent with the accomplishment of the mission.

B.  The firearm shall be viewed as a defensive weapon, NOT a tool of apprehension.

C.  Every reasonable alternative means will be utilized before a member of the department resorts to the use of their firearm.

D.  Deadly physical force shall NOT be used to effect the arrest of a fleeing felon unless a member of the department has reasonable cause to believe that:

1.  Such force is necessary in defense of self, or another, against deadly physical force, or

2.  When necessary to prevent the escape of a fleeing felon(s) and where probable cause to believe exists that the felon(s) poses a significant threat of death or serious physical injury to the member or other person(s). In addition, department policy would prohibit the use of deadly physical force unless all of the following factors are present.

**Order #:** 32          **Date:** 04/01/2003
**Category:** GENERAL ORDERS
**Title:** USE OF FORCE/DEADLY PHYS.FORCE

A.  The member has probable cause to believe based upon knowledge of the crime and surrounding circumstances, and

B.  The member has probable cause to believe the fleeing felon poses an imminent threat of death or serious physical injury to member(s) or other person (s), and

C.  Reasonable means to apprehend the perpetrator, other than by the use of a FIREARM are NOT available.

E.  Deadly physical force shall NOT be used to effect an arrest or prevent or terminate a felony unless the officer has probable cause to believe that the victim may be killed or seriously injured and there is no other reasonable means to effect the arrest or terminate the felony other than by the use of deadly physical force.

F.  The firing of warning shots is prohibited.

G.  The discharging of a firearm to summon assistance is prohibited, except where someone's safety is endangered.

H.  Discharging a firearm from or at a moving vehicle is prohibited.

Exception:
1.  The occupant (s) of the vehicle are using deadly physical force against the member or another person(s) by means other than the vehicle, or

2.  The operator of the vehicle uses same as an instrument which places the member in imminent danger of death, or serious physical injury and the member has no alternative means of self-defense for himself or other person(s).

I.  The discharge of a firearm at dogs or other animals should be an action employed ONLY when no other means to bring the animal under control exists to protect the member or other person(s) from death or serious physical injury.

J.  No member shall fire so-called "warning shots". "Dry Firing" is forbidden in or on departmental premises except under personal direction of a firearms instructor. In those cases where shooting is authorized, great care must be exercised in discharging firearms.

K.  A member should use every tool at his disposal to avoid surrendering his weapon.

L.  In carrying your weapon - extreme safety will be utilized Members will maintain and clean their firearms, and will

Order #: 32    Date: 04/01/2003
Category: GENERAL ORDERS ·
Title: USE OF FORCE/DEADLY PHYS.FORCE

shoulder the responsibility for keeping their firearm in
proper working order at all times.

VI. DISPLAYING OR DRAWING FIREARMS:

An officer shall unholster or display a firearm ONLY if
authorized by these procedures, directed by competent authority, or
there is reason to believe such may be necessary for the safety of
the officer or others.

VII. DISCHARGING FIREARMS

A. When a member discharges their firearm on or off duty, they
will notify the Chief of Police or next in command immediately.

B. Members discharging a weapon accidentally or intentionally,
shall file a written report immediately.

C. Investigations relative to the discharging of a weapon
will be investigated by the Chief of Police or his designee.

VIII. INVESTIGATION OF DISCHARGE - Investigation of these incidents
shall consist of the following procedures; but not limited in
scope to same.

1. Respond to scene and determine if discharge resulted
   in personal injury or property damage.
2. Interview and take written statements.
   a. member(s) involved in the incident.
   b. witnesses
   c. other person(s) involved.
3. Secure firearm(s) involved in the incident.
   Serial numbers must be determined and unspent
   cartridges must be secured.
4. All spent cartridges must be accounted for with
   respect to an incident. If subject is wounded, we
   must know exactly where and by how many bullets.
   Investigating officers must cooperate and work
   closely with attending medical personnel adminis-
   tering treatment to the victim.
5. Photographs should be taken of the victim either
   at the scene or at the hospital.
6. Photographs of the entire incident scene will
   be taken.
7. In conducting the investigation, the investigating
   officer must determine if the member(s) using deadly
   physical force followed department policy and the

**Order #:** 32     **Date:** 04/01/2003

**Category:** GENERAL ORDERS ·

**Title:** USE OF FORCE/DEADLY PHYS FORCE

provisions of this order in using their firearm.
The weapon approved by the Police Department with the
proper approved ammunition.

8. A typed report on a Supplementary Report Form detailing
   the circumstances surrounding the entire incident will be
   signed by the member and filed with the Chief of Police
   for possible presentation at a Grand Jury preceding or
   a departmental hearing.

## IX. LOSS OR DAMAGE TO FIREARM

A. Only weapons issued by the department or approved by the
   Chief of Police will be carried by members of the department.

B. If an officer should lose his weapon, he will immediately
   notify the Chief of Police, or next in command and submit
   a written report.

## X. RESPONSIBILITY OF WEAPON

A. The individual assigned to a weapon is responsible for same;
   that is to say they shall be held liable for its safety at all
   times whether on-duty or off-duty. In the event a member
   takes their service weapon home, the member shall properly
   secure their weapon and department issued ammunition.

B. If a weapon needs repair, it will be done by an
   authorized gunsmith through the department.

C. No unauthorized weapon will be carried by a member of the
   department commonly known as a "throw down" or "throw aways".
   If such a weapon is found in possession of an officer,
   immediate disciplinary action will be undertaken.

## XI. RESPONSIBILITY FOR USE OF FIREARM -

The responsibility for the use of any DEADLY PHYSICAL FORCE,
or the use of a FIREARM shall, in all cases, be borne by the
member who uses said force or fires the weapon.

## XII. BASIC DEPARTMENT POLICY IS:

DEADLY PHYSICAL FORCE
vs.
DEADLY PHYSICAL FORCE

All members of the department will read and fully familiarize

**Order #:** 32                    **Date:** 04/01/2003
**Category:** GENERAL ORDERS ·
**Title:** USE OF FORCE/DEADLY PHYS FORCE

themselves with Article 35 - Defense of Justification, New York State
Penal Law and with Case Law - TENNESSEE vs. GARNER. All members will
have a full understanding and working knowledge of said statute and
case law.

XIII USE OF FORCE REPORTING

1. It is the policy of the Southampton Village Police Department that the Use Of Force by
a Member of the Force will be accurately reported and subject to a thorough and objective
evaluation. This policy will cover all Use of Force, whether on duty, off duty, within the Village
boundaries or without.

2. Use of Force Classifications:

A. Class 1 - The accidental discharge of a firearm which results in no injuries or property
damage. The lawful and humane destruction of animals by use of a firearm.

B. Class 2 - The injurious (visible or internal) use of non-deadly force.

C. Class 3 - The injurious use of deadly force.

D. Class 4 - The fatal use of deadly force.

3. Reporting Method:

A. Class 1 and 2 Use of Force:

1. The officer using force will notify the shift supervisor to respond as soon as practical after
the occurrence. The scene of the occurrence should be secured if necessary to properly
investigate the incident. The shift supervisor shall respond to the scene and determine which
support services, if any are needed to respond to help document the occurrence.

2. The officer using force will provide a detailed description of the incident and the use of
force including any injuries to the subjects and/or officers involved, within the narrative of the
case report for the incident. The officer using force will also complete the appropriate section
of a Use of Force Report (see attachment 1). The case report and the Use of Force Report
will be submitted to the shift supervisor for review.

3. The shift supervisor will review the case report and the Use of Force Report for accuracy
and completeness and will then complete the appropriate section on the Use of Force Report.
The shift supervisor will obtain copies of any other documentation collected for the incident
such as related department reports, statements, photographs and diagrams and attach them
to the Use of Force Report. The Use of Force Report, the case report and all attachments
will then be forwarded up through the chain of command for final review and filing by the
Chief of Police.

4. Late Use of Force Report: If a person who is not actively resisting arrest or detainment by

a Member of the Force is restrained for a reasonable purpose and does not initially claim to be, or appear to be physically injured, but later claims such injury, a Class 2 Use of Force Report is to be completed as indicated in the procedures above.  The Use of Force Report will be completed by the appropriate shift supervisor within 72 hours of the notification to the department of the alleged injury.


B.  Class 3 and 4 Use of Force:

1.  The procedures outline above for the reporting of a Class 1 or 2 Use of Force will be followed along with the following additional procedures.

2.  The shift supervisor will upon arrival, ensure that the scene of the incident is secured and a crime scene log is commenced. The shift supervisor through the communications section will immediately notify the Commanding Officer of the detective division, the Duty Patrol Lieutenant, the Executive Officer, and the Chief of Police.

3.  Appropriate support services will be notified to respond and document the scene under the direction of the Commanding Officer of the detective division.

4.  Documentation of the nature and extent of injuries to officers, victims and defendants will be documented by the assigned member of the detective division in consultation with the attending physician or medical examiner.

5.  As indicated above the case report, the Use of Force Report and all associated materials will be compiled and forwarded up through the chain of command by the shift supervisor at the incident for review by the Chief of Police.


   Notwithstanding the provisions of this General Order, all personnel will strictly adhere to the provisions of all other Departmental Policies, Directives, Rules and Regulations.


              James J. Sherry
              Chief of Police

# EXHIBIT NN

## PERSONNEL FILE REPORT FOR:

| | |
|---|---|
| BRIAN B PLATT | SERIAL#:  232 |

### PERSONAL INFORMATION

```
+----------------------------------------------------------------------+
| Rank....: PO        Shield No.: 232    D.O.B.        :  ███████       |
| Sex.....: M         Race......: WHT    Blood Type    :                |
| ███████████████     Religion..: █████  Hispanic (Y/N): N              |
+----------------------------------------------------------------------+
+----------------------------------------------------------------------+
| Address ██████                         City     : ██████████          |
| State...: ██████                       Zip Code : ██████              |
| Phone...  ███████████                  Other Phone :                  |
+----------------------------------------------------------------------+
+----------------------------------------------------------------------+
| Drivers License:                    Class.............:              |
| Place of Birth :                    Former Occupation:               |
| Other Languages:                    Naturalized (Y/N): N             |
| Date Naturalizd:    /  /               Location........:             |
+----------------------------------------------------------------------+
+----------------------------------------------------------------------+
| Date Hired......: 09/25/1995 Squad : 1    Assignment : PAT    SID #:  |
| Date Terminated :    /  /    Reason:                      Ret. Reg:   |
+----------------------------------------------------------------------+
+----------------------------------------------------------------------+
| Military Branch..: ARMY          Serial No. .......:                  |
| Highest Rank.....: E4            Date of Discharge :    /  /          |
| Type of Discharge:                                                    |
+----------------------------------------------------------------------+
```

### IN-SERVICE TRAINING

```
+----------------------------------------------------------------------+
| Course Name....: FIREARMS                                            |
| Given By.......: SCPD                                                |
| Location.......: RANGE                                               |
|                                                                     |
| Remarks........: NUMBER OF HOURS: 8                                  |
|                  COPY ON FILE                                        |
|                  COURSE TYPE: FIREARMS QUAL                          |
|                                                                     |
+----------------------------------------------------------------------+
+----------------------------------------------------------------------+
| Course Name....: BASIC COURSE                                        |
| Given By.......: NYS POL INFO NETWORK                                |
| Location.......:                                                     |
|                                                                     |
| Remarks........: NUMBER OF HOURS: 4                                  |
|                  COPY ON FILE                                        |
|                  COURSE TYPE: CERTIFICATION                          |
|                                                                     |
+----------------------------------------------------------------------+
```

Printed 03/10/2005

```
                        PERSONNEL FILE REPORT FOR:

        +------------------------------------------------------------+
        |   BRIAN B PLATT                    SERIAL#:   232          |
        +------------------------------------------------------------+


|Course Name....: DRUG INDENTIFICATION                               |
|Given By.......: BECTON DICKINSON P S                               |
|Location.......: SOUTHAMPTON                                        |

|Remarks........: NUMBER OF HOURS: 8                                 |
|                 COPY ON FILE                                       |
|                 COURSE TYPE: CERTIFICATION                         |
|                                                                    |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+


|Course Name....: IDTU                                               |
|Given By.......: NYS DEPT OF HEALTH                                 |
|Location.......:                                                    |

|Remarks........: NUMBER OF HOURS: 40                                |
|                 COPY ON FILE                                       |
|                 COURSE TYPE: IDTU QUAL                             |
|                 EXPIRES 02/02/98                                   |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+


|Course Name....: RADAR                                              |
|Given By.......: SCPD                                               |
|Location.......: YAPHANK                                            |

|Remarks........: NUMBER OF HOURS: 24                                |
|                 COPY ON FILE                                       |
|                 COURSE TYPE: RADAR QUAL                            |
|                                                                    |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+


|Course Name....: FIREARMS                                           |
|Given By.......: SCPD                                               |
|Location.......: WESTHAMPTON                                        |

|Remarks........: NUMBER OF HOURS: 8                                 |
|                 COPY ON FILE                                       |
|                 COURSE TYPE: FIREARMS QUAL                         |
|                                                                    |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+


|Course Name....: FIREARMS                                           |
|Given By.......: BROICH                                             |
|Location.......: RANGE                                              |

|Remarks........: NUMBER OF HOURS: 8                                 |
|                 COPY ON FILE                                       |
|                 COURSE TYPE: FIREARMS QUAL                         |
|                                                                    |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+


|Course Name....: DWAI DRUGS DETECTION                               |
```

476

Case 2:04-cv-04052-SIL   Document 118-3   Filed 11/30/09   Page 109 of 164 PageID #: 1872

```
                    PERSONNEL FILE REPORT FOR:
        +-----------------------------------------------------+
        |   BRIAN B PLATT                  SERIAL#:   232      |
        +-----------------------------------------------------+
```

```
|Given By.......:                                              |
|Location.......: YORKTOWN PD                                  |
|                                                              |
|Remarks........: NUMBER OF HOURS: 4                           |
|                 COURSE TYPE: SEMINAR                         |
|                                                              |
|                                                              |
+--------------------------------------------------------------+
+--------------------------------------------------------------+

|Course Name....: VIDEO/ROLL CALL TRAINING                     |
|Given By.......: SVPD                                         |
|Location.......: SOUTHAMPTON                                  |
|                                                              |
|Remarks........: NUMBER OF HOURS: 7                           |
|                 COURSE TYPE: STAFF DEVELOPMENT               |
|                                                              |
|                                                              |
+--------------------------------------------------------------+
+--------------------------------------------------------------+

|Course Name....: VIDEO/ROLL CALL TRAINING                     |
|Given By.......: SVPD                                         |
|Location.......: SOUTHAMPTON                                  |
|                                                              |
|Remarks........: NUMBER OF HOURS: 21                          |
|                 COURSE TYPE: STAFF DEVELOPMENT               |
|                                                              |
|                                                              |
+--------------------------------------------------------------+
+--------------------------------------------------------------+

|Course Name....: EVOC                                         |
|Given By.......:                                              |
|Location.......: SCPD                                         |
|                                                              |
|Remarks........: NUMBER OF HOURS: 8                           |
|                 COPY ON FILE                                 |
|                 COURSE TYPE: EVOC                            |
|                                                              |
+--------------------------------------------------------------+
+--------------------------------------------------------------+

|Course Name....: VIDEO TRAINING                               |
|Given By.......: SVPD                                         |
|Location.......: SVPD                                         |
|                                                              |
|Remarks........: NUMBER OF HOURS: 21                          |
|                 COURSE TYPE: STAFF DEVELOPMENT               |
|                                                              |
|                                                              |
+--------------------------------------------------------------+


+--------------------------------------------------------------+

|Course Name....: FIREARMS / DPF                               |
|Given By.......: SVPD                                         |
|Location.......: SVPD                                         |
```

477

```
+------------------------------------------------------------------+
|                   PERSONNEL FILE REPORT FOR:                     |
+------------------------------------------------------------------+
|  BRIAN B PLATT                        SERIAL#:  232              |
+------------------------------------------------------------------+
```

```
|Remarks........: NUMBER OF HOURS: 4                               |
|                 COURSE TYPE: FIREARMS QUAL                       |
|                 DPF                                              |
|                                                                  |
+----------------------------------------------------------------- +
+------------------------------------------------------------------+

|Course Name....: RADAR                                            |
|Given By.......:                                                  |
|Location.......: SCPD                                             |

|Remarks........: NUMBER OF HOURS: 8                               |
|                 COURSE TYPE: RADAR RECERT                        |
|                                                                  |
+----------------------------------------------------------------- +
+------------------------------------------------------------------+

|Course Name....: INTOXILYZER                                      |
|Given By.......: SCPD                                             |
|Location.......: SCPD                                             |

|Remarks........: NUMBER OF HOURS: 8                               |
|                 COURSE TYPE: IDTU RECERT                         |
|                                                                  |
+----------------------------------------------------------------- +
+------------------------------------------------------------------+
|Date of Course : 03/29/2003          Date Completed : 03/29/2003 |
|Course Name....: ADVANCED TASER                                   |
|Given By.......: SVPD                                             |
|Location.......: SVPD                                             |
|Certification..: Y                   Re-Certify Date: 03/30/2004 |
|Remarks........: FOUR HOURS                                       |
+----------------------------------------------------------------- +
+------------------------------------------------------------------+
|Date of Course : 05/19/2000          Date Completed :   /  /     |
|Course Name....: FIREARMS / DPF                                   |
|Given By.......: SCPD                                             |
|Location.......: SCPD                                             |
|Certification..: Y                   Re-Certify Date:   /  /     |
|Remarks........: FIREARMS QUALIFICATIONS                          |
|                 4 HOURS                                          |
|                 DPF                                              |
+------------------------------------------------------------------+


+------------------------------------------------------------------+
|Date of Course : 03/29/2003          Date Completed : 03/29/2003 |
|Course Name....: SRT ROOM CLEARING                                |
|Given By.......: SVPD                                             |
|Location.......: SVPD                                             |
|Certification..: N                   Re-Certify Date:   /  /     |
|Remarks........: IN HOUSE SRT ROOM CLEARING EXERCISE  4 HOURS     |
|                 221:04/06/2003 23:30 -                           |
```

478

**PERSONNEL FILE REPORT FOR:**

| BRIAN B PLATT | SERIAL#: 232 |
|---|---|

```
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+
| Date of Course : 10/10/2001          Date Completed : 10/10/2001    |
| Course Name....: IDTU RECERT                                        |
| Given By.......: SCPD                                               |
| Location.......: SCPD                                               |
| Certification..: Y              Re-Certify Date: 01/01/2004         |
| Remarks........: INTOXILYZER RECERTIFICATION  8 HOURS               |
|                  221:04/06/2003 23:31 -                             |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+
| Date of Course : 06/25/2003          Date Completed :    /  /       |
| Course Name....: EVOC                                               |
| Given By.......: SCPD                                               |
| Location.......: SCPD                                               |
| Certification..: Y              Re-Certify Date: 06/25/2006         |
| Remarks........: EMERGENCY VEHICLE OPERATIONS COURSE                |
|                  8 HOURS                                            |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+
| Date of Course : 10/17/2002          Date Completed :    /  /       |
| Course Name....: FIREARMS / DPF                                     |
| Given By.......: SVPD                                               |
| Location.......: SVPD                                               |
| Certification..: Y              Re-Certify Date:    /  /            |
| Remarks........: FIREARMS QUALIFICATIONS                            |
|                  4 HOURS                                            |
|                  DPF                                                |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+
| Date of Course : 10/17/2002          Date Completed :    /  /       |
| Course Name....: FIREARMS / DPF                                     |
| Given By.......: SVPD                                               |
| Location.......: SVPD                                               |
| Certification..: Y              Re-Certify Date:    /  /            |
| Remarks........: FIREARMS QUALIFICATIONS                            |
|                  4 HOURS                                            |
|                  DPF                                                |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+
| Date of Course : 12/16/2001          Date Completed :    /  /       |
| Course Name....: FIREARMS / DPF                                     |
| Given By.......: SVPD                                               |
| Location.......: SVPD                                               |
| Certification..: Y              Re-Certify Date:    /  /            |
| Remarks........: FIREARMS QUALIFICATIONS                            |
|                  4 HOURS                                            |
|                  DPF                                                |
+--------------------------------------------------------------------+
+--------------------------------------------------------------------+
| Date of Course : 10/30/2000          Date Completed :    /  /       |
| Course Name....: FIREARMS / DPF                                     |
| Given By.......: SVPD                                               |
| Location.......: SVPD                                               |
| Certification..: Y              Re-Certify Date:    /  /            |
| Remarks........: FIREARMS QUALIFICATIONS                            |
```

PERSONNEL FILE REPORT FOR:

| BRIAN B PLATT | SERIAL#: 232 |

```
|              4 HOURS                                                  |
|              DPF                                                      |
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
|Date of Course : 03/19/2001       Date Completed : 03/30/2001         |
|Course Name....: FBI SWAT                                             |
|Given By.......: FBI                                                  |
|Location.......: FORT DIX, NJ                                         |
|Certification..: Y               Re-Certify Date:   /  /              |
|Remarks........: FBI BASIC SWAT COURSE                                |
|                 80 HOURS                                             |
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
|Date of Course : 04/17/2003       Date Completed : 04/18/2003         |
|Course Name....: FBI FIREARMS INSTRUCTOR                              |
|Given By.......: FBI                                                  |
|Location.......: SCPD                                                 |
|Certification..: Y               Re-Certify Date:   /  /              |
|Remarks........: FBI FIREARMS INSTRUCTOR SCHOOL                       |
|                 80 HOURS                                             |
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
|Date of Course : 01/24/2002       Date Completed :   /  /             |
|Course Name....: FIREARMS / DPF                                       |
|Given By.......: SVPD                                                 |
|Location.......: SVPD                                                 |
|Certification..: Y               Re-Certify Date:   /  /              |
|Remarks........: FIREARMS QUALIFICATIONS                              |
|                 4 HOURS                                              |
|                 DPF                                                  |
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
|Date of Course : 01/01/2000       Date Completed : 12/31/2000         |
|Course Name....: MONTHLY VIDEO TRAINING                               |
|Given By.......: SVPD                                                 |
|Location.......: SVPD                                                 |
|Certification..: N               Re-Certify Date:   /  /              |
|Remarks........: MONTHLY VIDEO TRAINING                               |
|                 1 HOUR                                               |
|                 12 HOURS PER YEAR                                    |
|                                                                      |
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+

+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
|Date of Course : 01/01/2001       Date Completed : 12/31/2001         |
|Course Name....: MONTHLY VIDEO TRAINING                               |
|Given By.......: SVPD                                                 |
|Location.......: SVPD                                                 |
|Certification..: N               Re-Certify Date:   /  /              |
|Remarks........: MONTHLY VIDEO TRAINING                               |
|                 1 HOUR                                               |
|                 12 HOURS PER YEAR                                    |
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
+- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -+
|Date of Course : 01/01/2002       Date Completed : 12/31/2002         |
```

Case 2:04-cv-04052-SIL   Document 118-3   Filed 11/30/09   Page 113 of 164 PageID #: 1876

PERSONNEL FILE REPORT FOR:

BRIAN B PLATT                              SERIAL#:  232

```
|Course Name....: MONTHLY VIDEO TRAINING                      |
|Given By.......: SVPD                                        |
|Location.......: SVPD                                        |
|Certification..: N                  Re-Certify Date:  /  /   |
|Remarks........: MONTHLY VIDEO TRAINING                      |
|                 1 HOUR                                      |
|                 12 HOURS PER YEAR                           |
+------------------------------------------------------------+
+------------------------------------------------------------+
|Date of Course : 10/05/2002         Date Completed : 10/07/2002|
|Course Name....: FIELD SOBRIETY                              |
|Given By.......: SCPD                                        |
|Location.......: EHVPD                                       |
|Certification..: Y                  Re-Certify Date:  /  /   |
|Remarks........: STANDARD FIELD SOBRIETY TESTING             |
|                 24 HOURS                                    |
+------------------------------------------------------------+
+------------------------------------------------------------+
|Date of Course : 07/24/2003         Date Completed :  /  /   |
|Course Name....: WATER RESCUE TECHNICIAN                     |
|Given By.......: LIFESAVING RESOURCES INC                    |
|Location.......: WHITE PLAINS PD                             |
|Certification..: Y                  Re-Certify Date:  /  /   |
|Remarks........: Water Rescue Technician course.             |
|                 9 hours                                     |
+------------------------------------------------------------+
+------------------------------------------------------------+
|Date of Course : 08/18/2003         Date Completed : 08/18/2003|
|Course Name....: RAVE/CLUB DRUGS                             |
|Given By.......: DCJS                                        |
|Location.......: SVPD                                        |
|Certification..: Y                  Re-Certify Date:  /  /   |
|Remarks........: RAVE AND CLUB DRUGS SEMINAR                 |
|                 8 HOURS                                     |
+------------------------------------------------------------+
+------------------------------------------------------------+
|Date of Course : 10/14/2003         Date Completed :  /  /   |
|Course Name....: INTOX RECERT                                |
|Given By.......: SCPD                                        |
|Location.......: SCPD                                        |
|Certification..: Y                  Re-Certify Date: 01/01/2006|
|Remarks........: Intoxilyzer 5000 Recert.                    |
|                 8 Hours                                     |
+------------------------------------------------------------+
+------------------------------------------------------------+
|Date of Course : 10/25/2003         Date Completed : 11/02/2003|
|Course Name....: INTENSIVE SPANISH                           |
|Given By.......: SCCC                                        |
|Location.......: SCCC                                        |
|Certification..: Y                  Re-Certify Date:  /  /   |
|Remarks........: Intensive Practical Spanish Language Course |
|                 32 Hours                                    |
+------------------------------------------------------------+
+------------------------------------------------------------+
|Date of Course : 01/25/2004         Date Completed : 01/25/2004|
|Course Name....: ICE RESCUE                                  |
```

PERSONNEL FILE REPORT FOR:

| | |
|---|---|
| BRIAN B PLATT | SERIAL#:  232 |

```
|Given By.......: DIVE RESCUE INTERNATIONAL
|Location.......: SOUTH COUNTRY AMBULANCE
|Certification..: Y                     Re-Certify Date:  / /
|Remarks........: Ice Rescue Course.  Class room and practical.
|                 8 Hours
+-----------------------------------------------------------+
+-----------------------------------------------------------+
|Date of Course : 02/20/2004          Date Completed :  / /
|Course Name....: TASER RECERT
|Given By.......: SVPD
|Location.......: SVPD
|Certification..: Y                     Re-Certify Date: 02/20/2005
|Remarks........: ADVANCED TASER RECERTIFICATION
|                 4 HOURS
+-----------------------------------------------------------+
+-----------------------------------------------------------+
|Date of Course : 04/22/2004          Date Completed :  / /
|Course Name....: GLOCK BASIC ARMORER
|Given By.......: GLOCK
|Location.......: STPD
|Certification..: Y                     Re-Certify Date:  / /
|Remarks........: Basic Glock Armorer's Course
|                 8 hours
|
+-----------------------------------------------------------+
+-----------------------------------------------------------+
|Date of Course : 10/27/2004          Date Completed :  / /
|Course Name....: FIREARMS / OC REFRESH
|Given By.......: SVPD
|Location.......: SVPD
|Certification..: Y                     Re-Certify Date:  / /
|Remarks........: Firearms Qualifications / OC Refresher
|                 4 Hours
|                 221:10/27/2004 19:31 -
|
+-----------------------------------------------------------+



+-----------------------------------------------------------+
|Date of Course : 11/02/1998          Date Completed : 11/27/1998
|Course Name....: EMT
|Given By.......: SCPD
|Location.......: SCPD
|Certification..: Y                     Re-Certify Date: 03/31/2001
|Remarks........: EMT Course
|                 160 Hours
|
+-----------------------------------------------------------+
+-----------------------------------------------------------+
|Date of Course : 01/28/2005          Date Completed : 01/28/2005
|Course Name....: ADVANCED TASER RECERT
|Given By.......: SVPD
|Location.......: SVPD
|Certification..: Y
|                                     Re-Certify Date: 01/28/2006
```

PERSONNEL FILE REPORT FOR:

| BRIAN B PLATT | SERIAL#: 232 |

```
|Remarks........: Advanced Taser Recertification Course.        |
|                 M26 and X26                                   |
|                 4 Hours                                       |
|                 221:02/01/2005 00:15 -                        |
|                                                               |
|                                                               |
|                                                               |
+---------------------------------------------------------------+
+---------------------------------------------------------------+
|Date of Course : 04/15/2005          Date Completed :   /  /   |
|Course Name....: CPR REFRESHER                                 |
|Given By.......: SVPD                                          |
|Location.......: SVPD                                          |
|Certification..: Y              Re-Certify Date: 04/15/2006    |
|Remarks........: CPR Refresher                                 |
|                 4 Hours                                       |
+---------------------------------------------------------------+
```

# EXHIBIT OO



**ADVANCED TASER® M26 User Application**
### PRINT LEGIBLY AND CLEARLY PLEASE!

Rank: __P.O.__          Name: __Brian Platt__

Dept. / Company: __Southampton Village Police Department__

Phone: __(631)-283-0056__     Fax: __-__

Email: __-__

Address: ███████████████████████████████

_____

Number of answers correct: __35__ out of 35. (80% minimum = 28 correct answers)

Instructor to initial that student has successfully completed the following functional tests:

__✓__   Demonstration of proper finger positions for aiming and firing.

__✓__   Reload ADVANCED TASER 5 times in 15 seconds (watch finger position, disqualify for fingers in front of blast doors).

__✓__   Officer can control unit adequately when commanded "Arm - Spark - Off" at random.

__✓__   Officer can remove and reinstall battery correctly.

__✓__   Draw ADVANCED TASER and hit target at 8 foot distance (time limit 5 seconds).

__✓__   Draw ADVANCED TASER (select the unit most likely to be used in the field) hit target at 8 feet, reload, hit 2nd target at 12 feet with laser sight (time limit 10 seconds).

I hereby Certify that __Brian Platt PO__ _____ has successfully completed a minimum of four hours training, has passed the written test with a score of 80% or better, has passed the above functional tests, has demonstrated sufficient proficiency in the function, and use of the ADVANCED TASER and is hereby certified as a trained user of this system.

Attested: __Robert Alonzo 867222__ Dated: __04-01-03__
                Certified Instructor

## Please list the serial numbers of the Air Cartridges fired:

__T03.021496__; __T03.021618__ ; __T03.021599__; _____ ; _____

## *Maintain a file copy of this certification in department records.*

# EXHIBIT NOT INCLUDED
## TRANSCRIPT OF TESTIMONY IS IN POSSESSION OF ALL PARTIES' COUNSELS

# EXHIBIT PP

# EXHIBIT QQ

1                              J. Griffin                          2 0

2          Q.          Can you give me an estimate?

3   Was it more than five times?

4          A.          From the time I was born

5   until the time --

6          Q.          Yes.

7          A.          -- I left?

8          Q.          Until the time you left

9   Layton Avenue.

10         A.          Until the time I moved out?

11         Q.          Yes.

12         A.          Yes.  I would say --

13         Q.          More than five times?

14         A.          Five or more, yeah.

15         Q.          Was it more than ten times?

16         A.          I don't recall.

17         Q.          Do you recall the specific

18  instances that occurred that caused for

19  the police to come to the house?

20         A.          Unless you have specific

21  instances that you'd like to talk about,

22  I can't bring anything up out of the blue

23  that I remember like one time or another

24  when they came, you know.  It's all kind

25  of jumbled in my mind, you know.

1          J. Griffin                    23

2    oftentimes we would ask for police

3    assistance in accessing services 'cause

4    as laypeople and particularly in the

5    beginning being inexperienced with

6    accessing services to health care, you

7    know, sometimes the police can get help

8    faster than or access services quicker

9    than laypeople.

10              Do you know what I'm saying?

11       Q.      Sure.

12       A.      Yes.  So that was my

13   experience, was using them as a liaison

14   to access services to help my brother and

15   I always remember them being, you know,

16   pretty helpful and compassionate.

17       Q.      Can you tell me about how

18   many times you remember the police coming

19   to the house when you were there to help

20   you with accessing service for David?

21       A.      I don't recall.  More than

22   twice.

23       Q.      Okay.

24       A.      Probably more than three

25   times.

# EXHIBIT NOT INCLUDED
## TRANSCRIPT OF TESTIMONY IS IN POSSESSION OF ALL PARTIES' COUNSELS

# EXHIBIT RR

# EXHIBIT SS

SOUTHAMPTON NY 11968

Entry/CC#: **SV-000803-04**   Date:**02/04/2004**   Time:**10:31**   Tour:   **2A** Desk Officer:**221**

Call Type..:**SERVICE CALL**          Priority..:**1**   How Received: **E911**

Caller.....: **GLOWCZENSKI, MARY J**
Bus. Name..:
Address....:**70 LAYTON AVENUE**
City/St/Zip:                                    Call Back #:**(631)283-1487**

Location of Assignment:**160 NORTH MAIN STREET, SOUTHAMPTON**
Cross Street.........:
Business Name........:**OUR LADY OF THE HAMPTONS**
Description..........:**10-37**
Post:          Officer Assigned:  **220**  -**LAMISON**          Unit: **142**

Dispatched:**Y** Call Taker:**117**    Disp Date:**02/04/2004**  Disp Time:**10:34**   Arv Time:**10:34**
Disposition...:**ACTIVE**                                        Comp Time:**16:49**
Add'l Officers:**212** ,**220** ,**233** ,**219** ,**215**      Disp to Comp: **6:15**
Add'l Units...:**131,142,144,148,151,157,159,7-18-16,**         Rcv'd to Comp: **6:18**

Vehicle Plate Number:                  State:      Make:
Vin:               Model:                    Color:          Year:

                        ASSOCIATED NUMBERS
Aid Case #    :SV-00019-04  Name: DAVID  GLOWCZENSKI  DOB:04/19/1968
Blotter #    :SV-000801-04  Call Type: SERVICE CALL
Blotter #    :SV-000806-04  Call Type: ADMINISTRATIVE

                        PERSONS INVOLVED
Name.........:GLOWCZENSKI, DAVID      DOB:04/19/1968
Address......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968
Phone Number..:(516)283-1487                    COPY
Sex.........:M     Race:WHT
Person Type...:SUBJECT PERSON

Name.........:GLOWCZENSKI, DAVID      DOB: / /
Address......:
City/State/Zip:,
Sex.........:     Race:

Name.........:GLOWCZENSKI, MARY J     DOB:03/12/1932
Address......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY
Phone Number..:(631)283-1487
Sex.........:     Race:
Person Type...:CALLER

                        NARRATIVE
Callback from mother reporting that son, David,
had fled again and is heading toward North Main
Street.
[Wed  02/04/2004  10:36 By 117]
She states that he was still hearing voices and
appears to be in an aggitated state.

[Wed  02/04/2004  10:36 By 11 ]
SGT 2 19 requests ambulance. Same dispatched.
[Wed  02/04/2004  10:42 By 117]
SGT 2 19 requests EMS to expedite (full cardiac
arrest). [Belated entry]
[Wed  02/04/2004  10:50 By 117]
Southampton Hopsital ER advised.
[Wed  02/04/2004  10:51 By 117]
Capt 212 ordered the 3-11 tour to report for duty.
[Wed  02/04/2004  11:21 By 117]
[Wed  02/04/2004  12:56 By 117]


Certified by _____

Approved by _____

COPY

Dated: _____

Dated: _____

Case 2:04-cv-04052-SIL Document 118-3 Filed 11/30/09 Page 126 of 164 PageID #: 1889

Entry/CC#: SV-000806-04   Date: 02/04/2004   Time: 13:03   Zone: 2A   Desk Officer #: 222

Call Type..: **ADMINISTRATIVE**          Priority..: **3**   How Received: **OFFICIAL CHANLS**

Caller.....: **LEWIS, LT HOWARD**
Bus. Name..: **SVPD**
Address....: **151 WINDMILL LA**
City/St/Zip: **SOUTHAMPTON, NY 11968-**                        Call Back #:

Location of Assignment: **151 WINDMILL LA, SOUTHAMPTON**
Cross Street.........:
Business Name........: **SVPD**
Description..........: **DEATH INVESTIGATION - CONFIDENTIAL**
Post :          Officer Assigned:  **215 -LEWIS**                   Unit: **LT**

Dispatched: **Y** Call Taker:  **117**  Disp Date: **02/04/2004**  Disp Time: **13:07**   Arv Time: **13:07**
Disposition...: **BLOTTER INFO ONLY**                                          Comp Time: **13:07**
Add'l Officers:                                                          Disp to Comp: **0:00**
Add'l Units...:                                                          Rcv'd to Comp: **0:04**

Vehicle Plate Number:              State:     Make:
Vin:                   Model:              Color:          Year:

ASSOCIATED NUMBERS
Blotter #     :SV-000801-04  Call Type: SERVICE CALL
Blotter #     :SV-000803-04  Call Type: SERVICE CALL

NARRATIVE
117:O2/04/2004 13:08 - LT215 requests CC for Confidential Death
Investigation

Certified by _____          Dated: _____

Approved by _____          Dated: _____

SOUTHAMPTON NY 11968

Entry/CC#: **SV-000801-04**   Date: **02/04/2004**   Time: **09:09**   Tour:   **2A** Desk Officer: **221**

Call Type..: **SERVICE CALL**          Priority..: **1**   How Received: **E911**

Caller.....: **GLOWCZENSKI, MARY J**
Bus. Name..:
Address....: **70 LAYTON AVE**
City/St/Zip:                                          Call Back #: **(631)283-1487**

Location of Assignment: **155 ELM ST, SOUTHAMPTON**
Cross Street..........:
Business Name.........:
Description..........: **PSYCHIATRIC EMERGENCY**
Post:           Officer Assigned:   **233   -WETTER**                Unit: **144**

Dispatched: **Y** Call Taker: **117**   Disp Date: **02/04/2004**  Disp Time: **09:14**    Arv Time: **09:14**
Disposition...: **10-38**                                               Comp Time: **09:34**
Add'l Officers: **232**        **,219**        **,**                    Disp to Comp:  **0:20**
Add'l Units...: **147,148,**                                            Rcv'd to Comp:  **0:25**

Vehicle Plate Number:                     State:      Make:
Vin:                       Model:                    Color:              Year:

ASSOCIATED NUMBERS
Blotter #    :SV-000803-04   Call Type: SERVICE CALL
Blotter #    :SV-000806-04   Call Type: ADMINISTRATIVE

PERSONS INVOLVED                    COPY
Name.........:GLOWCZENSKI, MARY J      DOB:03/12/1932
Address.......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968-'
Phone Number..:(631)283-1487
Sex...........:F     Race:
Person Type...:CALLER

Name.........:GLOWCZENSKI, DAVID       DOB:04/19/1968
Address.......:70 LAYTON AVENUE
City/State/Zip:SOUTHAMPTON, NY 11968
Phone Number..:(516)283-1487
Sex...........:M     Race:WHT
Person Type...:SUBJECT PERSON

NARRATIVE
117:02/04/2004 10:32 -
David Glowczenski fled residence and is having a
psychiatric emergency(hearing vioces). LKW plaid
quilted shirt with white as its base color.
Described as male white, 35 yoa with long dark
hair and beard.
[Wed  02/04/2004  09:20 By 117]
Callback from complainant advising that subject
has returned home. Patrols advised.
[Wed  02/04/2004  09:28 By 117]
PO233 advises that the subject is OK in
residenc and is seeking psychiatric help

Call Type..: **SERVICE CALL**          Priority..:**1**   How Received: **E911**

Caller.....: **GLOWCZENSKI, MARY J**

Bus. Name..:

Address....: **70 LAYTON AVE**

City/St/Zip:                                              Call Back #:**(631)283-1487**

Location of Assignment:**155 ELM ST, SOUTHAMPTON**

Cross Street..........:

Business Name.........:

Description...........:**PSYCHIATRIC EMERGENCY**

Post.......:   Officer Assigned:   **233**   **-WETTER**              Unit:**144**

| Dispatched:**Y** Call Taker:**117**   Disp Date:**02/04/2004**  Disp Time:**09:14** | Arv Time:**09:14** |
|---|---|
| Disposition..:**10-38** | Comp Time:**09:34** |
| Add'l Officers:**232**      ,**219**       , | Disp to Comp:  **0:20** |
| Add'l Units...:**147,148,** | Rcv'd to Comp:  **0:25** |

Vehicle Plate Number:                State:     Make:

Vin:                    Model:              Color:          Year:

ASSOCIATED NUMBERS

Blotter #    :SV-000803-04  Call Type: SERVICE CALL

Blotter #    :SV-000806-04  Call Type: ADMINISTRATIVE

PERSONS INVOLVED

COPY

Name..........:GLOWCZENSKI, MARY J     DOB:03/12/1932

Address.......:70 LAYTON AVENUE

City/State/Zip:SOUTHAMPTON, NY 11968-'

Phone Number..:(631)283-1487

Sex...........:F     Race:

Person Type...:CALLER

Name..........:GLOWCZENSKI, DAVID     DOB:04/19/1968

Address.......:70 LAYTON AVENUE

City/State/Zip:SOUTHAMPTON, NY 11968

Phone Number..:(516)283-1487

Sex...........:M    Race:WHT

Person Type...:SUBJECT PERSON

NARRATIVE

117:O2/04/2004 10:32 -

David Glowczenski fled residence and is having a
psychiatric emergency(hearing vioces). LKW plaid
quilted shirt with white as its base color.
Described as male white, 35 yoa with long dark
hair and beard.
[Wed  02/04/2004  09:20 By 117]
Callback from complainant advising that subject
has returned home. Patrols advised.
[Wed  02/04/2004  09:28 By 117]
PO233 advises that the subject is OK in
residenc and is seeking psychiatric help

117: 02/04/2004 10:32 - Callback from complainant stating that ? did fled the house again. He was still hearing voices and appears to be in an aggitated state. Officers dispatched again.

Certified by _____          Dated: _____

Approved by _____          Dated: _____



911. State your emergency

Yeah, okay my son David Glowczenski. Is this Southampton Village Police?

Yes it is.

He's got a psychotic episode and he took off heading past the little Polish church down towards the railroad station.

Okay.

And he is hearing voices and he's very psychotic and I don't know if he will harm himself.

Okay.

Because he's been up all night and for about two or three days he's been getting worse.

Okay.

We're going to take him to the doctor's today and he just took off.

Okay. What's your first name Mrs. Glowczenski?

Maryjane.

Okay. What's he wearing today?

Uh. He had a sort of plaid white background. He had a plaid shirt on, didn't he? Yeah.

Was he wearing a coat?

No. He had like one of those quilted shirts. Like

Okay.

Mostly white with red and blue plaid.

Okay. How old is he?

He's is uh 35.

Dark hair, light hair.

Long, long dark brown hair, you know hanging past his shoulders, long hair.

Okay.

And he has a little uh trimmed beard and a mustache.

Okay. Hold on one second.

1

Village Police. Can I help you?

Yes. I was looking for Wayne Petre

Hold on please.

I'm sorry LT it's me.

911.

Yeah.

Okay I still have another 911.  Hold on.

911 State your emergency.

Okay.  Hold on a minute

Headquarters 233

233

Respond to the area of Maple Street and Railroad Plaza regarding a 10-37 described as a male white 35 years old long dark brown hair.

Stand by one second.  I got to put you on hold again.

Yeah.

911 State your emergency.

Yes. We're at 155 Elm Street in Southampton.

Yes Ma'am.

And there's a man at our window and he won't go away.  He's got long hair.  My mother said he's kind of kooky.

All right. Number 155 Elm Street.

155 Elm Street Southampton  and our number's 283-1109.

We'll send them right over.

Thank you. Bye

233 Respond to 155 Elm Street regarding that 10-37 subject described by his mother at 10 7 as being highly psychotic at this time hearing voices and he's got some facial hair and he's wearing a quilted plaid shirt with a white color as its base.

2

10-4. Give me the address again.

155 Elm. And that's a different location. I have multiple 911 calls regarding this.

Okay. What is he doing? Is he out of the residence on foot?

He may be in the church. He's been going in the church because he has been hearing voices telling him to do things.

Allrighty. We'll send someone over to see you but we also have calls that he's on Elm Street.

Okay. Thank you

I'm on railroad plaza.

I'm on Elm.    The area

913   Use caution 232 233 the subject has been hearing voices for the last couple of days.

Is he back at the residence at 155?

10-4 That's a different residence from where he lives.


Southampton Village Police Dispatcher Lockhart

Good morning this is Metrodial 49  I have a commercial  in Southampton.

Okay.  Hold on.

Dispatcher Lockhart

I'm sorry LT I've got a 911 thing I'm going crazy.

That's okay.

Wayne hold on one second.

All right just give me a second.


All right.  I'm getting closer.  I've got somebody running around the neighborhood going crazy.

Oh wow.

Where is it?

32 Windmill Lane.

3

And what is that?

It's a commercial rotation and they're closed on Wednesdays.

Okay.

And I'm receiving the office motion signal.

Allrighty.

Okay.

And you said bellringer?

No, no  Metrodial 49.

Metrodial, I'm sorry.

Okay that's alright.

What's your ID?

117.

Can I have your call back?

516-681-8877.

All right and its office motion.

Thank you Bye Bye.

Southampton Village Police Dispatcher Lockhart

Uh yes, good morning.  Is James Moore there please?

Go ahead Sweetheart.

Never mind I found him. I couldn't find him.

All right.  Let me know if they need anything.

Ma'am, who are you looking for?

James Moore.

4

He's not here at the moment. Who am I speaking with?

Okay. This is Marcia from Perma. I'm calling on his workman comp injury. If he could just give me a call.

Okay. Hold on one second.

Okay.


233

Subject 10-19 from the residence. How many calls did you get on this?

I got three from two places.

10-4 Who was the other caller?

The other caller was the parent at 70 Layton Avenue reporting that he had fled in that state and while I was talking with her I got the call from Elm Street reporting the 1034 subject outside their window matching the description.

10-4.

Has anybody checked the residence yet?

Negative. I'll go over that way. I'll drive by. I'm in that area now. There's no sign of him but we should probably check the residence and make sure everyone's okay.

10-4

Hold on please.


233. Further information. Subjects 5'11" 200 lbs. Looking in his record and impact trying to get some more data for you.

Headquarters, we're familiar with same.


911 State your emergency.

Hello. This is Mrs. Glowczenski calling back. David came home.

Okay.

So, uh.

We're going to come by and make sure everything's okay. How's that?

Everything's okay, but maybe he'll panic when you come. I'm trying to get a hold of his doctor in Riverhead.

Okay.

His psychiatrist.

Allright.

And I gonna try to get him down there or take him to Greenport. His brother John is coming down. We may have to take him to Greenport.

Okay.

Okay. Thank you.

Thank you.

Bye Bye.


Headquarters 233. That's a call back from Mrs. Glowczenski, the subject has returned home.

10-4.


233

Myself, 232 and 219 will be going out to the residence.

9-30


Southampton Village Police Dispatcher Lockhart

Hi. I have a question about a speeding ticket I received. Would I call the court first?

Yes.

Do you happen to know

204 Hold on.

6

232 – What's the street number?

Number 70, 7 0

Go ahead.

204-2140.

Thank you.

233

233

Spoke with a family member, subject 10-4 at the residence.  They're attempting to contact his physician.

Temple.

We'll be 10-3 for now.

932

933

Headquarters 232

Go ahead.

A Metrodial reports alarm at rotation. No. 32 Windmill Lane.  Office motion.

233

232

236

939

231-232

7

Can I meet you behind 23 Main Street?

10-4


232 Headquarters

232

38 secure

9-41  What unit are you in?

147


911

Okay you got that?

Yep

All right. I'm just going to hang.  I'm going to put this back.

Okay.


Now try to put that first one on hold.

911

Now hit the whatayoucallit – the hang up button.

Now let it go.
911

911

Didn't go to hold.

No. Hold on.

Try hold and then hang up and pick it up.


Nothing else is flashing.

8

I'm talking on that one but I'm trying to hit.

Can you hear me here?

Now I can.

Now you can hear me here.

I'm want to put hold and then

Now try to put this one on hold.

Okay. Yeah but there's nothing flashing. I push it and I'm talking to you again.

Okay.

There's only one call flashing.  The thing is I put you on hold and hit global.

Nothing's there, just you.


232-233


233

Are you clear?

10-4


911  State your emergency

Hello.  It's Mrs. Glowczenski again.  David just took off again

Okay.

He's heading down Layton Avenue toward the

Towards where?

Where's he going John?  East

Okay

-- toward Elm Street

Is he in a better state of mind than he was before?

No. He's still fuddled and listening to the voices, they're telling him to go.

Okay.

He went. toward North Main Street he's going.

Allrighty. Headquarters 232-232

Apparently that subject from earlier is still agitated, got a 911 from his mother and he's heading westbound on Layton Avenue toward North Main Street in an agitated state.

233 10-4

233. I'm right on Railroad Plaza.

10-4 232

233

Go Ahead

Still at the barn?

Coming up to North Main

10-4

Go by North Main and Willow

233. He's right in front of me.

233 Headquarters – will be out with the subject

1034.

Southhampton Village Police Dispatcher Lockhart

Yes, can I speak with Officer Platt?

Hold on please.

To Ninth Avenue on North Main Street.

1035

Southampton Village Police Dispatcher Lockhart

So, Officer Brian Platt is not in, right?

He's working, but he's on the road.

He's on the road.  Because I've left a couple messages on his phone and I never gotten a call returned.

What's this regarding?

This is regarding a police report

Okay

that he filled out.  My car was one of the cars parked at the train station on January 8th and someone plowed into it.  He took the report down and got the name of the driver and everything.  Um…

What's the question?

The question is he had that there were three cars involved and the insurance company is telling me that one of the cars, the owner of the car is saying that their car was not involved in the accident.

It was one vehicle that did the striking and it struck three other vehicles.

Right

But one of the vehicles that was struck, according to Officer Platt, the insurance company said to me that the person that was identified as the fourth vehicle, denied that their car was even parked there on January 8th.

Okay.

So, I don't care about that.  But he wrote the report up and apparently the driver is claiming that he was not involved in an accident.  So, what does that mean?

It doesn't mean anything.

Oh, it doesn't.

11

Nope, but did you leave a message for Officer Platt again?

I left one yesterday.

All right. As far as I know, you know, its

So, when the officer wrote up the report

It was investigated at the scene, you.

Oh. So the officer was at the scene.

Sure.

And it said on the report that he actually, the guy left the scene of the accident.

That's right. And he was followed by a taxi.

Oh, he was followed by a taxi.

Yes.

So there is a witness.

Okay.

That's assuring if there was a witness.

Thank you very much. Bye Bye.


Southampton Village Police Dispatcher Lockhart

I'm trying to reach Sgt. Schucht.

Hold on please.

Thank you.

What's your name?

My name is Michael from GTSI

Okay, hold on please.

I know he's on the road, Mike.

He said he was in the Sgt's office.

No, he didn't get that far.

12

Oh, he didn't.

Mike from GTSI

If he's tied up, I'll call him back later.

Okay. Like
in a half hour. He was going to be here and they had a hot call and he had to go.

Not a problem. I'll give him a call later.

Appreciate it.

Bye Bye

Southampton Village Police Dispatcher Lockhart.

Yes, is um. This is Sandra Caruso. I'm with Via Communications. I'm not sure who there is in charge of the maintenance agreement on your phone system. Would you know who I should be speaking with? Is it Chief Sherry?

Is this a solicitation call or do you already have

You already have a Via phone system and this is regarding the maintenance agreement. We are offering an extension.

Oh okay. That narrows it down. Hold on.

219 Headquarters

Call us an ambulance down here for the subject please.

10-4

WTON496 SVPA. Signal 16 psychiatric emergency. Be in front of Our Lady of the Hamptons on North Main Street. Signal 10 is 21. Repeating for the SVPA signal 16 psychiatric emergency on North Main Street in front of Our Lady of the Hamptons. Signal 10 is 21   104 Dispatcher 117 Ambulance dispatched.

13

718 AD signal 2 to the scene

What school did you say?

10-4. Missy, as you roll up, make eye contact with the officers, make sure it's okay for you to roll up, okay?

718 30 to all responding SVPA units, negative lights and sirens until further notice, okay.

718 AD Signal 2

Excuse me

21

1044

16 469 will be signal 2 signal 4

Southampton Village Police Dispatcher Lockhart

How you doing, it's Brian Dubinsky at Riverhead DP.

How are you?

Is Tommy Cummings around?

Tommy is

Hold on.

19
7 18 80 718 Expedite, please

Expedite the ambulance.  Shit.

I'm sorry. He went up to County Headquarters to pick up some gas masks, but Billy is not in at all.

14

Okay.  Thank you very much

220- 620

220

Get me an ETA on the ambulance.

They are on the road.  They should be there in a minute.

1047

16      Bring out the                    right now.

Oh please.

219 to Headquarters

219

2600, they'll be bringing in a code.

10-4

Can I help you?

How you

Southampton Village Police.  Ambulance coming in with a full arrest.

Full arrest?

In about two minutes.

Okay, thanks. Male or female?

Male I believe.

Thanks.

ER notified.

SVP D Lockhart

Good morning.  My name is Slaka with Calvin Press and I'm trying to get in touch with your training officer.

Hold on please.

Thank you.


Southampton Village Police Dispatcher Lockhart

Kenny, this is Howard, get the chief on the phone for me, right now.

Okay.  Hold on.

496

Unit calling 496.


Hold on.

I want you two in the hospital within five minutes.


Radio

I have a gentlemen here who wants to know

Is that your son?

It's his brother.

The gentlemen from Elm Street he wants to know if we ever found him.

Yes.

Yes.

But I have no details.

Okay.

What's his last name?

What's your last name?

Glowczenski

Tell him to have a seat.

All right.  Thank you.


Southampton Village Police Dispatcher Lockhart

Kenny

Yes

I want the Chief in the radio room and I want him on the phone and I want it taken care of right now.

I went and got him physically.  Did he pick up the phone?

No.  He didn't.

I went and physically got him.  He wants the chief in the radio room.

Don't worry about it.

Duane's going to get him.

Okay.
I ran and made sure that he took his phone off do not disturb.

It's not you.

What's going on?

I went into his voice mail.  I don't want to talk on this line.

Because I have a family member in the lobby.

It's a problem.

You want him on an untaped line.

Yes

Hold on one second.

Southampton VP DL

Hello, may I please speak with Brian LoMonaco.

Hold on please.

Thank you.

1056

Ma'am he does not work here anymore.

Oh, I'm sorry can I speak with the person who handles your Nextel account then.  It's not a sales call.


911  State your emergency.


233 69

33

At the scene, respond to the house

11-02


Southampton Village Police Dispatcher Lockhart

Hi Kenny, it's Christine Dorcheck

Good.

I was wondering if you could connect me to Sue Hoover.

Sure.  What'd you name him?

Brayden.

Congratulations.  Hold on.

Headquarters 215  Call Radio

Stand By

If you could go direct to 225 that would be good.

Have her contact me on my Nextel.

10-4

Records Department, Laura speaking

Laura, Kenny.

Mr. Glowczenski in front of you.

Yes.

We don't have any information for him at the moment.

Wait, I have someone on the phone.

We don't have any information for him at the moment.

Okay.

I don't know what he wants to do. Does he want to go home and then come back?

He's got to catch a train.

They have no information for you at the moment.  If you want you can come back at a later time.
He said he'll come about in a half an hour.

That's fine.

7816406

16

16'd out of service until further notice

19

11-18  Is that for decon?

Kim. The captain's calling in the 4 to 12. I've got a hold of everyone but you. Could you respond in please ASAP.

Please hold. Your call is being transferred to an automated voice mail system.

This is Steve, leave me a message and I'll be sure to get back to you.

Steve, this is the police desk. Per the captain, he's calling in the 4 to 12. You're requested to come in ASAP. Hope you get the message. Thanks.

Southampton Village Police Dispatcher Loch

Hi Ken, it's Missy.

Hi Missy.

Do you have numbers for us?

Yes. Hold on please let me switch phones.

Okay. Your CC is 803

I got to be really careful with these times.

You were dispatched at 10:42.

Okay.

You were signaled to at 10:45  21 at 47   18 at 56 and I think you were at the hospital at 11 -- I didn't hear the 21 time but I stamped you at 11:01 which is not possible.

No.

But that's what stamped, so okay.

Well, the thing is, you guys can put down, you know, what your times were but you just didn't sign out on the tape.  21, so I'd give you two minutes later, three minutes later.

Okay. I'll go for 59.

There you go.

Okay and at 25 or 5 and whatever the black one.

Yeah, I still have you out because you said you guys are out of service.

Yes.

So I don't have your signal 5 yet.

Okay.

So you can put down what you like.

Okay. Do you have any times for 80?

Actually, I do.

I think that was pretty good.

Actually, I do. Hold on one second.

Okay, I have you signal 2 as the same time and actually your 21 at 10:44. That's the only real difference.

Okay.

that I have

okay

because I was in the process of stamping everything.

Yeah I'm sure

By the time I got around to it.

Okay.

That's because I have your -- So you know what the record says, is, I have you dispatched at 10:44, signal 2 and 21 at 10:44. So you know what I mean, that I was assigning you to the call at 80.

Okay. Could you repeat that?

Sure. I was assigning you to the call at 80 because normally I don't but being what was going on and you were the first unit there, I wanted to show that. So when you went 21, I assigned you to the call. That's why all those times say 10:44.

Okay.

21

So it's on the radio.

Okay

But it's on the radio, exactly the way it went, because we have tapes.

I'm at 10:42 and 10:44.

Okay that's great.


212

Take down this plate please New York Charles Golf Alpha 8460 and just hold it

10-4

Okay, you want a date of birth. Okay hold on.

Also, how you coming with the oncoming squad?

226, 230 and 243 were advised in person and they are responding at that speed and 241 the message was left on his cell phone.

10-4

First uniformed officer comes in I need for scene security at the scene

10-4 Captain.

Okay.

Okay.

Let me switch here.  Previous, I don't want to do that, hold on.  Okay. 4/19/68.

Which makes him, do you know

35.

Oh my God, I thought he was almost 40.

The spelling on the last name.

G L O W

The Polish always have that W in there

C Z E N S K Y

Okay Ken, thank you.

22

Bye.


Radio

Ken, Its Laura up front.

Yeah.

The gentleman came back.

Okay. Just have him take a seat.


Southampton Village Police Dispatcher Lockhart

Hi, this is Ingrid Schucht, Arthur Schucht, please.

He's tied up.

He just tried to call me, I'm trying to return his call.

Okay.

Tell him I'm back at my desk.

Okay.

Thank you.

You're welcome.

Bye.

# EXHIBIT TT

This is a 35-year-old white male schizophrenic who collapsed in police custody and brought by ambulance to emergency department where he was pronounced dead.

The decedent was diagnosed with schizophrenia and bipolar disease in 1988. He has had several admissions to Kings Park Hospital and ELIH from 1988 to 1995. The last admission was in 1995 at ELIH. He resides with his parents. One year ago while intoxicated he was involved in an altercation with his brother. He was placed on probation following this assault and placed in a group residential etoh rehabilitation home at 163 Cedar Road, Mastic Beach New York 11951. He completed this residential rehab on September 15, 2003 and returned to his home where he resides with his parents.

Dr Satish who maintains a psychiatric practice at Opticare, Riverhead NY #284-5500, is following the decedent. He last saw Dr Satish on January 19, 2004. At that time he was changed from Zyprexa to Abilify. He is also maintained on Hydroxyzine and Lexapro. 7-10 days ago the decedent read an article indicating some blood glucose side effects of one of the above medication. He apparently became fixated on this and stopped taking all his medication at that time.

He began with auditory hallucinations, insomnia and increasing agitation. This has been ongoing over the last several days. The parents, knowing his past behavior, worried he would soon elope as with previous such agitated states.

On Wednesday, 2/4/04, at 0909 hours the parents called 911 to report a violent and out of control person. Southampton Village Police responded to the home. There was no arrest at parent's request. The parents said they would transport the decedent to Stonybrook themselves. The police left. At 1025 hour the decedent left the residence and parents called 911 again. They told dispatcher the general direction the decedent has taken on foot. At 1031 hours police dispatcher gave call out to police units. Four minutes later, at 1035 hour, the first officer encountered the decent agitated and violent at the incident location, at North Main Street and Railroad Plaza and called for back up.

Attempts to talk to the decedent began with arriving units. The decedent became more violent and police attempted to control him with use of TAZER and Pepper Spray. At the time of this report it is unknown if the pepper spray had direct hit and how many times he was Tazered. The violent struggle lasted 3-4 minutes until the decedent could be brought prone to the ground. The placement of the cuffs is uncertain at this point. While on the ground he was still combative and kicking. A call was placed for flex cuffs to secure his legs. At that time, while still not cuffed by his legs, he became suddenly unresponsive and the ambulance was called. The ambulance was dispatched at 1042 hours and arrives at the scene at 1047hours.

On arrival the decedent was prone on ground. Ambulance report indicates he was rolled over and CPR started. Ambulance left the scene at 1056 enroute to Southampton Hospital.

He arrived at hospital at 1059 hours. On arrival decedent was in full arrest with CPR and Ambu-Bag mask in use. Coded in ED with ACLS protocol. He was cuffed on admission and cuffs were removed in the emergency room. It is unclear the position of the cuffs at this point. IV placed right arm and he was intubated. ECG was V.Fib and he was shocked. Pronounced dead at 1120 hours. Finger stick showed blood glucose of 444 and a rectal temperature of 100 degrees. He arrived fully dressed and Det Albergo removed the clothes from ED.

**PMHx:**
Remote dirt bike accident with resulting knee surgery at Southampton Hospital.
Ankle fracture with ORIF at age 32
1/15/04: Seen in Southampton ED c/o left chest pain. Had fallen off a bicycle 12/30/03 with left rib fractures (possible 4 and 5). Had been given Vicodin. Now that vicodin is finished he returned in pain. Found to have acute hyperglycemia, tachycardia, and dehydration. CT abd/pelvis was done to r/o internal injury. Drug screen at that time was negative.
h/o alcoholic hepatitis, etoh dependency

**Psych Hx:**
Hospitalized as noted at KPPH and ELIH

**Medication:**
Hydroxyzine Pam 25 mg i. HS last Rx 1/26/04
Lexapro 10mg  i. Per day
Abilify 15mg i. HS

**Social:**
+tobacco...1-2 ppd
Etoh abuse. Parents stated he has been sober x 1 year
Drug abuse in past, cocaine and marijuana. Parents believe he has not used in 6 years
Disability d/t mental illness, former house painter.
**Family:**
Parents alive and well, 4 siblings in good health.

Parents have no objection to autopsy.

Robert Golden

DAVID ~~GLOCASZENSKI~~     GLOWCZENSKI  DAVID
70 ~~LAWTON~~ Avenue       70 LAYTON Avenue
Southampton NY  11968
DOB  4/19/68
W/M                    M/S Single    0 children
Age 35

                           Pron. dead
NOK - PARENTS        Michael Ameros MD  1120 hr
        MARY
        SAL
# 283-1487 - HOME #
Det P. ALBERGO - Homicide
CC# 806-04  SHU PD
CC# 04-65136   SCPD
T/O 1031 -       PD at scene 1035 h
I/L  NORTH MAIN ST
     ↗ RR PLAZA
        Southampton NY.
Timeline:
0909 - 911
        Violent - out of control
        PD responded to residence
        Removed by family request
        SUHBD - by family
CALLED | 1025h. RE CALL
              Violent again      }
PD call | 1031h. TAKES OFF HOUSE  }
out
dispute



**Medical-Forensic Investigation Unit**
Suffolk County Medical Examiner's Office
Center for Forensic Science
North County Complex
Hauppauge, New York 11788-4311
Telephone (516) 853-5555
Fax (516) 853-5330

To: DET P. "the too" ALBERGO

Agency: S.C.P.D HOMICIDE SQUAD

From: Bob Golden        Date: FEB 5 2004

TOTAL PAGES INCLUDING COVER SHEET ___11___

**Message:**

ME#04- 0487

When I die I want to decompose in a barrel of beer and have it served in all the pubs in Dublin
J.P. Donleavy (b.1926)

# EXHIBIT UU

OPTIHEALTHCARE

## RIVERHEAD

David Glowcrenski
04/13/68    401804

| Last Name | First Name | Medical Record # |

### ENCOUNTER/PROGRESS NOTE

DATE

2/04/04     Spoke to Mrs. Glowczen[...]
David died this morning
from heart attack. He had also
stopped Abilify (after reading a
newspaper article) and was complaining
of voices. Ran out in the street
and was picked up by police.

was dead Admitted to hospital but
died.

Autopsy being                     W. N. Satish
done.                                          MD

2/18/04

Report being sent to the
Medical Examiner office

                                   W N. Satish
                                                MD

2/27/04   Per Dr Satish Sent Evals from 1997 + 2002 to
Medical Examiner along with a cover
Sheet from Dr Satish On fascia pinto Med Recpt
Sent to PO Box 6100 Hauppauge NY 11788

· · 333

## RIVERHEAD

David Glowczenski
04/19/68  101804

| Last Name | First Name | Medical Record # |
|-----------|------------|------------------|

## ENCOUNTER/PROGRESS NOTE

| DATE | |
|------|---|
| 1/25/04 | Psychiatry (30") |

David has actually felt better since restarting Abilify.

Sleep - However impaired
(2-3 hrs at night)

Appetite - good. Non lost
some undesirable wt

Had an accident recently (when
he fell off the bicycle and
broke 2 ribs)

On Abilify 15 mg OD
Lexapro 10 mg OD

add Vistaril 25 mg 1 or 2 HS

N. Satish, M.D.

Δ   Schizo Aff. Disorder

MAGERY SATISH, M.D.

cc. 332

**RIVERHEAD**

David Glowczenski
14/19/68   401804

| Last Name | First Name | Medical Record # |
|---|---|---|

### ENCOUNTER/PROGRESS NOTE

DATE

1/19/06     Acute visit (15"

David had a fall last week
and when seen as DISH his sugar
was high >250 mg

Suggested a change in meds
from Zyprexa to ~~Geodon~~
                          Abilify

Suggested Abilify 15mg po
                          THS

D/c Zyprexa

Schizoaff. Disorder (chronic)

Rgr: BG.                    W. N. Satish
Serum Glucose                    NA
      HbA1c              MAGESY SATISH, M.D

f/u 4 wk

CO 331

# EXHIBIT NOT INCLUDED
## TRANSCRIPT OF TESTIMONY IS IN POSSESSION OF ALL PARTIES' COUNSELS

# EXHIBIT VV

I, the undersigned, am an attorney, admitted to practice in the courts of New York, and

☐     certify that the annexed

**Attorney's**   has been compared by me with the original and found to be a true and complete copy thereof.
**Certification**

say that: I am the attorney of record, or of counsel with the attorney(s) of record, for

☐     know the contents thereof and the same are true to my knowledge, exce0pt those matters therein which are stated to be alleged on

**Attorney's**   information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon
**Verification**   knowledge, is based upon the following.
**by**
**Affirmation**

I affirm that the foregoing statements are true under penalties of perjury.

Dated:                            _____

                                            (Print signer's name below signature)

STATE OF NEW YORK, COUNTY OF                 ss:

              being sworn says: I am

☐     in the action herein; I have read the annexed

**Individual**   know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on
**Verifiication**   information and belief, and as to those matter I believe them to be true.

             the                               of

☐     a corporation, one of the parties to the action; I have read the annexed

**Corporate**   know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on
**Verification**   information and belief, and as to those matters I believe t hem to be true.
**by**
**Affirmation**

My belief, as those matters therein not stated upon knowledge, is based upon the following:

Sworn to before me on                    , 2009          _____

_____                                       (Print signer's name below signature)
Notary Public

STATE OF NEW YORK, COUNTY OF    WESTCHESTER   ss:

        Doreen C. Johns being sworn says: I am not a party to the action, am over 18 years of age and reside at Bronx, NY.

       On May 15, 2009 I served a true copy of the annexed **Exhibits Listing to Rule 56 Motion for Summary Judgment..**

**X**     by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal
**Service**   within the state of New York, addressed to the last-known address of the addressee(s) as indicated below:
**By Mail**

☐     by delivering the same personally to the person at the address indicated below:
**Personal**
**Service**

☐     by transmitting the same to the attorney by electronic means to the telephone number or other station or other limitation designated
**Service by**   by the attorney for that purpose. In doing so I received a signal from the equipment of the attorney indicating that the transmission
**Electronic**   was received, and mailed a copy of same to that attorney, in a sealed envelope, with postage prepaid thereon, in a post office or
**Means**   official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee(s)
            as indicated below:

☐     by depositing the same with an overnight delivery service in a wrapper properly addressed. Said delivery was made prior to the
**Overnight**   latest time designated by the overnight delivery. The address and delivery service are indicated below:
**Delivery**
**Service**

Frederick K. Brewington, Esq.         Christine Malafi, Esq., Suffolk County Attorney
Law Offices of Frederick K. Brewington   By: Richard T. Dunne, Esq., Assistant County Attorney
50 Clinton Street, Suite 501           H. Lee Dennison Building
Hempstead, New York 11550         100 Veterans Memorial Highway
                                    Hauppauge, NY 11788

Jeltje DeJong, Esq.           Marcy D. Sheinwold, Esq.           Lewis R. Silverman
Devitt, Spellman, Barrett, LLP    Lewis, Johs Avallone Aviles & Kaufman, LLP   Rutherford & Christie, LLP
50 Route 111                425 Broad Hollow Road, Suite 400     369 Lexington Avenue, 8th Floor
Smithtown, New York 11787     Melville, New York 11747            New York, New York 10017-5947

Sworn to before me on May 15, 2009.

_____                         _____
Notary Public                                        Doreen C. Johns
        GREGORY C. FREEMAN
    NOTARY PUBLIC OF THE STATE OF NEW YORK
        QUALIFIED IN WESTCHESTER COUNTY
             NO. 01FR6080775
     COMMISSION EXPIRES: OCTOBER 28, 2010

Index No.:
04 CV 4052(SJF)(WDW)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY JANE GLOWCZENSKI AND JEAN GRIFFIN, Individually and as Co-Administratrix of the
Estate of DAVID GLOWCZENSKI,

Plaintiffs,

-against-

VILLAGE OF SOUTHAMPTON, SOUTHAMPTON VILLAGE POLICE DEPARTMENT, POLICE
OFFICER Brian Platt, in his individual and official capacity, POLICE OFFICER Marla Donovan, in
Her individual and official capacity, POLICE OFFICER Chris Wetter, in his individual and official
Capacity, POLICE OFFICER Arthur Schucht, in his individual and official capacity, COUNTY OF
SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, LIEUTENANT Jack Firtzpatrick, in his
Individual and official capacity, LIEUTENANT Howard Lewis, in his individual and official capacity
and John Doe 1-10, who are known by name to the Defendants but as of yet are not fully known by
name to the Defendants but as of yet are not fully known to the Plaintiffs, OFFICE OF THE SUFFOLK
COUNTY MEDICAL EXAMINER, James C. Wilson, M.D., Deputy Medical Examiner, in his
individual and official capacity, SOUTHAMPTON VILLAGE VOLUNTEER AMBULANCE (a.k.a
SOUTHAMPTON E.M.T. UNIT), Melissa Croke, EMT, in her individual and official capacity, Keith
Philips, EMT, in his individual and official capacity, Tim Campbell, EMT, in his individual and official
Capacity, and James Moore Ambulance Driver, in his individual and official capacity, TASER
INTERNATIONAL,

Defendants.

---

## DEFENDANT TASER INTERNATIONAL INC.'S EXHIBITS LISTING
## TO RULE 56 MOTION FOR SUMMARY JUDGMENT

---

# JOSEPH A. MARIA, P.C.

**Attorney(s) for** Defendant TASER INTERNATIONAL

File No.: 25-0001(dj)

**301 OLD TARRYTOWN ROAD**
**WHITE PLAINS, NEW YORK 10601**
**(914) 684-0333**

---

Pursuant to 22 NYCRR 130-1.1. the undersigned, an attorney admitted to practice in the courts of New York
State, certified that, upon information and belief and reasonable inquiry, the contentions contained in the annexed
document are not frivolous.

Dated:......................        Signature..................................................................................
                                   Print Signer's Name.....................................................................

---

Service of a copy of the within                                            is hereby admitted.
Dated:

                        ....................................................................................
                        Attorney(s) for

---

PLEASE TAKE NOTICE

☐            that the within is a (certified) true copy of a

NOTICE OF     entered in the office of the clerk of the within name Court on                    , 2009
ENTRY

☐            that an Order of which the within is a true copy will be presented for settlement to the

NOTICE OF     Hon.                                    One of the judges of the within named Court,
SETTLEMENT    at                    20        , at              M.

Dated:

**JOSEPH A. MARIA, P.C.**

                        Attorney(s) for
To:

301 OLD TARRYTOWN ROAD
WHITE PLAINS, NEW YORK 10603
(914)   684-0333

Attorney(s) for