UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARY JANE GLOWCZENSKI, and JEAN GRIFFIN,
Individually and as the Co-Administratrix of the Estate
of DAVID GLOWCZENSKI,                            **MEMORANDUM &**
                               Plaintiff(s),                                   **ORDER**
                                                                                       CV04-4052(WDW)

        -against-

TASER INTERNATIONAL INC., VILLAGE OF SOUTHAMPTON,
SOUTHAMPTON VILLAGE POLICE DEPARTMENT,
POLICE OFFICER BRIAN PLATT in his individual and official capacity,
POLICE OFFICER MARLA DONOVAN, in her individual and official
capacity, POLICE OFFICER CHRIS WETTER, in his individual and
official capacity, POLICE OFFICER ARTHUR SCHUCHT, in his individual
and official capacity, COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPT., LIEUTENANT JACK FITZPATRICK, in his individual and
official capacity, LIEUTENANT HOWARD LEWIS, in his individual and
official capacity, JOHN DOES 1-10, who are known by name to the Defendants
but as of yet are not fully known to the Plaintiffs, OFFICE OF THE SUFFOLK
COUNTY MEDICAL EXAMINER, JAMES C. WILSON, M.D., Deputy Medical
Examiner, in his individual and official capacity, SOUTHAMPTON
VILLAGE VOLUNTEER AMBULANCE (a.k.a. SOUTHAMPTON
E.M.T. UNIT), MELISSA CROKE, EMT, in her individual and
official capacity, KEITH PHILLIPS, EMT, in his individual and official
capacity, TIM CAMPBELL, EMT, in his individual and official capacity, and
JAMES MOORE, Ambulance Driver, in his individual and official capacity,
                                              Defendant(s).
-------------------------------------------------------------------X

**APPEARANCES**:
Lewis Johs Avalone Aviles, LLP
Marcy D. Sheinwold, Esq.
Christina L. Geraci, Esq.
425 Broad Hollow Road - Suite 400
Melville, NY 11747
Attorneys for Southampton Village Ambulance and EMTs

Law Offices of Frederick K. Brewington
Frederick K. Brewington, Esq.
50 Clinton Street, Suite 501
Hempstead , NY 11550
Attorneys for Plaintiffs Mary Jane Glowczenski and Jean Griffin

**WALL, Magistrate Judge:**

Before the court is a motion for summary judgment by defendants Southampton Village Volunteer Ambulance, Inc., s/h/a Southampton Village Volunteer Ambulance, EMT Melissa Croke, EMT Tim Campbell (a/k/a Thomas A. Campbell), EMT Keith Phillips, and Ambulance Driver James Moore (the "SVVA defendants"). DE[107] & [132]. The motion is opposed by the plaintiffs. DE[137]. The parties to this action have consented to my jurisdiction for all purposes. For the reasons set forth herein, the motion is **GRANTED**.

## BACKGROUND

This lawsuit arises from the death of plaintiffs' decedent, David Glowczenski, on February 4, 2004. There are currently four motions for summary judgment before the court, by four sets of defendants, each focusing on different aspects of the facts underlying Mr. Glowczenski's death. Here, the salient facts involve the actions of the SVVA defendants when they responded to a call for emergency medical help for Mr. Glowczenski. The larger factual context, involving the police defendants and the use of a Taser to subdue Glowczenski, will be mentioned only as needed, if at all. The facts herein are taken primarily from the account set forth by the plaintiffs in their Memorandum of Law in Opposition to the SVVA motion and from documentary evidence in the motion papers. Where there is a difference of opinion as to a fact, such difference is noted.

David Glowczenski was a 35 year old man with a history of schizophrenia. At 10:42 a.m. on February 4, 2004, the defendant ambulance company received a call to go to the street outside of Our Lady of the Hamptons School in Southampton, NY, where the police had subdued Glowczenski. Defendant EMT Croke, who was not traveling in the ambulance, was the first to

2

arrive, at 10:44 a.m. Defendant EMT Campbell arrived at 10:47 a.m. The ambulance, driven by defendant Moore and carrying defendant EMT Phillips, also arrived at 10:47 a.m. Prior to the arrival of the EMT defendants and the ambulance, Glowczenski had been handcuffed with two or more sets of handcuffs, put on wrist to cuff to cuff to wrist, with his hands behind his back and his legs "zipped tied," and he was lying face down. The defendants say that he was turned to a supine position when EMT Croke arrived. The plaintiffs say that he was not turned over until the ambulance arrived. In any event, Mr. Glowczenski was "blue and unresponsive" and without a pulse or respiration when the SVVA defendants arrived. *See* Defs. Exs. D & J, 79:20-25. The Prehospital Care Report ("the Report"), prepared by a defendant EMT, indicates that CPR was started at 10:46 a.m. *See* Defs. Ex. D. The plaintiffs note that the Report states both that Glowczenski was in a prone position when EMT Croke first arrived, and, "conversely," that CPR had already started when she arrived. What the Report actually says is that "[patient] presented prone on lawn upon EMS 7-18-80 arrival. pd rolled to supine position." Def. Ex. D. Neither party explains in their motion papers what "EMS 7-18-80" is, but defendant Phillips, in his deposition testimony, stated that "7-18-80 is a Ford Explorer driven by Melissa Croke." Pls. Ex. F, 26:11-12.

   The Report indicates Glowczenski's "presenting problem" as cardiac arrest, and notes that Glowczenski had no pulse or respiration at either 10:45 a.m.or 10:55 a.m.. His level of consciousness was indicated as unresponsive, and his "GCS" was listed as a "3." "GCS" apparently refers to the Glascow Coma Scale, which is a neurological assessment of a person's level of consciousness through tests of eye, verbal and motor responses. Mr. Glowczenski's score of three is the lowest possible, indicating a state of deep coma. His blood pressure was

expressed as a circle with a line through it, indicating, the court assumes, that it was not taken. There is no indication of his body temperature, and no line on the Report for entry of that information, but his skin was described as cool and moist.

The plaintiffs allege that the Police Officers, and not the EMTs, administered CPR to Glowczenski, with one of the defendant officers initiating the CPR and continuing it until Glowczenski's arrival at the hospital. The Report states that CPR was begun by a police officer prior to the arrival of the EMTs, and the defendants state that the CPR was administered "with the assistance of" Southampton Village Police Officers. Mem. in Supp. at 4, Ex. D. The defendants further state that Glowczenski's airway was cleared with suction at the scene, and ventilation provided with a bag-valve mask device. *See* Defs. Ex. D.

An Automatic External Defibrillator ("AED") was also used in the resuscitation efforts. *See* Defs. Ex. E. The defendants say that it was attached at the scene. The plaintiffs maintain that the AED was not turned on until 10:57 a.m., while the Report notes that the ambulance left the scene at 10:56 a.m. The defibrillator report indicates that the power to it was turned on at 10:57:40, and the Report states that the ambulance left the scene at 10:56 a.m. The record does not indicate who determined the ambulance departure time, but the defibrillator time report appears to have been machine generated. The defibrillator report indicates that four attempts to analyze the heart rhythm were made, with the first three resulting in a "no shock advised" prompt. The fourth attempt resulted in a "motion detected" result. Defs. Ex. E. After each attempt, CPR continued, but Glowczenski's pulse did not return. The defibrillation ceased, according to the printout, at 11:08:12 a.m., after Glowczenski had been moved into the Emergency Room.

Glowczenski was transferred to the ambulance on a long board, with the handcuffs and zip ties still in place, and, according to the Report, the ambulance departed the scene at 10:56 a.m., with the police officer continuing to apply CPR. It arrived at the hospital at 10:59 a.m., at which time the right rear door jammed, and Glowczenski had to be removed through the side door, on the backboard. The plaintiffs say that this caused a delay of several minutes, while the defendants say that it took only one minute. The court notes that the references to deposition transcripts relied on by the plaintiffs to support their claim of a longer delay do not support that claim. The deponents - defendants Campbell, Philips and Donovan are either unsure of how long it took to get him out, or, in the case of Phillips, say that it took one minute. *See* Pls. Exs. E, 53:17-54:12; F, 26:22- 27:6; and J, 87:20-89:7. All are agreed that when he was removed from the ambulance, Glowczenski was still handcuffed and zip tied. The plaintiffs claim that emergency room personnel were "enraged" by that, but the only citation that suggests support for that allegation is Keith Phillips' deposition testimony that nurse Wilson used profanity toward the officers in regard to removing the handcuffs. Pls. Ex. F, 29:12-25. The deposition testimony does establish that the Emergency Room personnel wanted the restraints removed.

Despite efforts in the Emergency Room of Southampton Hospital, David Glowczenski was pronounced dead at 11:20 a.m. on February 4, 2004.

## DISCUSSION

**Summary Judgment Standards**

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In*

*re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). The court "is not to weigh the evidence, but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty America v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2007). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no

evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

**The Plaintiffs' Claims**

In the Amended Complaint, the plaintiffs assert claims against the SVVA defendants pursuant to Section 1983 and common law negligence and wrongful death. DE[9]. The Section 1983 claim was dismissed by District Judge Feuerstein prior to the parties' consent to my jurisdiction, and I will not address it here, despite the plaintiffs' argument directed to that point. New York Public Health Law Section 3013 provides that volunteer emergency medical technicians "may not be held liable for injuries or death related to their emergency medical care unless the injuries or death were caused by gross negligence," and the parties agree that a gross negligence standard applies to the claims against the SVVA defendants.

**Gross Negligence Standards**

Gross negligence has "often been equated with recklessness in the Second Circuit," and is "'the kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'" *See Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir. 2002)(quoting *Bryant v. Mafucci,* 932 F.2d 979, 985 (2d Cir. 1991)). Gross negligence is "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing . . . [or] the commission or omission of an act or duty owing by one person to a second party which discloses a failure to exercise slight diligence. In other words, the act or

7

omission must be of an aggravated character as distinguished from the failure to exercise ordinary care." *Greenberg v. Rubin,* 2001 WL 1722886, *4 (Sup. Ct. Kings County, Oct. 17, 2001)(internal quotation marks and citations omitted). The exercise of diligence by the alleged grossly negligent party "is judged by the diligence . . . which a person of common sense, not a specialist or expert in a particular field should exercise in such a field." *Id.* (citations omitted). And, the determination of whether that standard of care has been violated "generally remains a matter for the jury." *Id.*

Here, the plaintiffs argue that the SVVA defendants were grossly negligent and displayed deliberate indifference "by failing to abide by **any** of the New York protocols required to be followed by EMS and EMT services, including failure to render any basic medical care such as taking David Glowczenski's vital signs." DE[137], Pls. Mem. in Opp. at 10-11 (emphasis in original); *and see* Pls. Ex. P, the New York State Department of Health Statewide Basic Life Support Adult & Pediatric Treatment Protocols ("the BLS Protocols"). The plaintiffs list numerous other ways in which the SVAA allegedly deviated from protocols, some of which are so irrelevant to Glowczenski's condition at the time, or so secondary in importance to his primary medical needs, that the court need not address them.[1] The defendants say that the main complaints based on protocol failure are that the defendants (1) failed to provide medical care to Glowczenski; (2) failed to monitor Glowczenski's vital signs; (3) failed to promptly apply the defibrillator; (4) failed to note and treat Glowczenski's external injuries and (5) failed to remove

---

[1]The court is mystified as to why the plaintiffs would even mention some of these issues. For example, the allegation that the SVVA defendants failed to verbally communicate with the unconscious Glowczenski is odd, to say the least. The court can find nothing in the record that would support a claim that Mr. Glowczenski was capable of verbal communication when the SVVA defendants arrived on the scene.

his handcuffs and zip ties. DE[132-1] at 6. The court agrees that these are the primary complaints. Each of these failures, the plaintiffs argue, amounted to gross negligence. They did not.

The defendants, in support of their claim that there is no evidence whatsoever of gross negligence, have submitted the affidavit of Mark Silberman, M.D. Defs. Ex. F. Dr. Silberman is board certified in Internal Medicine, Emergency Medicine, Pulmonary Medicine and Critical Care, and is the medical director of four volunteer ambulance companies. *See* Defs. Ex. W. The plaintiffs have not challenged Dr. Silberman's credentials as an expert or the admissibility of his affidavit. Dr. Silberman opines that the SVVA defendants "at no time deviated from relevant standards of acceptable emergency medical care, and that their actions were not, in any way, a proximate cause of the decedent's injuries."[2] Defs. Ex. F. at ¶2. He further states that there is "no evidence of medical malpractice or negligence on their part or evidence of gross negligence in their provision of emergency medical services" to David Glowczenski. *Id.* In his affidavit, Dr. Silberman reviews the various steps that were taken by the EMTs to aid Mr. Glowczenski, and finds that there was a timely response, that the EMTs were properly trained, that appropriate CPR and AED were used, that the retention of the handcuffs while CPR was performed was proper, that the EMTs properly evaluated Glowczenski, that he was timely transported to the hospital, that he was properly transferred from the ambulance to the Emergency Room, and that, overall, the "SVVA and treating EMTs did everything that reasonably could have been done, to

---

[2]Expert witness statements embodying legal conclusions exceed the permissible scope of opinion testimony under the Federal Rules of Evidence, and to the extent that Dr. Silberman's affidavit contains such conclusions, I have not relied on them. *See Miller Marine Services, Inc. v. Travelers Property Casualty Insurance Co.,* 2006 WL 2672083, *1 (2d Cir. 2006).

the best of their ability, and within the scope of their training, to resuscitate" Glowczenski. The failure of resuscitative measures, he claims, "was due to the patient's underlying condition and was in no way related to the EMTs technique or timeliness." *Id.*

The defendants argue that because they have come forward with expert evidence, the plaintiffs must counter it with their own expert evidence, which they have failed to do. The plaintiffs argue that they are not required to submit expert affidavits in opposition to the motion, relying on the proposition that the "exercise of diligence by the alleged grossly negligent party is judged by the diligence . . . which a person of common sense, not a specialist or expert in a particular field, should exercise in such a field." DE[137], Pls. Mem. in Opp. at 17 (citing *Greenberg,* 2001 WL 1722886 at *4.) *Greenberg* also notes, however, that "[g]enerally, in cases involving medical malpractice, expert testimony is necessary because the standard for acceptable medical care is not within the experience of an ordinary juror," and the need for expert testimony "is not necessarily affected by the fact that liability in this case must be determined under a gross negligence standard of care." *Greenberg,* 2001 WL 1722886 at *5. With these principles in mind, the *Greenberg* court found that in the absence of expert proof with regard to the standard of care required by the defendant EMTs, a juror would not be able to judge whether the defendant EMT exercised "at least slight diligence." *Id.* In that case, the third party defendant EMT, who had moved for summary judgment, did not submit an expert affidavit, but the third party plaintiff did submit one in opposition to the motion, and the court found that the plaintiff's expert's description of departures from protocol was sufficient to raise material issues of fact.

Nonetheless, I have not found - and the defendants have not cited to - any cases identical to this one, where the summary judgment movant has come forward with expert testimony and

10

the plaintiff has not, and I decline to address the question of whether a plaintiff opposing a motion for summary judgment in a medical gross negligence context must always respond to expert testimony with expert testimony. Here, such a finding is not necessary, because, considering the defendants' evidence and the plaintiff's evidence, I find as a matter of law that no reasonable juror, that is, no person of common sense, could find that the SVVA defendants were grossly negligent or liable on a wrongful death theory, even resolving all ambiguities and drawing all reasonable inferences in the light most favorable to the plaintiffs.

First, the plaintiff's allegation that the defendants failed to render medical care or take vital signs is patently wrong. The Report clearly shows that Glowczenski received CPR and defibrillation, and that his airway was cleared with suction at the scene, and ventilation provided with a bag-valve mask device. Defs. Ex. D. Further, his vital signs - pulse rate and respiration - are documented. *Id.* Although his blood pressure and temperature (commonly listed as vital signs) apparently were not taken, given Mr. Glowczenski's condition - his lack of consciousness, respiration or pulse - the EMTs had far more urgent tasks to attend to. Glowczenski received more than basic medical care, and his significant vital signs and Glascow Coma Scale ratings were taken and recorded. In short, the SVVA defendants exercised far more than slight diligence. Part of the basis for the plaintiffs' allegation that the EMTs did not render medical care is based on the fact that CPR administered by the police, not by the EMTs, violates the BLS Protocols. The record does show that CPR was administered by a police officer, while the EMTs performed other tasks. That fact does not, as a matter of law, rise to the level of an act of gross negligence, and no rational juror could so find. As the defendants point out, the BLS Protocols note that:

> These protocols are not intended to be absolute and ultimate treatment doctrines, but rather standards which are flexible to accommodate the complexity of the problems in patient management presented to Emergency Medical Technicians (EMTs) and Advanced Emergency Medical Technicians (AEMTs) in the field. These protocols should be considered as a model or standard by which all patients should be treated. Since patients do not always fit into a "cook book" approach, these protocols are not a substitute for GOOD CLINICAL JUDGMENT, especially when a situation occurs which does not fit these standards.

Pls. Ex. P, p. 3 (all caps in original).

The SVVA defendants were faced with a man who was unconscious, with no pulse or respiration, and they and the police officers worked together to try to revive him. The plaintiffs have offered no evidence that allowing the police officer to administer CPR, even if it was a deviation from protocol, was conduct that "evinces a reckless disregard for the rights of [Mr. Glowczenski] or 'smacks' of intentional wrongdoing," the standard for gross negligence. *See Greenberg,* 2001 WL 1722886, at * 4 (citing *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd.,* 81 N.Y.2d 821, 823-24 (1993).

The plaintiffs' other allegations of protocol failures rising to the level of gross negligence also fall far short of that high standard. For example, the defibrillator was applied close to the time that the ambulance left the scene, but it is impossible to verify with certainty whether it was at the scene or in the ambulance. Even assuming that it was not applied until Glowczenski was in the ambulance, the defendants have offered expert testimony that the AED procedures were perfectly proper, and the plaintiff has offered no evidence, other than the argument that there were deviations from protocol, to raise an issue of fact as to whether the AED timing constituted gross negligence. The same is true of the failure to note Glosczenki's external injuries and the delay in opening the ambulance door, whether it was one minute or three.

12

The plaintiffs have come forward with no evidence that could lead to a finding of gross negligence or to a finding that the SVVA defendants proximately caused David Glowczenski's death, and the motion for summary judgment is granted.

Dated: Central Islip, New York
       May 13, 2010

**SO ORDERED:**

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge