UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARY JANE GLOWCZENSKI and JEAN GRIFFIN,
Individually and as the Co-Administrator of the Estate
of DAVID GLOWCZENSKI,

                                Plaintiff(s),

-against-

TASER INTERNATIONAL, INC., VILLAGE OF SOUTHAMPTON,
SOUTHAMPTON VILLAGE POLICE DEPARTMENT,
POLICE OFFICER BRIAN PLATT in his individual and official capacity,
POLICE OFFICER MARLA DONOVAN, in her individual and official
capacity, POLICE OFFICER CHRIS WETTER, in his individual and
official capacity, POLICE OFFICER ARTHUR SCHUCHT,  in his individual
and official capacity, COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPT., LIEUTENANT JACK FITZPATRICK, in his individual and
official capacity, LIEUTENANT HOWARD LEWIS, in his individual and
official capacity, JOHN DOE 1-10, who are known by name to the Defendants
but as of yet are not fully known to the Plaintiffs, OFFICE OF THE SUFFOLK
COUNTY MEDICAL EXAMINER, JAMES C. WILSON, M.D., Deputy Medical
Examiner, in his individual and official capacity,

                                Defendant(s).
------------------------------------------------------------------X

**MEMORANDUM &
ORDER**
CV04-4052 (WDW)

**APPEARANCES**:
John V. Tate, Esq.
Renzulli Law Firm
81 Main Street, Suite 508
White Plains, NY 10601
Attorney for Defendant TASER International, Inc.

Devitt Spellman Barrett, LLP
Jeltje deJong, Esq.
Joshua S. Shteierman, Esq.
50 Route 11
Smithtown, NY 11787
Attorneys for Village Defendants

Lewis R. Silverman, Esq.
Adam C. Guzik, Esq.
Rutherford & Christie, LLP
39 Lexington Avenue, 8th Floor
New York, NY 10017
Attorneys for Defendant Brian Platt

Law Offices of Frederick K. Brewington
Frederick K. Brewington, Esq.
50 Clinton Street, Suite 501
Hempstead , NY 11550
Attorneys for Plaintiffs Mary Jane Glowczenski and Jean Griffin


**WALL, Magistrate Judge:**

Before the court are renewed motions for summary judgment or partial summary

judgment by all defendants except the Suffolk County defendants,[1] and a motion by TASER

International to strike some of the plaintiffs' exhibits[2]. The plaintiffs oppose all motions. The

parties have consented to my jurisdiction for all purposes. The motions are decided as follows:

    1.) TASER's motion to strike exhibits, [DE]252, is GRANTED IN PART AND DENIED
IN PART;
    2.) TASER's motion for summary judgment on all claims, DE[249], is GRANTED;
    3.) Village defendants' motion for partial summary judgment, DE[238], is GRANTED
    4.) Brian Platt's motion for summary judgment DE[242], is GRANTED.

The factual events underlying the plaintiffs' claims and the lengthy procedural history of

this eight year old case have been set forth in numerous orders and are well known to the court

and the parties. References to those facts and that history will be made where necessary but

those facts will not be summarized here. I turn first to TASER's motion to strike those exhibits

submitted by the plaintiffs in opposition to the motions for summary judgment, on the ground

that they are hearsay or otherwise inadmissible.

---

[1]The Suffolk County defendants include the County of Suffolk, Suffolk County Police
Department, Lt. Jack Fitzpatrick, the Office of the Suffolk County Medical Examiner, and James
C. Wilson, M.D. They have not previously moved for summary judgment and have not joined in
any of the current motions.

[2]The Village defendants joined in the motion to strike, as stated in their Reply brief on
their summary judgment motion. *See* DE[240] at 1, 5-8.

# I. Motion to Strike Exhibits

In opposition to the TASER summary judgment motion, the plaintiffs have submitted 82 exhibits, marked as A through DDDD, consisting of thousands of pages, along with several declarations or affidavits and a few additional exhibits in relation to the motion to preclude. TASER seeks to strike some of them as inadmissible. Specifically, TASER asks that the court not consider the following:

> 1.) Unsworn expert reports and declarations - Exhibits A, B, X, AA, DD, FF, XX, III, QQQ, RRR and YYY:
> 2.) Scientific and medical articles lacking Federal Rule of Evidence 803(18) foundation - Exhibits L, M, R, S, RR, and NNN;
> 3.) Hearsay book excerpts of isolated case reports - Exhibits K and CCCC;
> 4.) Hearsay PowerPoint presentation on metabolic acidosis - Exhibits I and BBBB;
> 5.) Hearsay media and public interest reports - Exhibits N, T, U, V, W, JJJ, KKK, LLL, and AAAA.

In considering motions for summary judgment, a court can consider only admissible evidence. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997)("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *see also* Rule 56(e). The rules governing the admissibility of evidence on a summary judgment motion are the same as those governing admissibility at trial, and the district court has broad discretion in choosing whether to admit evidence. *Raskin*, 125 F.3d at 66. With these principles in mind, I turn to consideration of the various exhibits TASER seeks to bar.

## 1.) Unsworn Reports and Declarations and Reports from Other Litigations:

<u>Morse, Leiken, Mamet and Rosenbaum Reports</u>: As TASER notes, I earlier ruled that unsworn expert reports are inadmissible and may not be considered on summary judgment. DE[142] at 4-6. Nonetheless, in opposition to the renewed motions, the plaintiffs submitted two

unsworn and unsigned expert reports (Exhs. B (Morse Report), & X (Rosenbaum Report)), along

with several signed but unsworn reports or declarations (AA (Morse Declaration), DD (Thanning

Autopsy Report), FF (Meyers Report in separate litigation), XX (Mamet Report), III (Broich

Affidavit) & QQQ (Broich memo), RRR (Leiken Report) and YYY (Wetli Report in separate

litigation)).  I declined to consider several exhibits submitted on the previous summary judgment

motions because they were unsworn or otherwise unacceptable under 28 U.S.C. § 1746, noting

that "Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the

admissibility requirements of Fed. R. Civ. P. 56(e) and cannot be used [on] a summary judgment

motion without additional affidavit support.  DE[142] at 5.  Those exhibits were the report and

memo from plaintiffs' expert Michael Morse, and the reports of experts Dr. Leiken and Mr.

Mamet.[3] Incredibly, the plaintiffs submitted the same documents in the same form on these

renewed motions as Exhibits B, X, AA, XX and RRR.

     After being alerted to their error by TASER's moving papers, the plaintiffs have

attempted to rectify it by submitting declarations from experts Morse, Leiken, and Mamet.   The

plaintiffs offer no explanation for their failure to follow the ruling on the earlier motions, but rely

on caselaw that provides that an unsworn expert report can be "cured" by submitting an affidavit

or declaration verifying the report's contents.  DE[253] at 7 (citing cases).  Although they have

wasted the defendants' and the court's time by failing to adhere to my earlier rulings, I will

accept the declarations from Morse, Leiken and Mamet and will consider their reports if and

when they are relevant to issues raised on the renewed motions for summary judgment.

_____

[3]The plaintiffs also submitted an unsworn report from Dr. Rosenbaum, but I allowed that
in the earlier motions because TASER, the movant, had relied on it.  *See* DE[142] at 6.

The expert report of David S. Rosenbaum (Ex. X) is signed but unsworn, and the plaintiffs have not submitted a curative affidavit, because Dr. Rosenbaum has died. I did consider Dr. Rosenbaum's unsigned report on the earlier summary judgment motions, because TASER relied on it in its arguments. DE[142] at 6. Here, TASER has not relied on the report, relying only on Rosenbaum's expert deposition testimony, and seeks to strike the Rosenbaum report as unsworn. The plaintiffs appear to argue that the unsworn report is admissible because (1) TASER relied on it in conducting Rosenbaum's deposition and (2) because the report "survived the scrutiny of Daubert motions." The plaintiffs do not cite to any caselaw supporting those propositions. In light of the very unusual history regarding the Rosenbaum report, I decline to strike it, but I do not intend that ruling to suggest that the arguments advanced by the plaintiffs regarding the Rosenbaum report are good law that can be applied in other cases.

For these reasons, the expert reports of Morse, Leiken, Mamet and Rosenbaum will not be excluded.

Broich Documents: Christopher Broich was a Sergeant with the Southampton Police Department at the time of Mr. Glowczenski's death. The plaintiffs have submitted an affidavit from him (Ex. III) which is signed and notarized, but, according to TASER, unsworn in compliance with 28 U.S.C. §1746, and a memo from Broich to Ira Cure (Ex. QQQ), which TASER says is unsworn and "apparently in connection with unrelated litigation" concerning the termination of Broich's employment with the defendant Police Department. DE[252] at 3. The plaintiffs say that he is not an expert but a fact witness. DE[253] at 10. TASER argues that his fact evidence is inadmissible because he was not disclosed as a fact witness in Rule 26 Reports. The plaintiffs say he was disclosed because they included a memo from Broich as an exhibit in

their opposition to the summary judgment motions in 2009. *See* DE[253] at 10, referencing DE[221], ¶33, Ex. FF). TASER responds that the plaintiffs' "suggestion that TASER was aware of Broich generally because they included a memo from him (also inadmissible hearsay) in the mountain of exhibits filed in connection with a 2009 motion . . . is absurd." I agree that such inclusion was not sufficient. Broich's status as a potential fact witness should have been noticed pursuant to the requirements of Rule 26 (a)(i) and was not. *See, e.g., Lujan v. Cabana Mgmt., Inc.,* 284 F.R.D. 50, 72 (E.D.N.Y. 2012)(citing cases finding that incidental mentions of individuals do not satisfy requirements of Fed. R. 26 (a)(1)(A)(i)). "[T]o satisfy Rule 26, parties must make an unequivocal statement that they may rely upon an individual on a motion or at trial." *Id.* (citations omitted). I find that inclusion of a memo from Broich as one exhibit in a voluminous set of exhibits does not satisfy Rule 26 and the Broich documents must be excluded on that ground.

Further, many of the statements in his affidavit are not mere recitations of fact, but his opinions about other people and what they allegedly knew and did. Mr. Broich cannot know what all Village of Southampton Police officers were "aware" of (¶1), what officers other than himself were taught (¶2), or what the Police Department was "aware" of because some officers were members of a certain organization (¶3). And, his statement about defendant Donovan is total opinion and is hearsay. Both the Broich Affidavit and memo, Exhibits III and QQQ, will be excluded.

The Remaining Unsworn Reports: The plaintiffs have also submitted reports from the following individuals: Lone Thanning, a former expert in this litigation (Ex. DD) who is now an expert in another lawsuit pending in this court, *Hollman v. TASER*, CV 06-3588 (E.D.N.Y.);

Mark R. Myers (Ex. FF); and Charles V. Wetli (Ex. YYY). Both the Myers and Wetli reports were submitted in a separate litigation, *Heston v. City of Salinas,* CV 05-3658 (N.D. Cal.) Wetli is an expert for the Village defendants in this litigation, but the report purportedly[4] submitted by the plaintiffs is from the *Heston* lawsuit. These reports are unsigned and/or unsworn. They will all be excluded. Not only are they unsigned and unsworn, but the authors are undisclosed witnesses and I will not accept reports from unrelated litigation. Although Thanning was formerly a plaintiffs' witness in this action, she withdrew under unexplained circumstances. And, although Wetli is a co-defendant's expert in this case, his opinions in the *Heston* lawsuit are not admissible here. *See Hutchinson v. Groskin,* 927 F.2d 722, 724 (2d Cir. 1991)(district court erred in allowing party to present conclusions reached by other physicians not subject to cross examination by introducing letters, not reports[5]).

The plaintiffs argue that the three reports are admissible under Fed. R. Evid. 804(b), which allows the introduction of testimony from another proceeding by a now unavailable witness, that, *inter alia*, is now offered "against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross or redirect examination." Thus, the plaintiffs argue, the three reports are admissible because TASER either deposed or had the opportunity to depose these experts in this or other litigation. Rule 804 does not, however, provide a basis of admissibility for the reports. First, each of the

_____

[4]TASER reports that the Wetli exhibit, Ex. YYY, is described in Mr. Brewington's declaration at Wetli's report from *Heston,* but the exhibit actually received by TASER was excerpts from Patrick Smith's 12/15/06 deposition in Heston, a duplicate of Ex. J.

[5]Plaintiffs argue that *Hutchinson* is inapposite because it involved letters, not reports. I disagree. The gravamen of the ruling was the lack of disclosure and opportunity to cross examine, factors that also exist here.

Rule's elements must be satisfied, and, here, the plaintiffs do not show how or why the experts are unavailable, nor do they attempt to qualify former underlined testimony, but expert reports from other litigations. *See United States v. Amato,* 2006 WL 1788190, *1 (E.D.N.Y. June 26, 2006)(proponent of prior testimony under Rule 804 (b)(1) has burden to show witness unavailability; *United States v. Salerno,* 505 U.S. 317, 321 (1992)("Nothing in the language of Rule 804(b)(1) suggests that a court may admit former testimony absent satisfaction of each of the Rule's elements.")   Further, the reports are, as noted, unsworn and no attempt has to made to rehabilitate them.[6]  They will each be excluded.

The Waxman Affidavit: The plaintiffs have submitted the affidavit of Dr. Menashe Waxman (Ex. A) from separate litigation, *Bolander v. TASER,* CV 07-80789 (S.D. Fla.). TASER argues that it should be excluded because Waxman is not an expert in this case, and the plaintiffs "should not be allowed to 'borrow' his opinions" for use in this case long after discovery has closed, when there was no disclosure and no relevance has been shown.  DE[252] at 4-5.  Even accepting his affidavit as testimony, there is no showing that he is unavailable so as to invoke Rule 804, and he has never been disclosed pursuant to Rule 26.  His affidavit will be excluded.

**Medical and Scientific Articles:**

TASER argues that "published medical and scientific articles must also be excluded on relevance and hearsay grounds if they (1) were not relied upon by an expert in forming his opinions who can establish the foundation required by Fed. R. Evid. 803(18), (2) do not involve

---

[6]Nor would I have accepted eleventh hour affidavits or declarations from these three experts, as opposed to experts that have qualified in this case.

ECD drive-stuns, and/or (3) post-date Glowczenski's death on February 4, 2004 . . ." Those articles include Exhibits L, M, R, S, RR and NNN.

A published article is hearsay. The parties agree, as a threshold issue, that Rule of Evidence 803(18) is the hearsay exception that can admit such articles. That Rule permits the reading into evidence of statements in learned treatises, periodicals or pamphlets if "(A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice." Both elements must be established.

Here, the plaintiffs have not met the requirement of section (B). As TASER notes, the potential establishment of the articles at trial as reliable authorities does not make them admissible as evidence on the current motion for summary judgment. The plaintiffs argue that the Second Circuit has found that "because the authoritativeness inquiry is governed by a 'liberal standard, good sense would seem to compel recognizing some periodicals - provided there is a basis for doing so - as sufficiently esteemed to justify a presumption in favor of admitting the articles accepted for publication therein." DE[253] at 16 (quoting *Costantino v. Herzog,* 203 F.3d 164, 172 (2d Cir. 2000)). Here, however, there is no basis provided for recognizing the periodicals - Forensic Science International, the Journal of Forensic and Legal Medicine, the American Heart Journal, the Canadian Medical Association Journal, and the journals of The American Heart Association and the American College of Emergency Physicians - other than plaintiffs' counsel's unsupported assertions. The plaintiffs have failed to meet that burden. No expert has laid a proper foundation for the admission of the articles now. And, in the absence of

adequate indicia of the journals' reputations or the standards used by the journals for peer review and publication, there is no justification for my presuming in favor of admission. *See Costantino,* 203 F.3d at 172 ("We . . . agree . . . that the contents of a periodical cannot be automatically qualified 'wholesale' under Rule 803(18) merely by showing that the periodical itself is highly regarded.")

Plaintiffs argue in the alternative that the articles are admissible under the residual hearsay exception rule, Fed. R. Evid. 807, which can be relied on when the evidence at issue is not specifically covered by other hearsay exceptions. Here, the evidence - the articles- is specifically covered by another hearsay exception, Rule 803(18), and Rule 807 is inapplicable.

The plaintiffs also argue that the Zipes article, Ex. RR[7], is admissible as a business record of the American Heart Association under Rule 803(6). I can only agree with TASER that such an argument is ridiculous. The article is Dr. Zipes's opinion, published as part of a litigation case notes series, not a business record.

For these reasons, Exhibits L, M, R, S, RR and NNN will be excluded.

**Exhibit K, Book Excerpts:**

Exhibit K consists of excerpts from a book by Howard E. Miller, <u>TASER Electronic Service and Sudden In-custody Death</u>, published in 2008. Exhibit CCCC is an attorney prepared summary of details from the excerpts. TASER argues that the excerpts must be excluded as inadmissible hearsay "where no expert has established reliance or reliability under Rule 803(18)." DE[252] at 7. But the plaintiffs do not seek admission under that rule. They rely on

---

[7]TASER argues that Exhibit RR, described as an article by Dr. Douglas Zipes published in the American Heart Association's journal "Circulation" on May 22, 2012, is not an accurate copy of the article. Any inaccuracies are not, however, relevant to my analysis or rulings.

the book as evidence that TASER knew, or should or could have known, from reports in the public domain prior to Glowczenski's death in 2004, that TASER weapons may cause death in drive-stun mode. Plaintiffs describe the book as one that "compiles case information from the public domain regarding individuals that have died in close proximity to the use of a TASER weapon and the mode in which the TASER device was used." DE[253] at 13. They claim that the author is "neutral on the issue of the use of TASER weapons," and that the book is a survey in the public domain of cases of people who have died after exposure to a TASER weapon in stun-drive mode. *Id.*

Before applying Rule 807, we need to step back and apply the definition of hearsay to the excerpts. Rule 801 defines hearsay as a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." So, we must ask - what are the plaintiffs trying to prove the truth of through the excerpts? They specifically state that the excerpts are "offered to show that prior to Mr. Glowczenski's death, there were sudden-death cases in relation to TASER weapon use in stun-drive mode." DE[253] at 13. This, they say, constitutes evidence of notice to TASER.

With that in mind, I turn to Rule 807, which allows in hearsay statements if : "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." Further, the statement is admissible only if, before the trial or hearing, the adverse party has been given "reasonable notice

11

of the intent to offer the statement and its particulars . . . ." All elements must be satisfied.

Applying these requirements, TASER argues, first, that case reports, such as the ones in the excerpts, do not have "equivalent circumstantial guarantees of trustworthiness," as required by the Rule, and are in fact "inherently unreliable," citing to numerous cases. *See* DE[252] at 8-9 (citing *Glastetter v. Novartis Pharm. Corp.,* 252 F.3d 986, 989-90 (8th Cir. 2001) (disregarding texts grounded on "case reports and other anecdotal information" since case reports "make little attempt to screen out alternative causes," "frequently lack analysis," and "often omit relevant facts about the patient's condition"); *Hollander v. Sandoz Pharm. Corp.,* 289 F.3d 1193, 1211(10th Cir. 2002)(case report scientifically insufficient); *Rider v. Sandoz Pharm. Corp.,* 295 F.3d 1194, 1199 (11th Cir. 2002)(same); *Oliver v. City of Orlando,* 2011 WL 2174010, *5 (M.D. Fla. May 31, 2011)("Eleventh Circuit has stated that case studies are not reliable scientific literature."), *aff'd,* 456 F. App'x 815 (11th Cir. 2012); *Casey v. Ohio Medical Prods.,* 877 F. Supp. 1380, 1385 (N.D. Cal. 1995)("case reports are not reliable scientific evidence of causation" where they simply describe reported phenomena)). Given this list of citations by TASER, it is difficult to understand how the plaintiffs can say that "TASER does not suggest that the information contained in this survey and compilation is inaccurate." DE[253] at 13 n.1. That is precisely what TASER suggests.

I agree that case studies are not scientifically reliable. But the plaintiffs are not relying on the excerpts as evidence of a scientific fact, but of the fact that some people, prior to 2004, died suddenly after receiving TASER applications. Specifically, they offer the excerpts "to show that prior to Mr. Glowczenski's death, there were sudden-death cases in relation to TASER weapon use in stun-drive mode." DE[253] at 13. It is significant here to note that Glowczenski received

only drive-stun applications and not probe applications, and that there has been much discussion in this case of the differences in potential results from the two modes, enough discussion to establish that the potential effects of drive stun only, probe only, or drive stun and probe together are quite distinct and that, here, only drive stun-only evidence is relevant. All of the excerpts to which the plaintiffs have directed the court's attention do not, however, reflect cases where only drive-stun mode was used on the decedent. The plaintiffs provide a chart of four "Pre-2004 Case Reports" listed in the Miller book, and three of those case summaries clearly state that the TASER use "included probe application." DE[252] at 23[8]. Two of them involved both drive stun and probe applications (Canady and Baralla) and the third involved probes, with no mention of drive stun (Nowell). They thus do not, on their face, provide evidence of sudden death cases related to drive-stun applications only and those excerpts must be excluded. The fourth case, that of J. Lozoya, did involve a single drive-stun application in 2002, and is thus relevant for the limited purpose noted. Ex. K, p. 66.

Of course, that relevance alone does not mean the Lozoya excerpt is admissible, but I will allow it as evidence of the fact that J. Lozoya died suddenly[9] after receiving a single drive stun application in July 2002. The weight of that evidence as applied to the issue of notice to TASER will be discussed *infra* in the summary judgment analysis. Exhibit CCCC is excluded as largely irrelevant. As explained, only the fact of Lozoya's death after a drive-stun application is admissible.

---

[8]This chart is distinct from Ex. CCCC, a longer version of the same or similar information.

[9]I note that the document is inconclusive at to the cause of Lozoya's death, and provides no basis for a conclusion that the TASER drive-stun was a causative factor.

**PowerPoint Slides, Exhibit I:**

TASER next seeks to exclude Exhibit I, which consists of copies of the slides used in a PowerPoint presentation entitled "Metabolic Acidosis in the Public Safety Domain: Causes and Consequences, given by Mark Johnson in May 2002 as head of security at the Hennepin County Medical Center ("HCMC"). TASER argues that Johnson was never disclosed as a potential witness in this case, nor was the PowerPoint presentation identified as an exhibit prior to the close of discovery. Thus, it urges, the exhibit must be excluded pursuant to Rules 26(a) and 37. DE[252] at 9.

Rule 37(c)(1) provides that if a party fails to provide information or identify a witness pursuant to Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless that failure was substantially justified or harmless." The exclusion of undisclosed information is "automatic," TASER argues, and the non-disclosing party bears the burden of justifying the failure. DE[252] at 9-10 (citing *Atkins v. County of Orange,* 372 F. Supp. 2d 377, 395-96 (S.D.N.Y. 2005); *Middle Market Fin. Corp. v. D'Orazio,* 2002 WL 31108260, *4 (S.D.N.Y. Sept. 23, 2002)("The 'automatic sanction' for a violation of Rule 26(a) is preclusion."). This is especially true when disclosure comes for the first time in opposition to a motion for summary judgment. *See Morritt v. Stryker Corp.,* 2011 WL 3876960, *5 (E.D.N.Y. Sept. 1, 2011). In their opposition, the plaintiffs do not address this argument. I agree that the plaintiffs' failure to timely identify the witness and/or exhibit requires the preclusion of Exhibit I and related Exhibit BBBB, Mr. Johnson's resume, which has no relevance in the absence of the PowerPoint slides.

**Media and Public Interest Reports:**

Next, TASER argues that all news and public interest reports post-dating Glowczenski's

death on February 4, 2004 should be stricken as hearsay and as irrelevant. DE[252] at 11-13.

These exhibits, as described by TASER, include:

> • Exh. N, 6-18-09 Braidwood Commission report "RESTORING PUBLIC
> CONFIDENCE: Restricting the Use of Conducted Energy Weapons in British
> Columbia," unpublished, non-peer reviewed ECD public policy
> recommendations;
> • Exh. T, U, V, Amnesty International reports dated 2005-2009;
> • Exh. W, 12-1-08 California Lawyer article "*A Surprise Plaintiffs Win Highlights
> a Scientific Mystery: Why do Some People Die after Being Shocked Repeatedly
> with Stun Guns?*", relating to *Heston* jury verdict;
> • Exh. JJJ, 7-18-04 Arizona Republic news article "*Medical Examiners Connect
> Stun Gun to 5 Deaths*";
> • Exh. KKK, 11-26-04 New York Times news article "*Claims Over TASERs'
> Safety are Challenged*";
> • Exh. LLL, 7-18-04 New York Times news article "*As Police Use of TASERs
> Rises, Questions Over Safety Increase*"; and
> • Exh. AAAA, June 2011 ACLU report "*A force to be Reckoned With: TASER use
> and policies in 20 Arizona law enforcement agencies.*"

TASER addresses the Braidwood Report, Ex. N, separately from the other articles. *See*

*infra.* As to those other articles, TASER argues that newspaper and magazine articles are

hearsay evidence and thus inadmissible if being offered to prove the truth of the matter asserted.

The plaintiffs say that Exhibits T, U, V and AAAA are "formal reports from Amnesty

International and the American Civil Liberties Union on the issue of safety concerns regarding

the use of TASER weapons in civil society by law enforcement." DE[253] at 19. They are, the

plaintiffs assert, admissible under Rule 803(18) as learned treatises and are "relevant to the issue

of whether Defendant TASER took appropriate measures regarding testing and provided

adequate warnings in relation to industry standards, which aid the jury in determining Plaintiffs'

products liability claim." *Id.* I find that these articles are not learned treatises, periodicals or pamphlets and that the plaintiffs, who, contrary to their assertion, bear the burden of establishing admissibility, have offered no basis whatsoever for admission under Rule 803(18). Nor have they offered any support for their very tenuous claim that these articles are business reports for the purposes of Rule 803(6). Thus, the articles are not admissible under either of those rules.

The plaintiffs also argue that the Amnesty International and the American Civil Liberties Union reports are admissible under Rule 703, which provides that an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." In this regard, the plaintiffs argue that "these said reports can be introduced at trial by Plaintiffs' expert Dr. Morse," for the purpose noted earlier, of proving TASER's alleged failure to warn despite notice. DE[253] at 19. But the plaintiffs do not explain how Dr. Morse could legitimately introduce these reports at trial, inasmuch as Rule 703 clarifies that the expert generally may not disclose otherwise inadmissible evidence. *See United States v. Dukagjini*, 326 F.3d 45, 52, n.3 (2d Cir. 2003). Rule 703 controls the bases upon which an expert may rest testimony (*Gill v. Arab Bank, PLC,* 2012 WL 5177592, *2 (E.D.N.Y. Oct. 19, 2012)), but it does not allow for the revelation of inadmissible hearsay to the jury, nor does it allow such hearsay to be considered on this motion for summary judgment outside the context of Dr. Morse's report, even assuming he did rely on these reports in reaching his opinion. In that regard, the plaintiffs have pointed to no expert report, deposition testimony or affidavit that establishes Dr. Morse's reliance on the reports. In other words, although Dr. Morse may rely upon certain hearsay in rendering his opinion, he may not cite that hearsay to the jury (*In re Fosamax Prods. Liab. Litigation,* 2013 WL 76140, * 23 (S.D.N.Y. Jan. 7, 2013)) and Rule 703 does not a provide a

basis for the plaintiffs to rely on such hearsay.

The plaintiffs next argue that the Amnesty International and the American Civil Liberties Union reports, as well as the newspaper articles, Exhibits W, JJJ, KKK and LLL "are not offered for the truth of the matter asserted, but rather for the fact that Defendant TASER was on notice that evidence [of] the number of deaths in relation to TASER weapon use was increasing, as well as public concerns regarding the safety of said weapons." DE[253] at 20. These exhibits, the plaintiffs say, support the fact that TASER "was on notice of numerous allegations that TASER weapons were more harmful th[a]n Defendant's medical safety claims, and were suspected of causing death in some cases." *Id.* This raises the question of <u>when</u> TASER might have been on notice of this information. All of the reports and articles were published after Mr. Glowczenski died. Although some of them refer to deaths that occurred prior to 2004, it is entirely unclear how TASER would have been aware of those deaths prior to Glowczenski's death. Such notice could not have come from articles published long after and the plaintiffs have not explained how TASER would have been on notice or why such notice should be imputed to TASER. In that way, the articles, although they may refer to pre-2004 deaths, are not evidence of pre-2004 notice or awareness.

For these reasons - failure to qualify for admission under Rule 703 or 803 and lack of relevance - these articles will be excluded.

**Braidwood Commission Report:**

TASER describes the Braidwood Report as a "550-page unpublished, non-peer reviewed British Columbia report . . . prepared by Thomas Braidwood, a jurist, not a scientist or medical doctor, who was commissioned to make ECD policy recommendations following a highly

publicized in-custody death of a man at the Vancouver International Airport following the use of a TASER ECD." DE[252] at 12. TASER argues that it "contains multiple levels of inadmissible hearsay," provides no support for the plaintiffs' drive-stun acidosis theory, with its discussion limited only to the risks of acidosis regarding probe deployments, and specifically notes that in drive-stun applications, the "current does not penetrate deeply enough into the subject's body to cause neuromuscular incapacitation." *Id.* at 12-13 (quoting Ex. N at 234, 267 and 266). For these reasons, TASER argues, the Braidwood Report, issued more than five years after Glowczenski's death, is irrelevant and inadmissible.

The plaintiffs state that the Braidwood Report was "the result of the provincial government of British Columbia, Canada's appointment of the Honorable Thomas R. Braidwood to form the Braidwood Commission." DE[153] at 3-4. The Commission, which contemplated two lines of inquiry, was directed to investigate and report on both the use of "conducted energy weapons" generally and the use of a TASER in the death of Robert Dziekanski specifically. Thus, the plaintiffs argue, the Report is admissible under Federal Rule 803(8) as a public record. That rule allows admission of the record or statement of a public office if:

> (A) it set out:
>  (i) the office's activities;
>  (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>  (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

The Report is, on its face, the statement of a public office - the provincial government of British Columbia - that sets out factual findings from a legally authorized investigation. A cover

letter to the Report from Thomas Braidwood is addressed to the Attorney General of British Columbia and notes that he is submitting his "report and recommendations respecting the use of conducted energy weapons in British Columbia, as provided for in section 28 of the *Public Inquiry Act,* S.B.C. 2007, c.9." Ex. J. The public records exception is applicable to reports of "'foreign public offices and agencies that otherwise come within its terms.'" *In re Vitamin C Antitrust Litigation,* 2012 WL 4511308, *1 (E.D.N.Y. Oct. 1, 2012)(quoting *In re Parmalat Sec. Litig.,* 477 F. Supp. 2d 637, 640 (S.D.N.Y. 2007)(additional internal citations omitted)). A report that meets Rule 803(8) criteria is "presumptively admissible" and TASER has the burden of showing that the report is not sufficiently trustworthy to justify its admission. *Beechwood Restorative Care Center v. Leeds,* 856 F. Supp. 2d 580, 588 (W.D.N.Y. 2012)(citing *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 143 (2d Cir. 2000) and *Ariza v. City of New York,* 139 F.3d 132, 134 (2d Cir. 1998)). I find that the Report falls within the parameters of Rule 803(8) and that TASER has not refuted its overall trustworthiness, but there are other issues that arise regarding its admissibility.

"Even when a report falls within the public records exception to Rule 803(8), that does not automatically render all of its contents admissible. In particular, although an official's reliance on hearsay in preparing a report does not necessarily preclude the admission of the officials' conclusions contained in the report . . . that does not necessarily mean that the hearsay statements themselves can come into evidence." *Beechwood,* 856 F. Supp. 2d at 588-89 (citations omitted). While factual findings made by a public official's "own observations and knowledge may be admitted . . . statements made by third persons under no business duty to report may not." *Parsons v. Honeywell, Inc.,* 929 F.2d 901, 907 (2d Cir. 1991). And, the Rule

19

"does not circumvent the hearsay rule; any double hearsay contained in a report is admissible only if each level of hearsay qualifies independently for a hearsay exception." *Lewis v. Velez,* 149 F.R.D. 474, 487 (S.D.N.Y. 1993)(citations omitted). TASER argues that, in their Rule 56 arguments, the plaintiffs rely solely on hearsay statements contained in the Braidwood Report, statements made by third parties under no duty to report and that the report contains hearsay within hearsay. DE[254] at 10. Such hearsay within the Report is not admissible.

Further, irrelevant evidence is not admissible, and there is a question as to the relevance of the Report inasmuch as it primarily addresses only probe applications. The plaintiffs say that they should be able to use the Report to show that the use of TASERs can cause death (DE[5-6], but if that conclusion is based on probe-only applications, it is irrelevant to Mr. Glowczenski's death. The plaintiffs also say that they should be able to use it on cross-examination of TASER's experts, but do not explain why that is the case. They do say that their own expert, Dr. Morse, relied on the Braidwood Report as a basis for his opinion, but the Report is not mentioned in Dr. Morse's Expert Report (Ex. B[10]). TASER takes the position that none of the plaintiffs' experts relied on the report.

It is unclear at this point what specific parts of the Report the plaintiffs want to use, or what they want to prove with the Report, and there are potential problems with imbedded hearsay and relevance. However, the Report meets the general criteria of Rule 803(8) and TASER has not established that the Report is not trustworthy. Under these circumstances, I will allow

---

[10]That Report states that Dr. Morse reviewed "Numerous media reports and articles relating to the use and safety of the TASER," but does not specify the Braidwood Report as one of those reports or articles. Nor do Dr. Morse's Declaration (Ex. AA) nor the transcript of his deposition introduced as an exhibit by TASER (DE[249] Ex. I) mention the report.

relevant, non-hearsay parts of the Report in to the extent that such parts exist, and will, when the Report is referenced by the plaintiffs, determine whether the specific references meet those criteria.

**Summary:**

The following exhibits are excluded:

A Waxman Affidavit
I Power Point slides
K Miller excerpts, except for the limited use noted above
L Forensic Science International article
M Forensic and Legal Medicine article
N Braidwood Report, to the extent it contains third party hearsay and irrelevancies
R *American Heart Journal* article
S *Canadian Medical Association Journal* article
T, U and V Amnesty International Reports
W *California Lawyer* article
DD Thanning Report
FF Meyers Report
RR American Heart Association article
III Broich Affidavit
JJJ *Arizona Republic* article
KKK and LLL *New York Times* articles
NNN American Association of Emergency Physicians article
QQQ Broich Memo
YYY Wetli Report
AAAA ACLU Report
BBBB Johnson resume
CCCC Chart summary of excerpts

The following exhibits are not excluded:

B Morse Report
K The excerpt regarding J. Lozoya, to the extent is shows that he died suddenly after a single drive-stun application
N Braidwood Report, allowed to the extent discussed *supra*
X Rosenbaum Report
AA Morse Declaration
XX Mamet Report
RRR Leiken Report

These rulings are applicable to the other defendants' motions as well as to TASER's.

## II. Motions for Summary Judgment

**Summary Judgment Standards:**

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). At this stage, the burden of proof is on the moving party to show that there is no genuine issue of material fact. *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994)(citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In making this determination, the court must view all of the evidence "in the light most favorable" to the non-movant. *Breland-Starling v. Disney Pub. Worldwide*, 166 F. Supp. 2d 826, 829 (S.D.N.Y. 2001)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). In addition, the court must resolve all ambiguities and draw all inferences in favor of the party opposing the motion. *Ackerman v. National Financial Systems*, 81 F. Supp. 2d 434 (E.D.N.Y. 2000). Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56; *and see Liberty Lobby*, 477 U.S. at 250.

In opposing the motion, the nonmoving party may not rely upon "mere conclusory allegations, speculation, or conjecture." *Ackerman*, 81 F. Supp. 2d at 436 (citing *Kulak v. City of*

*New York*, 88 F.3d 63, 71 (2d Cir. 1996)).  However, "if there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable."  *Holt v. KMI Continental Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

**The TASER Motion:**

The operative pleadings in this action are the Amended Complaint filed on January 24, 2005 against all defendants except TASER (DE[9]), and the Complaint against TASER (DE[1]) filed in CV 04-4053, later consolidated with CV 04-4052, The claims against TASER are:

1.) First Count: a claim of negligence in the design, manufacture, etc. of the TASER model used on Glowczenski and a failure to warn regarding that device (DE[1] at ¶¶13-39;
2.) Second Count: a claim of Breach of Implied Warranty (*id.* at ¶¶41-47);
3.) Third Count: a claim of Breach of Express Warranty (*id.* at ¶¶49-55);
4.) Fourth Count: a claim of strict product liability (*id.* at ¶¶57-66);
5.) Fifth Count: a claim of wrongful death (*id.* at ¶¶68-71).

As against TASER, the plaintiff seek damages of $10,000,000, along with punitive damages in an

unspecified amount, attorneys fees, and costs.

TASER argues that <u>all</u> claims against it must be dismissed because, without proof that TASER or the TASER device caused Glowczenski's death, each cause of action against it must fail.  I agree.  Based on the withdrawal of Dr. Thanning, my exclusion of Dr. Manion's expert testimony, and the inability of plaintiffs' experts, Drs. Rosenbaum and Morse, to say with a reasonable degree of medical certainly that the ECD stun drives contributed to Glowczenski's death, there is no causal link between the use of the TASER and Glowczenski's death.  The medical examiner's report found no link, and the plaintiff's own expert cardiologist, David Rosenbaum (now deceased), testified that it is not generally accepted in the medical and scientific communities the electrical discharge from a TASER ECD can cause death and, in fact,

that the ECD applications to Glowczenski did not cause his death.  He said that "it was abundantly clear to me that, in this case, the M26 (ECD) did not stimulate Mr. Glowczenski's heart," and that "a stun mode application to the leg would not be expected to stimulate the heart under any circumstance."  Tait Decl., Ex. H at 30:8-9; 83:1-13.  Dr. Morse testified that he does "not hold the opinion to a reasonable degree of medical or scientific certainly that the [TASER ECD] caused or contributed to Mr. Glowczenski's death other than" potentially adding stress.  Tait Decl., Ex. I, Morse Dep. Tr., 131:13-17, 35;19-21, 102:25-103:6.  And his comments about stress are undercut by his admission that conclusions about the actual stress effects of the ECD on Glowczenski, or his stress levels, were out of the scope of his expertise.  *Id.* at 27:17-23, 102:18-24, 103:3-6, 105:15-18, 106:4-5.

The plaintiffs argue that there are numerous disputed issues of material fact (*see* DE[250] at 4) and that the cause of Glowczenski's death is a material fact in dispute that must be decided by a jury (*see id.* at 17-20).  There are indeed disputed issues of fact, but none of them is material to the claims against TASER without any indication of causation, and that issue cannot go to the jury without expert testimony.  As TASER demonstrates and the plaintiffs do not refute, in a case involving complex medical issues, expert testimony is necessary.  DE[249-1] at 8 (citing *Saari v. Merck & Co., Inc.,* 961 F. Supp. 387, 392-93 (N.D.N.Y. 1997)(citing cases) & *Fane v. Zimmer, Inc.,* 927 F.2d 124, 132 (2d Cir. 1991)(where causation in complicated medical case is one beyond sphere of ordinary jurors, expert testimony required).  Here, there are complex medical issues that a jury lacks the expertise to weigh in a reasonable manner that would be fair to both parties without expert testimony to guide them.

Further,  product liability plaintiffs must demonstrate both general and specific causation

as part of their prima facie case. General causation "bears on whether the type of injury at issue can be caused or exacerbated by the defendant's product," while specific causation addresses "whether, in the particular instance, the injury actually was caused or exacerbated by the defendant's product." *Ruggiero v. Warner-Lambert Co.,* 424 F.3d 249, 250, n.1 (2d Cir. 2005)(citing *Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 268 (2d Cir. 2002); *In re Rezulin Products Liab. Litig.,* 441 F. Supp. 2d 567, 575 (S.D.N.Y. 2006)). If there is no evidence that a product can cause the kind of harm claimed, there is no basis to accept evidence that the product did so in a specific case. *Id.* Here, the plaintiffs have not offered evidence that the TASER could have caused Glowcenski's death, either generally or specifically.

And, a simple chronological predicate of use of the product and subsequent injury is not enough from which to infer causation. *Gilks v. Olay Co., Inc.,* 30 F. Supp. 2d 438, 443 (S.D.N.Y. 1998). In that regard, the portion of Exhibit K that demonstrates that, like Glowczenski, J. Lozoya received a drive-stun application and then died, is irrelevant. And, accepting for the purposes of this motion that the drive-stun application caused Mr. Glowczenski pain, that is precisely what a drive-stun application is designed to do.

These principles apply specifically to a lack of evidence for the proposition that the TASER caused Glowcenski's <u>death</u>, and support the award of summary judgment on the wrongful death claim and the products liability claims to the extent they are based on his death. In their opposition papers, the plaintiffs also discuss burns to Mr. Glowcenski's body, suggesting that such burns were an independent injury. *See* DE[250] at 18. They say that the TASER was the sole cause of the burns and that a material issue of fact exists as to the severity of the burns. To pursue this claim, the plaintiffs would have to, first, present evidence of general causation,

that is, that drive-stun applications from the TASER used on Glowcenski can cause third degree

burns.  But the only evidence they advance for that proposition are Mr. Glowcenski's autopsy

photographs (Ex. C), the Thanning Report (Ex. DD) and the Meyers Report (Ex. FF).  *Id.*  The

Thanning and Myers Reports have been excluded, and the photographs do not provide general

causation evidence.  Indeed, they do not even provide sufficient specific causation evidence -

while they do show marks, allegedly burns, on the body, there is no way to determine from the

photos how severe those burns were, and no juror could reasonably do so.  The plaintiffs'

argument that TASER has "failed to provide evidence regarding the extensiveness of burns to

individuals who were exposed to TASER M6 weapons for long exposures . . ." (DE[250] at 18)

is futile - the plaintiffs must, to make out their prima facie case that the TASER can cause such

burns, present evidence to support that claim, and TASER has no obligation to refute the claim

until such evidence has been presented.  It has not been. Thus, TASER is entitled to summary

judgment on the theory of burns and their attendant pain as the harm caused by the TASER as

well as on the theory of death as the harm done by the TASER.

Although the lack of evidence that the TASER caused harm to Glowcenski disposes of all

the claims, I will briefly comment on the products liability claims for the sake of completeness.

The plaintiffs here allege strict liability, breach of warranty, and negligence theories.  All three

theories are "subject to the same causation analysis: Under New York law, whether the action is

pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to

show that a defect in the product was a substantial factor in causing the injury."  *Donovan v.*

*Centerpulse Spine Tech, Inc.,* 416 Fed. App'x 104, 106 (2d Cir. 2011)(citing *Tardella v. RJR*

*Nabisco, Inc.,* 178 A.D.2d 737, 576 N.Y.S. 2d 965, 966 (3d Dep't 1991)(internal quotation

marks omitted)).  As noted, the plaintiffs have not met that burden.

The plaintiffs also assert a failure to warn claim.  Under New York law, "a manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." *Monell v. Scooter Store, Ltd.,* 2012 WL 4062812, *12 (N.D.N.Y. Sept. 14, 2012)(citing *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 237 (1998)(additional citations omitted)).  The plaintiff must demonstrate that (1) a breach of that duty and (2) that the failure to adequately warn of the dangers of the product was a proximate cause of his injuries.  *Id.* (citations omitted).  Under New York law, "failure to warn claims are identical under strict liability and negligence theories of recovery." *DiBartolo v. Abbott Labs.,* 2012 WL 6681704, *6 (S.D.N.Y. Dec. 21, 2012).  (citing *Lewis v. Abbott Labs.,* 2009 WL 2231701, *4 (S.D.N.Y. July 24, 2009)(additional citations omitted); *Arneauld v. Pentair, Inc.,* 2012 WL 5932956, *17 (E.D.N.Y. Nov. 26, 2012)(citations omitted)).  Thus, to make out a prima facie case, in negligence or strict liability, the plaintiff must show that: (1) the manufacturer owed plaintiff a duty to exercise reasonable care, that is, it knew or should have known of latent dangers resulting from intended or reasonably foreseeable unintended uses of the product; (2) the product was used in a reasonably foreseeable manner; and (3) the manufacturer's failure to warn was the proximate cause of the plaintiff's injury.  *See Scooter Store,* 2012 WL 4062812 at *12 (citations omitted).

The plaintiffs argue that TASER knew or should have known, prior to Glowcenski's death, that there were defects or latent dangers in the TASER used on him.  They specifically argue that TASER knew or should have known that TASER applications could cause or contribute to metabolic acidosis or, at the least, that further testing on that issue was needed.  DE[250] at 4, 12-16. Several of the exhibits that the plaintiffs rely on for this claim have been

excluded, and the rest do not indicate a material issue of fact that would require the denial of summary judgment. The plaintiffs have not provided evidence that metabolic acidosis can be caused by drive stun applications, nor that it caused or contributed to Glowcenski's death.

The court need not address the remaining issues arising from the products liability claims, because, when all is said and done, there is no admissible evidence that the TASER drive-stun applications received by Glowcenski caused or contributed to his death or any other harm to be determined by a jury, for all the reasons set forth *supra*. I find that there are no issues of material fact barring TASER from judgment as a matter of law on all the claims against it.

**The Village Defendants' Motion:**

The plaintiffs' claims set forth in the Amended Complaint, as against the defendants other than TASER, are:

1.) Second Count[11]: a section 1983 claim based on excessive force against the defendant police officers (Platt, Donovan, Wetter, Schucht and Lewis), alleging that the decedent, Mr. Glowczenski, was subjected to "vicious beating, use of chemical agent, . . . and other wrongful acts . . . " Am. Compl., DE[9] at ¶¶ 75-79;

2.) Third Count: a Monell claim against the Village and/or the County, alleging a pattern or practice of allowing unreasonable force and a failure to investigate claims of excessive force (*id.* at ¶¶80-86), along with a claim that the Village and the County Police Department failed to train, properly hire and supervise their police officers regarding the use of force against mentally ill persons (*id.* at ¶¶88-92);

3.) Fourth Count: a section 1983 claim based on violations of the Fourteenth Amendment by the defendant police officers, Village and Police Department (*id.* at ¶¶93-97), including a claim that Lt. Lewis participated in a coverup related to Glowczenski's death (*id.* at 105);[12]

---

[11]In an earlier order on the Village and Platt motions for summary judgment, I dismissed the First Count, a false arrest claim, and ruled that no negligence claims based on intentional conduct or false arrest would go forward. DE[140].

[12]These claims and others against the EMT defendants were earlier dismissed or withdrawn by the plaintiffs. In this Fourth Count of the Amended Complaint, the plaintiffs further claim that the County defendants have engaged in a cover-up regarding Glowczenski's death, in violation of the Fourteenth Amendment. No rulings on claims specific to the County

4.) Second Fourth Count[13]: a negligence claim, the gravamen of which seems to be a claim of wrongful death against the defendant police officers, but which also alleges other negligent acts (*id.* at ¶¶107-110);

5.) Fifth Count: a negligence claim against all defendants that repeats allegations set forth in other counts, but apparently based on principles of negligence and not other causes of action (*id.* at ¶¶119-120);

6.) Sixth Count: a wrongful death claim against all defendants (*id.* at ¶¶122-124); and

7.) Seventh Count: a claim of battery against the Village defendants (*id.* at ¶¶126-132).

As against these defendants, the plaintiffs seek $10,000,000 on each count, punitive damages in the amount of $500,000,000, attorneys fees and costs.

<u>Wrongful Death and Lost Earnings Claims</u>: The Village defendants argue, first, that the wrongful death and attendant damages claims must be dismissed because the plaintiffs have not presented evidence by way of expert testimony of any causal nexus between the Village defendants' actions and Glowczenski's death. DE[238] at 14-17. Wrongful death claimants must, of course, establish that the defendant's wrongful act, neglect, or default caused the decedent's death. *Eberts v. Makarczuk,* 52 A.D.3d 772, 772-73 (2d Dep't 2008). And, where the nexus between the death and the alleged cause would not be obvious to the lay juror, expert evidence is often required to establish the causal connection between the challenged actions and the physical or mental injury. *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 46 (2d Cir. 2004)(citing *Salem v. United States Lines Co.,* 370 U.S. 31, 35 (1962)(additional citations and internal punctuation omitted). The defendants argue that divergent expert opinions on the plaintiffs' suggested causes of death,[14] the autopsy reports, and the Medical Examiner's opinion

_____

Defendants have issued.

[13]The Amended Complaint contains two counts designated as the "Fourth Count."

[14]The defendants list numerous articles regarding excited delirium, positional asphyxia and prone positioning. *See* DE[238] at 16. I take these citations as evidence that divergent

29

(that Glowczenski's death was caused by acute exhaustive mania due to schizophrenia) reflect the fact that the cause of Glowczenski's death is far from clear, and that expert testimony is necessary to establish causation. DE[238] at 16. The plaintiffs, the defendants argue, have not met their burden of coming forward with evidence that any act or omission on their part was the cause of Glowczenski's death and that they are thus entitled to summary judgment on the wrongful death claim.

The plaintiffs argue that there are issues of material fact as to the cause of Glowczenski's death. They argue that numerous details of Dr. Wilson's report and his ultimate determination that the cause was exhaustive mania render his report unreliable at best and the result of improper collusion with TASER at worst. DE[239] at 8-10. They quote the now-deceased expert Dr. David Rosenbaum as opining that there were "several plausible causes of death," among them "asphyxia from forcible restraint, and trauma related to the injuries sustained at the scene." Dr. Rosenbaum further stated that, in Dr. Wilson's report, there is "inadequate documentation to rule out brain related injuries, subdural hematoma [or] epidural hematoma," and "intra-abdominal or intra-thoracic hemorrhage is another possible cause of death." *Id*. at 9-10. Dr. Wilson's findings could, they urge, be rejected by a reasonable jury.

Accepting that proposition for the purposes of this motion - that is, that a reasonable jury could reject Dr. Wilson's cause of death finding - that still leaves us with the question of what cause of death the jury might find, and, more to the point here, what evidence they would base their finding on. Surely, no lay juror could wade through the various possible causes of death

---

opinions on the topics exist. I do not rely on any of them for the truth of what they say and thus need not subject them to a hearsay analysis.

predicted by Dr. Rosenbaum and reasonably pick one.  Thus, the plaintiffs would have to prove

a cause of death through other expert and admissible evidence.  The same is true as to the

plaintiffs' reliance on allegedly severe burns or pain beyond that expected from the TASER as

the injuries suffered by Glowczenski.  While the Second Circuit, in *Wills,* noted that where jurors

are "as capable of comprehending the primary facts and of drawing correct conclusions from

them as are witnesses possessed of special or peculiar training," no expert testimony is required,

this is decidedly not such a case, nor was *Wills*.  *See Wills,* 379 F.3d at 4.  Instead, this case falls

squarely into the category of cases that require expert testimony.  *See* DE[240] at 3-4 and cases

cited therein.

The plaintiffs have failed to come forward with such an expert, and thus, the Village

defendants are entitled to summary judgment on the wrongful death claim.  Because that claim

will be dismissed, the lost earnings claim based on wrongful death is also dismissed.  *See Perry*

*v. County of Westchester,* 2012 WL 1267874, *2 (S.D.N.Y. April 11, 2012)(plaintiff's inability

to produce evidence as to cause of claimed injury likewise precludes effort to seek lost earnings.)

Fourteenth Amendment Claims: Although the Village defendants argue in their moving

papers that the Fourteenth Amendment claims should be dismissed (DE[238] at 17-23), the

plaintiffs note that they have already withdrawn those claims (DE[239] at 1, DE[136] at1).

For these reasons, the Village defendants are granted summary judgment on the sixth

count, for wrongful death and economic damages flowing from that claim, and any claims based

on burns or pain from the TASER.

**The Platt Motion:**

Wrongful Death: The wrongful death and damages claims against defendant Brian Platt are dismissed for the reasons set forth *supra.* There is no expert evidence that anything that Platt did or did not do caused Mr. Glowczenski's death.

Fourteenth Amendment Claims:

The plaintiffs' claims pursuant to the Fourteenth Amendment have been withdrawn.

Fourth Amendment Excessive Force Claim:

The plaintiffs allege that Officer Platt applied excessive force to Mr. Glowczenski in violation of his Fourth Amendment rights. The parties agree that Officer Platt's actions[15] on the day that Glowczenski died consisted of Platt's shocking the decedent multiple times with the TASER M26 after being told to do so by defendant Arthur Schucht. There are no allegations that Platt had any other physical contact with the decedent. A Fourth Amendment claim based on deadly force is not viable for the same reasons that the Wrongful Death claim has been dismissed, but the Court will consider the excessive force claim based on other harm allegedly inflicted on the decedent. Claims of excessive force are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989). Thus, the court must determine whether the facts, viewed in the light most favorable to the plaintiffs, present an issue of material fact as to whether the force applied to Glowczenski was objectively reasonable. *See Milfort v. Prevete,* 2013 WL 519041, *7 (E.D.N.Y. Feb. 13, 2013)(citations omitted). In

---

[15]The plaintiffs also state that Platt, along with his fellow officers, "approached and surrounded" Glowczenski, and "witnessed and participated" in all of the relevant events, but offer no legal argument for why that would render him liable for use of excessive force. DE[244] at 4, 16-17.

deciding whether the amount of force used was reasonable, a reviewing court must consider "the totality of circumstances faced by the officer on the scene" and assess whether the officer's actions were objectively reasonable in light of the facts and circumstances facing them, regardless of their underlying intent or motivation. *Id.* (internal punctuation and citations omitted). This inquiry is fact specific and requires "'balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.*, (quoting *Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir. 2010)).

That balancing looks to at least the following three factors: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy,* 623 F.3d at 96 (citations omitted). For the purposes of this motion, there was no "crime",[16] and there is intense factual disagreement as to the other two factors. However, to succeed on an excessive force claim, a plaintiff must also present sufficient evidence to establish that "the alleged use of force is objectively sufficiently serious or harmful enough to be actionable." *Milfort,* 2013 WL 519041 at *7 (citing *Cunningham v. Rodriguez,* 2002 WL 31654960, *4 (S.D.N.Y. Nov. 22, 2002)). Some courts "recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Lemmo v. McKoy,* 2011 WL 843974, *5 (E.D.N.Y. Mar. 8, 2011). "Injuries held to be de minimis for purposes of defeating excessive

---

[16]I do not know if the defendants intend to introduce evidence that Mr. Glowczenski committed a crime in allegedly resisting arrest or on some other ground. If so, that claim will be determined at trial. But, for the purposes of the claim of excessive force against Platt, I assume that no crime was committed.

force claims include short-term pain, swelling and bruising, brief numbness from tight handcuffing, and two superficial scratches from a cut inside the mouth." *Id.* (citations omitted). Other courts have allowed less serious injuries to suffice for an excessive force claim where the force used was excessive and gratuitous. *See Lemmo,* 2011 WL 843974 at *5 (twisting of plaintiff's thumbs gratuitous); *Davenport v. County of Suffolk,* 2007 WL 608125, *11 (E.D.N.Y. Feb. 23, 2007)(denying summary judgment where defendant allegedly hit plaintiff's head against car intentionally and unnecessarily). And, yet other courts have rejected the "de minimis" injury bar to excessive force claims. *See Gilliard v. City of New York,* 2013 WL 521529, *12, n.9 (E.D.N.Y. Feb. 11, 2013)(citing cases and noting that the principle of de minimis injury is limited to Eighth Amendment claims).

Here, the use of the TASER by Platt was not gratuitous - he was ordered to apply it - nor was it excessive in the context of the injuries inflicted by the TASER in isolation.[17] As noted, the only "force" used by Platt against Glowczenski was multiple applications of the TASER, resulting in pain and marks on Glowczenski's body. Under the totality of the circumstances here, I find that those injuries, or, to put it differently, the force used to inflict them, are de minimis. The TASER is acknowledged as a pain compliance tool, so pain is not a sufficiently serious injury to rise to the necessary level of harm for an excessive force claim based on TASER applications. And, the marks on Glowczenski's body, which the plaintiffs argue were third degree burns, but which, I found earlier, cannot be so identified based on the evidence presented by the plaintiffs, are most akin to bruises and also are insufficiently serious for excessive force

---

[17]I intend no findings or comment on whether the actions allegedly taken by the remaining police defendants were excessive or rose to the level of excessive force. That will be determined by a jury at trial, subject to any law of the case findings.

purposes. Nor was the use of the TASER multiple times objectively unreasonable as discussed *infra* in regard to qualified immunity, even without regard to the seriousness of the injuries.

I recognize the plaintiffs' argument that courts have urged that summary judgment be rarely granted in excessive force cases, but the undisputed facts here, along with the findings on the TASER motion, leave no alternative. Platt's only action was application of the TASER on orders from a superior officer. And, even if we view that application as excessive, Platt is entitled to qualified immunity.

Qualified Immunity:

When a constitutional violation has been shown, the court, on analysis of qualified immunity on an excessive force claim, must determine whether the constitutional right was clearly established at the time of the constitutional violation. *Parker v. City of Long Beach,* 2013 WL 596624, *9 (E.D.N.Y. Feb. 15, 2013). This inquiry focuses on whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, and acknowledges that "reasonable mistakes" can be made, ensuring that "all but the plainly incompetent or those who knowingly violate the law are protected from suit." *Id.* (citing *Cowan v. Breen,* 352 F.3d 756, 761 (2d Cir. 2003)). Here, it would not have been clear to a reasonable officer on February 4, 2004 that using a TASER on an emotionally troubled individual - all of the disputed issues of fact notwithstanding - when ordered to do so by a superior officer was unlawful. Nor would a reasonable officer have believed that multiple applications of the TASER were unlawful. As Platt reports, the Second Circuit has noted that TASER application in drive-stun mode "typically causes temporary, if significant pain and no permanent injury." DE[245] at 5 (quoting *Crowell v. Kirkpatrick,* 400 Fed. App'x. 592, 595 (2d Cir. 2010) and additional, out-

of-Circuit cases). The plaintiffs have pointed to no admissible evidence that the police knew or should have known in 2004 (or now, for that matter) that multiple drive-stun applications of the TASER could cause harm that would amount to excessive force. Under these circumstances, Platt's actions were objectively reasonable and he is entitled to qualified immunity.

State Law Assault and Battery Claims:

State law claims of assault and/or battery are subject to the same standard as Fourth Amendment excessive force claims. *Gilliard,* 2013 WL 521529 at *10. Thus, where an officer's actions were objectively reasonable, the claims cannot stand. I have determined that Platt's action - using the TASER- was objectively reasonable. Further, "New York's good faith immunity doctrine parallels federal qualified immunity jurisprudence for these claims. *Id.* at *12 n.11(citing cases). The assault and battery claims against Platt are dismissed as a matter of law.

## Conclusion

Summary judgment is granted in full to defendants TASER and Platt and in part to the Village defendants. The Clerk of the Court is directed to terminate TASER and Platt as defendants. A conference will be scheduled by separate order to set a date for the trial of the remaining claims in this matter.

Dated: Central Islip, New York
      March 5, 2013

                                     **SO ORDERED:**

                                     /s/ William D. Wall
                                     WILLIAM D. WALL
                                     United States Magistrate Judge