UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MARY JANE GLOWCZENSKI and                        CV 04-4053 (WDW)
JEAN GRIFFIN, Individually and as
Co-Administratrix of the Estate of
DAVID GLOWCZENSKI,

       Plaintiffs,

  - against –

VILLAGE OF SOUTHAMPTON, et al.,
       Defendants.
----------------------------------------------------------------X

**WALL, MAGISTRATE JUDGE:**

  Before the court is a motion by the Suffolk County defendants for summary judgment. DE[277-1-6 & 11]. The motion is opposed by the plaintiffs. DE[277-7-10]. The motion is GRANTED in favor of the County defendants: County of Suffolk, the Suffolk County Police Department, Lieutenant Jack Fitzpatrick, the Office of the Suffolk County Medical Examiner, and Dr. James C. Wilson, for the reasons set forth herein.

## BACKGROUND

  The factual background of this matter has been set out in numerous opinions and will only be repeated as necessary. The same is true of the procedural history, which is well known to the parties. The "County defendants" are the County of Suffolk, the Suffolk County Police Department, Lieutenant Jack Fitzpatrick, the Office of the Suffolk County Medical Examiner, and Dr. James C. Wilson. The claims against them, as set forth in the Amended Complaint, are: 1) Count 3 -"Municipal Violations," against the County; 2) First Count 4 –Conspiracy against all of the County defendants; 3) Count 6 – "Wrongful Death," presumably against all defendants, including the County defendants; and 4) Count 7 –"Battery," against the County and the County Police Department.

## DISCUSSION

**Summary Judgment Standards**

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). At this stage, the burden of proof is on the moving party to show that there is no genuine issue of material fact. *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994)(citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In making this determination, the court must view all of the evidence "in the light most favorable" to the non-movant. *Breland-Starling v. Disney Pub. Worldwide*, 166 F. Supp. 2d 826, 829 (S.D.N.Y. 2001)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In addition, the court must resolve all ambiguities and draw all inferences in favor of the party opposing the motion. *Ackerman v. National Financial Systems*, 81 F. Supp. 2d 434 (E.D.N.Y. 2000). Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56; *and see Liberty Lobby*, 477 U.S. at 250.

In opposing the motion, the nonmoving party may not rely upon "mere conclusory allegations, speculation, or conjecture." *Ackerman*, 81 F. Supp. 2d at 436 (citing *Kulak v. City of*

*New York*, 88 F.3d 63, 71 (2d Cir. 1996)).  However, "if there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable." *Holt v. KMI Continental Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

With these standards in mind, I turn to the issues on the motion.

**Plaintiffs' Argument that Motion should be Stricken**

The plaintiffs argue that the motion for summary judgment was made without permission and was untimely.  There is no question that the court anticipated and allowed the motion, and I will not entertain this argument.  The motion will be decided on its merits.

**Municipal Violations: *Monell* Claim**

The plaintiffs argue that the County, which trained the Village police officers, is liable on a *Monell* failure to train claim under Section 1983.  The defendants argue that the plaintiff has not made out a *prima facie* case for such a claim, and that because the Village officers are not employees of the County, the County cannot be liable on that theory.

Municipalities may be held liable for violations of constitutional rights under Section 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978).  Failure to train employees can constitute such a policy if the municipality's failure to train its officers "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 387 (1989); *see also Anthony v. City of New York,* 339 F.3d 129, 140 (2d Cir.2003).

The defendants are correct that the law on this theory of liability is couched in terms of a municipality's liability based on an independent constitutional violation by its own

3

employees, and that the Village officers are not Suffolk County employees. The defendants cite to cases in which failure to train claims were dismissed because the alleged tortfeasors were not employed by the defendant municipality. *See* DE[277-11] at 6 (citing *Btesh v. City of Maitland,* 2011 WL 3269647, *34(M.D. Fla. July 29, 2011)(citing *Banker v. County of Livingston,* 2011 WL 1331253 (W.D.N.Y. Apr. 6, 2011) & *Bliven v. Hunt*, 478 F. Supp. 2d 332, 340 (E.D.N.Y. 2007))). Although *Btesh* holds that a "municipality cannot be liable under Section 1983 for failure to train where the municipality did not employ the individuals allegedly requiring training," the cases relied on for that ruling involved municipalities that not only did not employ the tortfeasors, but did not train them either. Here, that is not the case, and dismissing the claim against the County on the non-employee ground might leave plaintiffs without a failure to train remedy without regard to the merits of the claim when training is done by an entity other than the employer. Thus, I decline to grant summary judgment on the *Monell* failure to train claim on the ground that the Village officers were not County employees[1].

The County also argues that the *Monell* claim should be dismissed because the plaintiffs have not come forward with sufficient evidence in opposition to the motion to establish a *prima facie* case, and I turn to that issue.

"*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's

---

[1] This ruling is not intended as a blanket holding that plaintiffs can, in all circumstances, bring failure to train claims against a non-employer training entity. Here, not enough is known about the decision-making process between the Village and the County with regard to training to determine whether the plaintiffs might have had a failure to train claim against the employer Village, and I decline to dismiss on the non-employer ground under those circumstances.

4

failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006)(emphasis in original)(citing *Monell*). Under Section 1983, "local governments are responsible only for 'their *own* illegal acts;'" they are not vicariously liable for their employees' actions. *Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011)(internal citations omitted)(emphasis in original). Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality, such as inadequate training procedures. *See Monell,* 436 U.S. at 690–91; *see also Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013); *Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012).

The standards applied to an inadequate training claim are stringent. A municipality may be held liable under Section 1983 for its failure to train or adequately supervise its employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388. As explained recently by the Supreme Court:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S. Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S. Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S. Ct. 1197.
>
> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan*

5

*Cty.,* 520 U.S., at 410, 117 S. Ct. 1382. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.,* at 407, 117 S. Ct. 1382. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton,* 489 U.S., at 395, 109 S. Ct. 1197 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities ...." *Id.,* at 392,109 S. Ct. 1197; see also *Pembaur, supra,* at 483, 106 S. Ct. 1292 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty.,* 520 U.S., at 409, 117 S. Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* at 407, 117 S. Ct. 1382. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick,* 131 S. Ct. at 1359-60(internal citations and quotation marks omitted).

To support a claim that a municipality's failure to train amounted to deliberate indifference, a plaintiff must show (1) that a policymaker "knows 'to a moral certainty' that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York,* 974 F. 2d 293, 297-98 (2d Cir. 1992). With respect to the first element, plaintiffs "must do more than show the need for training on the issue; they must show how a particular policymaker's specific choice with respect to the training deficiency at issue reflects 'deliberate indifference' to their constitutional rights, and how this indifference directly caused their injuries." *Ferrari v. County*

6

*of Suffolk,* 2013 WL 4017022, *11(E.D.N.Y. Aug. 6, 2013)(quoting *Ferreira v. Westchester Cnty.*, 917 F. Supp. 209, 215–16 (S.D.N.Y.1996)(quoting *City of Canton*, 489 U.S. at 388–89)). Further, as reiterated in *Connick*, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Connick,* 131 S. Ct. at 1360 (citing *Bryan County v. Brown,* 520 U.S. 397, 409(1997). Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* (citation omitted). But, as the Connick Court noted, without notice that a course of training is deficient in a particular respect, decisionmakers cannot be said to have deliberately chosen a training program that will cause violations of constitutional rights.

The plaintiffs argue that the evidence herein makes out a *prima facie* case of failure to train by the County. In their Counter Statement, they include additional facts in opposition to the motion. The County defendants have not challenged these facts and they are thus deemed true for the purposes of this motion. The relevant facts allege that all of the defendant Village officers were trained by the County through the County Police Academy; the County defendants failed to provide any formal training about how to interact with Emotionally Disturbed Persons ("EDPs"); and the County failed to provide training about the use of County Mobile Crisis teams or Intervention Units regarding encounters with EDPs. DE[277-10] at 5, ¶1,3 &4. The plaintiffs argue that those failures do not conform to good police practices, and that the County defendants knew to a moral certainty that the officers would come into contact with EDPs and had, in fact, had multiple contacts with the decedent for over twenty years. DE[277-7] at 6-7. They rely on the testimony of expert Edward Mamet, who opines that dealing with EDPs requires "the

7

utilization of the doctrines of space, time, isolation and containment." *Id.* at 7 (citing to Pls. Ex. F at 10). The plaintiffs argue that if the officers had been properly trained, the alleged excessive force[2] used against Mr. Glowczenki and his death would have been avoided. *Id.* at 8.

There is indeed evidence to support the assertion that defendants knew that police officers would come into contact with EDPs. As the plaintiffs point out, the Village officers had contact with Glowczenski for twenty years. But that fact cuts against the plaintiffs' case. There is no claim that Mr. Glowczenski suffered constitutional violations in previous encounters with the Village officers, and no basis for concluding that the County knew or should have known that failure to provide EDP training would lead to constitutional violations. Nor have the plaintiffs presented evidence of other incidents that would have put County policymakers on notice of the need for such training, and a policymaker cannot exhibit deliberate indifference to a need of which he or she is unaware. *See Connick,* 131 S. Ct. at 1360(pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train).

Generally, a "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy" for *Monell* liability purposes. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (citations omitted); *see also City of Canton,* 489 U.S. at 387. The plaintiffs urge, however, that this situation falls

---

[2] The plaintiffs note the court's earlier finding that there are issues of fact in dispute as to the excessive force claim against the Village officers, but their argument that the failure to train claim cannot be decided until the excessive force claim is determined is wrong – the failure to train claim is independent of the excessive force claim, although a constitutional violation must be shown to support a failure to train claim.

into the category of failure to train cases in which a single incident can suffice. As the *Connick* court recently explained:

> In *Canton*, the Court left open the possibility that, "in a narrow range of circumstances," a pattern of similar violations might not be necessary to show deliberate indifference. *Bryan Cty.*, *supra*, at 409, 117 S. Ct. 1382. The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. *Canton, supra*, at 390, n. 10, 109 S. Ct. 1197. Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. *Bryan Cty.*, *supra*, at 409, 117 S. Ct. 1382. The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.

131 S. Ct. at 1361.

Here, although the Supreme Court has recognized that "narrow range of hypothesized single-incident liability" based upon "an obvious need for some form of training," I find that this case does not fall within that narrow and "rare" range of cases, "particularly because plaintiff does not allege a complete lack of training" of Village officers or that they had an "utter lack of an ability to cope with constitutional situations" that existed in the hypothesized single-incident case. *Copelin v. Suffolk County,* 2013 WL 5460748, *4, n.2 (E.D.N.Y. Sept. 30, 2013). As noted, the Village officers had dealt with Mr. Glowczenski for years, apparently without constitutional violations arising, relying on the training that they had received. There is no evidence to support an inference that either Mr. Glowczenski or other EDPs suffered constitutional violations or that such violations were inevitable without EDP training.

Although it may well be that including EDP training would be a better approach than not including it, failing to provide it does not, in and of itself, rise to the level of deliberate

9

indifference even considering the issues of material fact as to the use of excessive force. Evidence of an unconstitutional action by a police officer will not, on its own, be enough to prove that the training program the officer received was inadequate, let alone prove that any inadequacy was a result of a municipality's deliberate indifference. *Carnegie v. Miller,* 811 F. Supp. 907, 911 (S.D.N.Y.1993). "'[P]lainly, adequately trained officers occasionally make mistakes; the fact they do says little about the training program or the legal basis for holding the city liable.'" *Id.* (quoting *City of Canton*, 489 U.S. at 391).

As noted in numerous cases, "Deliberate indifference means that the city made a 'deliberate choice' not to train its employees from among various alternatives." *Pawlicki v. City of Ithaca,* 1996 WL 705785, at *2 (N.D.N.Y. Dec. 5, 1996) (citing *Canton,* 489 U.S. at 389). "Such deliberate indifference may be inferred from a failure to supervise: from proof of repeated complaints of constitutional violations that 'are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents.'" *Velasquez v. City of New York,* 960 F. Supp. 776, 783 (S.D.N.Y.1997) (quoting *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995)); *see also Layou v. Crews*, 2013 WL 5494062, *15 (N.D.N.Y. Sept. 30, 2013). Here, there has been no evidence advanced as to who made the deliberate choice and no mention of repeated complaints from which deliberate indifference to a need for EDP training can be inferred.

A plaintiff must go beyond a conclusory claim of a need for training and demonstrate "how **a particular** policymaker's specific choice with respect to the alleged training deficiency at issue reflects 'deliberate indifference' to their constitutional rights, and how this indifference caused their injuries." *Ferreira v. Westchester County,* 917 F. Supp. 209, 215-16(S.D.N.Y.1996) (emphasis added). A plaintiff alleging that he has been injured by the actions of a low-level

10

municipal employee can establish municipal liability by showing that a "policymaking official" ordered or ratified the employee's actions—either expressly or tacitly. *Jones,* 691 F.3d at 81(internal citations omitted). Nothing in the plaintiff's papers supports the conclusion that such deliberate choice from among various alternatives was ever made or by what specific policymaker. Indeed, no specific policymaking officials are identified, and the division of training choices as between the Village and the County is not mentioned. The Second Circuit has noted that "*Tuttle* and *Pembaur* require plaintiffs to allege actual conduct by a municipal policymaker. *Praprotnik* insures that only actions by officials relatively high up in the municipal hierarchy will produce municipal liability. The combination of the three cases necessarily molds many § 1983 claims against municipalities into 'failure to train' or 'failure to supervise' claims. It is only by casting claims in this way that plaintiffs can link an actual decision by a high level municipal official to the challenged incident." *Walker,* 974 F.2d at 296-97. The plaintiffs have not mentioned any individual policy makers or decision makers and have not made out a *prima facie* case of liability.

"In virtually every instance where a person has had his or her constitutional rights violated by a [municipal] employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *See City of Canton,* 489 U.S. at 392. But to allow a plaintiff to proceed on such a theory would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *Id.; see also Ahern v. City of Syracuse,* 411 F. Supp. 2d 132, 145 (N.D.N.Y. 2006). The plaintiffs here have pointed to insufficient evidence about the "stringent" requirements of a failure to train claim, and the claim must be dismissed.

**Conspiracy Claim**

The plaintiffs allege that the County defendants conspired to cover up improper actions by Village defendants. The defendants argue, and the plaintiffs do not dispute, that any conspiracy claim against them must be dismissed, because there is no person or entity outside the County's own organization with whom they could have conspired. *See Varricchio v. County of Nassau,* 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010)(intracorporate conspiracy doctrine posits that officers, agents and employees of single municipal entity are legally incapable of conspiring with each other)(citations omitted). The plaintiffs withdrew their conspiracy claims against the Village defendants, and the County defendants cannot conspire among themselves. Thus, the motion is granted as to the conspiracy claim. As the court reads the Amended Complaint, this means that all claims against defendants Fitzpatrick and Wilson are thus dismissed.

**Wrongful Death Claim**

The court has previously dismissed the wrongful death claims against Taser, Officer Platt and the Village defendants because, as explained in my order of March 5, 2013 (DE[256]), the plaintiff has no expert witness to support a cause of death theory, and the possible causes of death are too complex for a jury to reach that determination without expert guidance. The County defendants argue that the same reasoning should apply to them, especially in light of the fact that they had no interaction with the deceased until after his death. The plaintiffs do not, in their opposition to this motion, raise any argument against dismissal of the wrongful death claim against the County, and summary judgment is granted on it.

**Claims against Police Department and Medical Examiner's Office**

The County argues that neither the County Police Department nor the Medical Examiner's Office is a suable entity, and that any claims against them must be dismissed on that

ground alone. DE[277-1] at 7 (citing *Davis v. Lynbrook Police Dep't,* 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). The plaintiffs do not challenge that assertion, and I agree. To the extent that the defendants intended any claims against those entities, they are dismissed.

**Battery Claim**

The seventh cause of action alleges battery against, *inter alia,* the County and the County Police Department. As noted *supra,* the County Police Department is not a suable entity, and the County, a municipality, cannot be liable for a battery claim. Thus, this claim is dismissed as against the County.

**SO ORDERED**                                                             //s William D. Wall
November 14, 2013                                                         William D. Wall
                                                                          United States Magistrate Judge

13